# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |   |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ELMER STEWART RHODES, et al,<br><br>Defendant. | Criminal No. 22-cr-00015-APM |

### MEMORNADUM OF LAW IN SUPPORT OF ELMER STEWART RHODE'S MOTION TO SEVER CASE FROM CODEFENDANTS OR, IN THE ALTERNATIVE, TO PLACE RHODES IN THE NOVEMBER 10 TRIAL GROUP

NOW comes Defendant, ELMER STEWART RHODES III ("Rhodes"), by and through undersigned counsel, and respectfully submits this Memorandum of Law in support of his motion to the honorable Court for an order severing Rhodes' case and trial from the trials of Rhodes' nine codefendants. Rhodes requests a stand-alone trial, due to the stark differences in fundamental facts as well as trial preparation between himself and his codefendants (discussed below). But in the alternative, Rhodes requests to be tried along with the November 10 trial group in case 21-cr-28-APM.

Counsel has informed the Assistant US Attorneys of this motion; and they are opposed.

1

The November 10 trial group are, in every essence, codefendants in the same case with Rhodes already. It should be remembered that this instant case-- number 22-cr-00015-APM—was a spin-off of 21-cr-28-APM and that these two case numbers originated as the same case. These 'two' cases are sister cases, or even the flipsides of each other. Moreover,

1. These two scheduled trials both have common (and to a large extent, the same) legal claims, issues and questions.

2. These two scheduled trials both have numerous common facts, common witnesses, common exhibits, and common evidence.

3. These two scheduled trials will feature similar presentations of evidence by prosecutors.

4. These two scheduled trials will feature common defense presentations by defendants.

5. These two scheduled trials are presided over by the same judge, with support by the same magistrates and clerks. The Court has wide-ranging profound knowledge of the players, claims and evidence in both trials.

6. These two sister cases even share some of the same motions, pretrial motion practice, and law of the case. Prior court orders have stated that motions and rulings from 22-cr-28-APM will carry over to 21-cr-00015-APM.

**Benefits of severing Defendant Rhodes from 21-cr-00015 and transferring Rhodes to trial in 22-cr-28-APM, scheduled for trial on November 10:**

There are many benefits to the Court, the parties, and the public interest if Defendant Rhodes is severed from codefendants in 21-cr-00015 and tried along with codefendants in 22-cr-28-APM.

1. First, Defendant Rhodes—who has only had 7 months to hurriedly find counsel, fruitlessly beg for pretrial release, initiate reading and watching of discovery, reach out from his jail cell for witnesses and evidence, and begin preparing his defense—will have a month and half of additional time to prepare.

2. Defendant Rhodes has, in fact, been lodged in <u>four different jail locations</u> while awaiting trial, each with different obstacles and systems to navigate through for Rhodes to try to defend himself. Rhodes' inconveniences and difficulties in defending himself while incarcerated place Rhodes at an extreme disadvantage compared to the prosecution; and Rhodes needs each additional day he can get to prepare for trial.

3. Motion deadlines for the Nov 10 trial are fast approaching. Nonetheless the deadlines are different from the instant case, which will give Rhodes additional time to prepare and file necessary important motions (as described in Rhodes' previous motion for substitution of counsel (#290)).

3

4. Rhodes needs additional time to acquire certain necessary exhibits, transcripts and evidence. The additional 45-or-so days will allow Rhodes to secure these necessary items and begin to prepare a defense.

5. Rhodes' new counsel, the undersigned Edward L. Tarpley, jr., will have additional time to acquaint himself with the case, the claims, the evidence, the witnesses, the issues and the arguments. This is vital and necessary for Rhodes' defense.

6. There is an ongoing massive mountain of discovery, including contents from 1,100 electronic devices that must be reviewed by Rhodes and his defense team. The additional 45-or-so days will give Rhodes time to begin to analyze and review such discovery.

**FURTHER BACKGROUND AND SUPPORTING LAW AND FACTS**

**I.  Rhodes has had insufficient time, preparation, communication with lawyers, and discovery for trial beginning on September 26 in such a complicated case.**

At present, trial in this case is scheduled to begin on September 26, 2022—just two weeks from today. Neither Rhodes nor any of his attorneys are prepared for trial, and massive discovery drops from the government continue each week. Moreover there are numerous necessary items of evidence and discovery, required by Rhodes to defend himself at trial, which have thus far not been produced.

Rhodes' Codefendants have had almost a year more than Rhodes with which to prepare for trial. Rhodes submits that codefendants are <u>themselves</u> in danger of being denied due process due to the government's rush to trial without sufficient discovery and witnesses. But Rhodes is <u>even more prejudiced</u> than his codefendants. For reasons described in Rhodes' Motion to substitute counsel and continue trial (doc. #290), Rhodes will be at a severe disadvantage and will be denied a fair trial if he is subjected to trial on the 26th without discovery of prior testimony of important witnesses, Jan. 6 committee transcripts, etc.

