## IN THE UNITED STATES DISTRICT COURTFOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

ELMER STEWART RHODES, et al,

    Defendant

Criminal No. 22-cr-00015-APM

---

**MOTION OF DEFENDANT ELMER STEWART RHODES
TO SUPPRESS ANY RECORDING OR TRANSCRIPT OF NOVEMBER 9,
2020, "GOTOMEETING" CONVERSATION
OR IN THE ALTERNATIVE TO ISSUE A MOTION IN LIMINE**

**Evidentiary Hearing Requested**

NOW comes Defendant ELMER STEWART RHODES III ("Rhodes"), by undersigned counsel, hereby respectfully moves the Court pursuant to his constitutional, statutory and civil rights to grant his Motion to Suppress From Evidence at Trial Any Recording or Transcript Of November 9, 2020, "GoToMeeting" Conversation or in The Alternative To Issue a Motion in Limine, with the following integrated Memorandum of Points and Authorities stating his reasons why his motion should be granted.

Counsel for the Defendant contacted the U.S. Attorney's Office to ask for their

position on whether they would agree or oppose this motion, in whole or in part, or

agree to part of the relief; and they are opposed.

**Oral argument is requested**.

MEMORANDUM OF POINTS AND AUTHORITIES

## I.      SUMMARY OF CIRCUMSTANCES PERTINENT TO THIS MOTION

The prosecution proposes to introduce at trial an alleged recording (and/or

transcript) of an alleged GoToMeeting conference call held on November 9, 2020. See

exhibits filed by attorney Matthew Peed for Edward Vallejo at ECF 102-1 in Case

1:21-cr-00028.[1]

The content of this conversation is the cornerstone of the Government's claims

that these Defendants engaged in a seditious conspiracy (Count I) and/or conspiracy to

obstruct an official proceeding (Count II), along with dozens of examples of the

Defendants trading over-the-top, embellished statements mainly with each other,

predicting that others (not them) might engage in violence (assuming that the entire

conversations bear out what is represented by the Government at all),  and public

letters and other posts published on the Oath Keepers' website to similar effect.

---

[1]      The public disclosure of the transcript, apparently inadvertent, has been treated
as making the contents of the recording public.  In any event, the USAO takes the
position that as long the identities of unindicted persons are redacted, such documents
are normally not confidential without a specific reason.  Here, Kellye Sorrelle was
indicted on September 1, 2022.  Therefore, the transcript at ECF # 102-1 does not
appear to be subject to the protective order, at least not any more.

Under federal law, the recording of a telephone call without the knowledge and consent of all parties is presumptively legal but is rendered illegal (sometimes a crime not merely unlawful) when the laws of an individual state so provide.  Recording a conversation of other people is illegal wiretapping (if without a judicial wiretap warrant). [2]

Yet a participant in the conversation can record the conversation of which he is a participant without the consent of other participants in "one party consent" states.  In so-called "two party consent" states all participants in the conversation must give their consent to be recorded, which of course necessarily requires that they be informed that the conversation is being recorded.

GoToMeeting (like several, similar competitor systems) is a computer software system which provides the ability for persons to engage in conferences and communications among persons participating remotely from varied, diverse locations.[3] That is, the software system or "platform" allows people to engage in a "meeting" in

---

[2]     "The Federal Wiretap Act at 18 U.S.C. § 2520 imposes a one-party-consent-type standard, subject to certain exceptions. It was originally written to cover only wire and oral communications, but it has since been revised to protect electronic communications as well, such as private emails and text messages to which a person has a reasonable expectation of privacy."  Michaela Cronin, "The Price You'll Pay to Press Play: When and Why You Should Think Twice Before Recording Your Spouse," ABA Journal, August 1, 2021, https://www.americanbar.org/groups/family_law/publications/family-advocate/2021/summer/price-you-ll-pay-press-play-when-why-you-should-think-twice-recording-your-spouse/

[3]     https://www.goto.com/meeting#

which the participants are not physically present together in the same place.

GoToMeeting primarily offers the ability to hold video meetings in which participants

can see each other during the virtual "meeting" on a computer or smart phone.

However, people can connect to a GoToMeeting conference also by telephone.