Additionally, Rhodes intends to call expert witnesses to the stand to assist the Court and the jury understand the case. These expert witnesses have not yet been enlisted and undersigned counsel is working on this project.

Neither counsel for Rhodes nor Rhodes himself has been provided with up-to-date discovery, as outlined in Doc. #290. Mr. Rhodes, unlike his codefendants, was only arrested in mid-January of this year. While most of Rhodes' codefendants were indicted almost a year earlier, and have had the better part of two years to review discovery, consult with counsel, and prepare for trial, Rhodes has had less than eight months. (In fact, Rhodes did not obtain significant discovery until just a couple months ago. And Rhodes' first weeks of incarceration were dedicated to finding and introducing himself to counsel and seeking pretrial release.)

While Rhodes' codefendants in the D.C. jail have near-constant access to discovery videos, Rhodes is incarcerated in a jail in Alexandria, Virginia where he gets only two days per week to examine electronic discovery; by being transported to the District Court to use computers. The discovery hard drive Rhodes is allowed to use <u>has not been updated in three months</u>.

The indictment against Rhodes is a complex set of allegations with significant, national and even global geo-political implications. The government is actually alleging that Rhodes participated in a plot to overthrow existing government or to unlawfully thwart the transfer of presidential power. Rhodes has simply not been provided with sufficient time, evidence, and communication with counsel in order to defend himself.

**II.     RHODES' FACTS ARE FUNDAMENTALLY DIFFERENT FROM CODEFENDANTS.**

Although Rhodes and codefendants are charged with some of the same legal allegations, the facts supporting those allegations are of a fundamentally different nature. Thus, Rhodes' alleged role in the same alleged events will require an entirely different presentation of evidence. The government's allegations against Rhodes arise out of unique sets of facts and circumstances, involving completely different types of actions, proceedings or personal exchanges, and legal arguments.

The burden on Rhodes, his codefendants, the Court, and the prosecution far outweighs any practical benefit that might accrue from considering the cases of all nine defendants at the same trial.

The indictment improperly joins Rhodes with his co-defendants under Rule 8 of the Federal Rules of Criminal Procedure because (1) the government fails to allege that Rhodes participated in the same act or transactions as his co-defendants, and (2) very little evidence against Rhode's co-defendants is mutually admissible against him.

> **A. The majority of Rhodes' codefendants are accused of entering and committing crimes inside the Capitol, while the government's allegations against Rhodes do not involve any similar allegations.**

Rule 8(b) of the Federal Rules of Criminal Procedure states that "[t]he indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." "A 'series of acts or transactions' is 'two or more acts or transactions connected together or constituting parts of a common scheme or plan.'" *United States v. Bostick*, 791 F.3d 127, 145 (D.C. Cir. 2015) (quoting *United States v. Moore*, 651 F.3d 30, 69, 397 U.S. App. D.C. 148 (D.C. Cir. 2011)).

In Rhodes' case there are two separate and distinct set of defenses which differentiate Rhodes' defense from that of his codefendants. Rhodes' defense is

7

that his statements, proclamations and advocacy aimed at getting President Trump to invoke the federal insurrection act and command extraordinary federal efforts to take custody of questionable voting machines in Michigan, Pennsylvania, Georgia and elsewhere and authorize a full and complete investigation of voting irregularities in those places. On Jan. 6, Rhodes did not enter or advocate for Oathkeepers to breach or initiate any forcible takeover of the U.S. Capitol. Rhodes' focus on January 6, 2021 was on four permitted rallies and events <u>outside</u> the Capitol.

> **B. Allegations against Rhodes are fewer than one-third of the counts in the indictment.**

By contrast, the majority of Rhodes' codefendants are accused of actually going inside the Capitol on Jan. 6. Practically speaking, this requires an entirely different presentation of facts and evidence for the codefendants. Of the 17 counts listed in the indictment of Jan. 12, 2022, Rhodes is accused in only five (5). Thus Rhodes is accused in *less than one-third* of the allegations.

The Jury will be Unable to Compartmentalize the Evidence as it Relates to Mr. Rhodes.

> **III. Rhodes will be denied a fair trial if subjected to trial with codefendants on Sept. 26.**

While it is "difficult to prevail on a claim that there has been misjoinder under Rule 8(b), there are definite limits to what the government can put together

in a single indictment." *United States v. Nicely*, 922 F.2d 850, 853 (D.C. Cir. 1991). Even when joinder of defendants and offenses is otherwise proper under Rule 8(b), Federal Rule of Criminal Procedure 14(a) permits a court to sever defendants or counts, or "provide any other relief that justice requires," if the joinder "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). The Supreme Court has instructed that "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). The Court suggested that such risk is "heightened" when, for example, "many defendants are tried together in a complex case and they have markedly different degrees of culpability" or evidence "that would not be admissible if a defendant were tried alone is admitted against a codefendant."