The virtual meeting or conference can include participants using traditional telephones

to call the GoToMeeting hub and join the meeting through a telephone call regulated

by state and federal law.  Some or all of the meeting participants, both when speaking

and listening, may be using a government regulated telephone line instead of a

computer to connect to the conversation.

Here, *Florida* is a "two party consent" (that is, all parties must give consent)

State, and the Government alleges that *Floridians* Kenneth Harrelson, Kelly Meggs,

and other Oath Keepers participated in the November 9, 2020, conversation as

*Floridians*.   Other "all party consent" states other than Florida include Pennsylvania,

Nevada, California, Maryland, Michigan, Montana, New Hampshire, Vermont, Illinois,

Connecticut, Delaware, Massachusetts, Oregon, and Washington.[4]

On information and belief, it is apparently possible from within the

GoToMeeting system, as with similar systems, to have GoToMeeting itself record the

conversation.  However, the platform warns participants that the conversation is being

---

[4]      https://www.justia.com/50-state-surveys/recording-phone-calls-and-conversations/

4

recorded and provides a question or button for each participant to consent.

Here, the actual recording which the Government proposes to hang its case upon is actually a video recording with no video images appearing. That is, the computer file is a very large 1.6 gigabytes in size in a video recording format. But only audio is present in the digital file. That is, it appears that someone recorded the November 9, 2020, GoToMeeting conversation as a video recording but physically (not electronically) covered up the camera or pointed the camera at a desk or table so that only the audio is present. This may suggest that the recording person was not an invited member of the conversation who did not want to record video, just the audio. Or at least it presents a question that deserves being answered as to the identity of the recording person. An uninvited person might not qualify as a "party" in either a one-party or two-party consent state.

Furthermore, the recording of the November 9, 2020, GoToMeeting conversation which the Government claims to be evidence cuts on after the conversation has already started. It is not evident how much of the conversation was lost before the recording began. However, certainly any introduction or explanation for the purpose of the meeting was lost. The introduction explaining the purpose of the meeting would be necessary to interpret the later contents, not just theoretically but specifically necessary for this conversation when the contents are read or listened to. The body of the conversation requires a context in its substance.

Although the undersigned is newly-engaged counsel, from our investigation so far and efforts at consultation, it appears that the U.S. Attorney's Office ("USAO") for the District of Columbia released the audio recording and transcript[5] of the November 9, 2020, to defense counsel under the protective order on January 6, 2022.  See Exhibit A and B attached.  David Fischer as attorney for Thomas Caldwell raised the question of who recorded the conversation, in what state they were located, and whether the recording was illegal.  *Id.*  We understand that the USAO replied that the recording was not made pursuant to any warrant, was recorded by a private individual, but the Government refused to identify the person who recorded the conversation or what state they were located in when recording the phone call.  Perhaps the USAO has subsequently provided that information, but newly-entered counsel has not found that.

From the USAO's limited explanations, it is possible that the person who recorded the conversation either provided the recording to government investigators, was acting as an active informant of the Government when making the recording[6] and thus effectively engaging in a warrantless search by an agent of the Government, or

---

[5]     Note that this is a transcript by a court reporter who was not present in the discussion, but is attempting to reconstruct a transcript from the recording after the fact, including without the opportunity to inquire if a word or phrase is not clear.  This led to the court reporter misidentifying the voice of Kellye Sorrelle – a woman – as being Kelly Meggs, who is a man.  The Government issued a corrected transcript.

[6]     The Court and the Government are aware of facts and circumstances that remain confidential under the protective order making it nearly certain that the recording was made by an agent of the U.S. Government.

had their computer or smart phone unexpectedly seized by the Government without the

person's cooperation or participation.  It is also possible that the person who recorded

the conversation was an uninvited interloper and thus considered to be illegally

wiretapping the conversation, that is not a proper party to the conversation at all.  That

would mean that in every State the recording would be illegal.

This does matter and it is material and important.  This can change the outcome

of trial on these charges.  Without this proposed evidence, and with complete

conversations containing locker room talk among the Defendants presented in full,

Counts I and II must fail.  The distribution of the recording on January 6, 2022, while

the USAO was preparing to secure a Superseding Indictment on January 12, 2022,

suggests that the recording was an integral part of the Government adding Count I for

seditious conspiracy on January 12, 2022.