In this case, a joint trial on September 26 would compromise a specific trial right of Rhodes, which is Rhodes' right to a fair trial with a fair ability to present a defense. As outlined in Document #290, Rhodes has simply not been provided with the discovery, witnesses and evidence he needs to defend himself. Trial of Rhodes on such an extremely quick timeline will violate Rhodes' fundamental rights to due process and a fair trial.

### IV. The government's recent moves have fundamentally altered Rhodes' previously planned defense

Two months ago, federal prosecutors indicted a group of friends and family members of the Oathkeeper defendants in this case. See *United States v. Crowl*, et al., Case # 2 1-cr-28-APM (filed June 22, 2022) (8 defendants, including family members of Oathkeeper defendants). Rhodes had planned to call several of these new defendants as his defense witnesses. Then, last week, on August 30, 2022, prosecutors indicted Oathkeeper general counsel (and Rhode's former girlfriend) Kellye Sorelle on charges relating to Jan. 6.

These additional indictments effectively remove these important, key, defense witnesses from being able to provide material testimony in defense of Rhodes at Rhodes' trial. The arrests of Sorelle, Michael Green, and others increases the likelihood that they will plead the 5th amendment and be unavailable if summoned as witnesses—which highlights the necessity of Rhodes having access to these witnesses' testimony transcripts and videos before the January 6 Committee.

Additionally, the arrests of Green and Sorelle effectively removes Green's and Sorelle's cell phones from being available to Rhodes for use at trial. Their cell phones contain exculpatory images and texts from before and after January 6 which are necessary for Rhodes' defense.

Until these arrests, these witnesses were primary and key witnesses for Rhodes and other defendants in this case. The arrest of Sorelle represents a monumental change in how Rhodes expected to defend himself at trial. Cf, *United States v. Torres-Rodriguez*, 930 F.2d 1375 (9th Cir. 1991) (reversing conviction where defendant was prejudiced by the denial of a continuance which deprived her of an opportunity to prepare to respond to new developments). Sorelle, in fact, was one of the closest people to Rhodes during Rhodes' planning and participation in events on Jan. 6, and Sorelle would have been a key witness through whom Rhodes would have informed the jury of Rhodes' demeanor, state of mind, and intentions.

The removal and alteration of Rhodes' trial strategy and defense agenda fundamentally upsets Rhodes' ability to prepare and defend himself at trial. See *Armant v. Marquez*, 772 F.2d 552 (9th Cir. 1985) (finding prejudice where denial of continuance effectively denied defendant the opportunity to prepare his defense).

## V. CONCLUSION

For the reasons stated here, Defendant Elmer Stewart Rhodes prays for this Court to issue an order severing his case from codefendants scheduled to begin trial on September 26.

Dated: September 12, 2022

Respectfully Submitted,

/s/ Edward L. Tarpley Jr.
_____
Edward L. Tarpley Jr.
A Professional Law Corporation
LA Bar ID: 12657
819 Johnston Street
Alexandria, Louisiana 71301
Telephone: 318-487-1460
Fax: 318-487-1462
Email: edwardtarpley@att.net

Counsel for Defendant,
Elmer Stewart Rhodes III

# CERTIFICATE OF SERVICE

I hereby certify that this document is being filed on this September 12, 2022, with the Clerk of the Court by using the U.S. District Court for the District of Columbia's CM/ECF system, which will send an electronic copy of to the following CM/ECF participants. From my review of the PACER account for this case the following attorneys are enrolled to receive notice and a copy through the ECF system.

Troy A. Edwards, Jr
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 4th Street, NW
Washington, DC 20001
202-252-7081
troy.edwards@usdoj.gov

Jeffrey S. Nestler
U.S. ATTORNEY'S OFFICE
555 Fourth Street NW
Washington, DC 20530
202-252-7277
jeffrey.nestler@usdoj.gov

Kathryn Leigh Rakoczy
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252-6928
(202) 305-8537 (fax)
kathryn.rakoczy@usdoj.gov

Justin Todd Sher
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW
Washington, DC 20530
202-353-3909
justin.sher@usdoj.gov

Alexandra Stalimene Hughes
DOJ-Nsd
950 Pennsylvania Ave NW
Washington DC, DC 20004
202-353-0023
Alexandra.Hughes@usdoj.gov


                <u>/s/ Edward L. Tarpley Jr.</u>
                  Edward L. Tarpley Jr.