## II.      GOVERNING LAW

18 U.S. Code § 2515  requires:

**18 U.S. Code § 2515 - Prohibition of use as evidence of intercepted wire or oral communications**

> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof

if the disclosure of that information would be in violation of this chapter.

18 U.S. Code § 2511 provides that:

**18 U.S. Code § 2511 - Interception and disclosure of wire, oral, or electronic communications prohibited**

(1)Except as otherwise specifically provided in this chapter any person who—
(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;
(b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when—
(i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or
\* \* \*
(iv) such use or endeavor to use (A) takes place on the premises of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or (B) obtains or is for the purpose of obtaining information relating to the operations of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or
(v) such person acts in the District of Columbia, the Commonwealth of Puerto Rico, or any territory or possession of the United States;
(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;

(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; or

(e) (i) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, intercepted by means authorized by sections 2511(2)(a)(ii), 2511(2)(b)–(c), 2511(2)(e), 2516, and 2518 of this chapter, (ii) knowing or having reason to know that the information was obtained through the interception of such a communication in connection with a criminal investigation, (iii) having obtained or received the information in connection with a criminal investigation, and (iv) with intent to improperly obstruct, impede, or interfere with a duly authorized criminal investigation,

shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

18 U.S. Code § 2511 further provides that:

* * *

(4)
(a) Except as provided in paragraph (b) of this subsection or in subsection (5), whoever violates subsection (1) of this section shall be fined under this title or imprisoned not more than five years, or both.

* * *

(ii)In an action under this subsection—

(A)    if the violation of this chapter is a first offense for the person under paragraph (a) of subsection (4) and such person has not been found liable in a civil action under section 2520 of this title, the Federal Government shall be entitled to appropriate injunctive relief; and

(B)  if the violation of this chapter is a second or subsequent offense under paragraph (a) of subsection (4) or such person has been found liable in any prior civil action under section 2520, the person shall be subject to a mandatory $500 civil fine.

(b)The court may use any means within its authority to enforce an injunction issued under paragraph (ii)(A), and shall impose a civil fine of not less than $500 for each violation of such an injunction.

In federal courts, Rule 12(b)(3)(C) and Rule 41(h) of the Federal Rules of Criminal Procedure govern motions to suppress.

In *Simmons, et al. v. United States*, 390 U.S. 377, 88 S. Ct. 967, 19 L. Ed. 2d 1247, 1968 U.S. LEXIS 2167 (U.S. Mar. 18, 1968) *(denying suppression as to co-Defendant Simmons but granting suppression as to co-Defendant Garrett)* the U.S. Supreme Court applied the well-established procedure of suppression under the "exclusionary rule."  This confirms the availability of this well-known legal claim:

> In order to effectuate the Fourth Amendment's guarantee of freedom from unreasonable searches and seizures, this Court long ago conferred upon defendants in federal prosecutions the right, upon motion and proof, to have excluded from trial evidence which had been secured by means of an unlawful search and seizure. *Weeks* v. *United States,* 232 U. S. 383. More recently, this Court has held that "the exclusionary rule is an essential part of both the Fourth and Fourteenth Amendments. . . ." *Mapp* v. *Ohio,* 367 U. S. 643, 657.
>
> However, we have also held that rights assured by the Fourth Amendment are personal rights, and that they may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure. See, *e. g., Jones* v. *United States,* 362 U. S. 257, 260-261. At one time, a defendant who wished to assert a Fourth Amendment objection was required to show that he was the owner or possessor of the seized property or that he had a possessory

interest in the searched premises.[11] In part to avoid having to resolve the issue presented by this case, we relaxed those standing requirements in two alternative ways in *Jones* v. *United States, supra.* First, we held that when, as in *Jones,* possession of the seized evidence is itself an essential element of the offense with which the defendant is charged, the Government is precluded from denying that the defendant has the requisite possessory interest to challenge the admission of the evidence. Second, we held alternatively that the defendant need have no possessory interest in the searched premises in order to have standing; it is sufficient that he be legitimately on those premises when the search occurs. Throughout this case, petitioner Garrett has justifiably, and without challenge from the Government, proceeded on the assumption that the standing requirements must be satisfied.[12] On that premise, he contends that testimony given by a defendant to meet such requirements should not be admissible against him at trial on the question of guilt or innocence. We agree.

Under the standing rules set out in *Jones,* there will be occasions, even in prosecutions for nonpossessory offenses, when a defendant's testimony will be needed to establish standing. This case serves as an example. Garrett evidently was not in Mrs. Mahon's house at the time his suitcase was seized from her basement. The only, or at least the most natural, way in which he could found standing to object to the admission of the suitcase was to testify that he was its owner.[13] Thus, his testimony is to be regarded as an integral part of his Fourth Amendment exclusion claim. Under the rule laid down by the courts below, he could give that testimony only by assuming the risk that the testimony would later be admitted against him at trial. Testimony of this kind, which links a defendant to evidence which the Government considers important enough to seize and to seek to have admitted at trial, must often be highly prejudicial to a defendant. This case again serves as an

example, for Garrett's admitted ownership of a suitcase which only a few hours after the robbery was found to contain money wrappers taken from the victimized bank was undoubtedly a strong piece of evidence against him. Without his testimony, the Government might have found it hard to prove that he was the owner of the suitcase.[14]

Meanwhile, **Federal Rules of Evidence, Rule 403, provides**:

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

## III.   ARGUMENT

### A.   CONTEXT AND MATERIALITY

There are no allegations that Stewart Rhodes committed any violence, damaged any property, or treated any law enforcement officer with anything less than respect anywhere in the District of Columbia around January 5-6, 2021.[7]  Rhodes personally never entered or climbed on the Capitol building itself and never interacted with any

---

[7]      U.S. Capitol Police Officer Harry "Dunn informed all protestors they needed to leave and told the Oath Keepers that the protestors were fighting officers. The Oath Keepers advised Dunn they would help keep the protestors from the lower west terrace area. Dunn advised he allowed them to stand in front of him to help keep the protestors from getting down the stairs. Dunn left this area when he was relieved by USCP riot officers."  -- FBI Interview of US Capitol Police Officer Harry Dunn, May 18, 2021, page 2, publicly disclosed by the U.S. House Select Committee to Investigate the January 6, 2012, Attack on the Capitol.

law enforcement officers.  In fact, we understand from preliminary investigation that the Oath Keepers effectively detailed one of its members, a physician, to the U.S. Capitol Police's direction and use throughout the afternoon.

There are no factual allegations that Rhodes aided and abetted anyone in the commission of any crime.  The Government included boilerplate allegations, like an after-thought, but without any factual allegations to support any aiding and abetting theory.

The Grand Jury in multiple versions of the indictment admits that the Oath Keepers arrived in the area of the U.S. Capitol Police after the U.S. Capitol Police had already advised the presiding officers of the House and Senate to recess, suspend the Joint Session of Congress, and evacuate before these Defendants arrived in the area. The Oath Keepers did not cause a decision to recess that culminated at 2:18 PM upon reaching the area at 2:26 PM.  This time line is established by the Grand Jury.  This is not a matter of the prosecution being free to add other information at trial.  The timeline has been locked in by the Grand Jury.  So Count III must fail.  These Defendants could not have obstructed an official proceeding (Count III) prior to when they arrived.

In December 2020, the U.S. Capitol Police issued six permits for demonstrations to be lawfully held on the U.S. Capitol Grounds on the afternoon of January 6, 2021. Attendees were lawfully authorized to be on the Grounds and to travel to and from and

among the permitted demonstration sites.  The records show that the Oath Keepers travelled from the lawful demonstration at the Ellipse to the Capitol Grounds to assist a lawful demonstration planned at "Lot 8" on the Capitol grounds.  As shown in messaging chats relied upon by the Grand Jury, Stewart Rhodes arrived much later than other Oath Keepers and ordered Oath Keepers who had gone "off mission" to join him at a place away from where there were disturbances happening.  Rhodes then led the Oath Keepers who were "off mission" away from the U.S. Capitol to dinner at Olive Garden.

The documents known to the Government show that the Oath Keepers extensively planned, prepared to travel to Washington, D.C., intended to, and did provide volunteer security ("Protective Service Details" or "PSDs") to protect speakers, VIP attendees and crowds attending lawfully permitted demonstrations at the Ellipse, on U.S. Capitol Grounds and provide related logistical support.

All parties have actual knowledge that the Oath Keepers "preparations" were for lawful and legitimate purposes to travel to D.C. and protect crowds.  All parties know that the focus prior to January 6, 2021, was the expected continuation of extreme left-wing violence from ANTIFA and similar groups from 2014 through 2020, whom had always showed up to counter-demonstrate and attack conservative or Trump-related rallies or demonstrations.  Viewed at the time, not in hindsight, the Oath Keepers came prepared to keep the peace from anarchist violence threatened upon the crowds of

unarmed Trump supporters, many elderly. [8]

Therefore, the Government has nothing to sustain Counts I or II but a misrepresentation of the November 9, 2020, GoToMeeting conference, and alleged locker room "shock jock" talk privately among the Oath Keepers (where the actual full conversations have not been provided). Without misrepresenting the GoToMeeting conference, the Government cannot sustain before a neutral, impartial jury who actually listens for an estimated six weeks either a charge of seditious conspiracy or a conspiracy to obstruct an official proceeding.

## B.      MOTION TO SUPPRESS

Unless the Government can carry its burden of showing that the recording was legal in the State in which it was recorded and that all participants who connected by telephone were in "one party consent" states, the recording of the November 9, 2020, GoToMeeting conservation is illegal.

Therefore, the recording may not be admitted into evidence, by the force of statute.

---

[8]      Although the riots from 2014 through 2020 have been caused by left-wing anarchists and other leftist activists, we do not mean to imply that the Oath Keepers would only keep the peace against left-wing violence. Indeed, while U.S. Capitol Police Officer Harry Dunn protests in his FBI interview that he didn't need any help in a corridor near the U.S. Capitol "crypt" room not far from the Rotunda, that he had everything under control, and he was not agitated or fearful, Dunn nevertheless grudgingly admits that Oath Keepers offered to help the U.S. Capitol Police against a group of Trump demonstrators who were unusually violent and threatening.

While the law has had to adapt to changes in technology, it also appears that participants connected by internet computer connection may also be protected by such laws and their participation would also a basis for excluding the recording.

At a minimum, unless the Government can identify all participants in the GoToMeeting conversation who connected by telephone and determine that none of them were connecting from "one party consent" law states, the recording must be suppressed.

The Government must also disclose whether the person recording the conversation was an authorized participant and not an unauthorized interloper, thus violating even "one party consent" law states.  The Government must also disclose whether the person recording the conversation was acting explicitly as an informant for or agent of the U.S. Government in making the recording.

## C.    MOTION IN LIMINE UNDER RULE 403 UNDULY PREJUDICIAL

Because of the active mischaracterization of the conversation by the Government, and in light of the lack of actual probative value of an accurate reading of the contents, the recording (and its transcript) is more prejudicial than probative and likely to confuse and mislead the jury.

On a careful examination of the alleged contents, it will be clear that the contents do not say what the Government claims.  There is actual embellishment by the Government, not merely a potential for confusion.  Therefore, the contents are more

16

prejudicial than probative under Rule 403 of the Federal Rules of Evidence.  Not only could the jury be potentially confused, but the prosecution is actually misrepresenting the contents of the "meeting" in fact.  That is verifiable by actually reading the transcript of that conversation, at least if read without the color of runaway emotion. See exhibits filed by attorney Matthew Peed for Edward Vallejo at ECF 102-1 in Case 1:21-cr-00028.

It may be noted that the two speakers in the alleged meeting are Rhodes and Kellye Sorrelle, who was arrested on September 1, 2022, in a clearly-related case assigned to the Honorable U.S. District Judge Amit Mehta in case 1:22-cr-00290-APM.  Sorrelle was to be a major witness for Rhodes and his co-Defendants at trial in cases 1:22-cr-00015 and 1:21-cr-00028.  Introducing the November 9, 2020, GoToMeeting conservation without Kellye Sorrelle testifying about it would also make the evidence unfairly prejudicial.  Note that this is due to knowing and intentional acts by the Government fully aware of the upcoming trial of the Oath Keepers when arresting a key witness.  (It is possible that Kellye Sorrelle could still testify while facing prosecution, but the turn-around time for a lawyer to make that gutsy decision with her would be very challenging by the planned trial date.)

## IV.    CONCLUSION

Unless the Court can establish that the recording person and all of those participating by telephone were located in "one party consent" states concerning the

regulation of telephone calls and that communications by computer are not prohibited from recording without consent and that the recording person was an authorized participant in the conversation, respectfully the Court must suppress the conversation and/or bar its introduction *in limine*.


Dated:   September 12, 2022          RESPECTFULLY  SUBMITTED
                                     ELMER STEWART RHODES, III
                                              *By Counsel*

Respectfully submitted,
/s/ Edward L. Tarpley Jr.
Edward L. Tarpley, Jr.
A Professional Law Corporation
819 Johnston St, Alexandria, LA 71301
Phone: (318) 487-1460
Fax: (318) 487-1462
edwardtarpley@att.net
Attorney for Defendant Elmer Stewart Rhodes III

## **CERTIFICATE OF SERVICE**

I hereby certify that this document is being filed on this September 12, 2022, with the Clerk of the Court by using the U.S. District Court for the District of Columbia's CM/ECF system, which will send an electronic copy of to the following CM/ECF participants.  From my review of the PACER account for this case the following attorneys are enrolled to receive notice and a copy through the ECF system.

**Troy A. Edwards, Jr**
U.S. ATTORNEY'S OFFICE
555 4th Street, NW
Washington, DC 20001
202-252-7081
**troy.edwards@usdoj.gov**

**Jeffrey S. Nestler**
U.S. ATTORNEY'S OFFICE
555 Fourth Street NW
Washington, DC 20530
202-252-7277
**jeffrey.nestler@usdoj.gov**

**Kathryn Leigh Rakoczy**
U.S. ATTORNEY'S OFFICE
555 Fourth Street, NW
Washington, DC 20530
(202) 252-6928
(202) 305-8537 (fax)
**kathryn.rakoczy@usdoj.gov**

**Justin Todd Sher**
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW

Washington, DC 20530
202-353-3909
**justin.sher@usdoj.gov**

**Alexandra Stalimene Hughes**
DOJ-Nsd
950 Pennsylvania Ave NW
Washington DC, DC 20004
202-353-0023
**Alexandra.Hughes@usdoj.gov**

Dated:   September 12, 2022          RESPECTFULLY  SUBMITTED
                                     ELMER STEWART RHODES, III
                                     *By Counsel*


                                     /s/ Edward L. Tarpley, Jr.
                                      Edward L. Tarpley, Jr., Esq.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document is being filed on this September 12, 2022, with the Clerk of the Court by using the U.S. District Court for the District of Columbia's CM/ECF system, which will send an electronic copy of to the following CM/ECF participants.  From my review of the PACER account for this case the following attorneys are enrolled to receive notice and a copy through the ECF system.

**Troy A. Edwards, Jr**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF
COLUMBIA
555 4th Street, NW
Washington, DC 20001
202-252-7081
**troy.edwards@usdoj.gov**

**Jeffrey S. Nestler**
U.S. ATTORNEY'S OFFICE
555 Fourth Street NW
Washington, DC 20530
202-252-7277
**jeffrey.nestler@usdoj.gov**

**Kathryn Leigh Rakoczy**
U.S. ATTORNEY'S OFFICE FOR THE DISTRICT OF
COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252-6928
(202) 305-8537 (fax)
**kathryn.rakoczy@usdoj.gov**

**Justin Todd Sher**
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW
Washington, DC 20530

202-353-3909
**justin.sher@usdoj.gov**

**Alexandra Stalimene Hughes**
DOJ-Nsd
950 Pennsylvania Ave NW
Washington DC, DC 20004
202-353-0023
**Alexandra.Hughes@usdoj.gov**

_____
Ed Tarpley, Esq.