# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ELMER STEWART RHODES, et al,<br><br>Defendant. | Criminal No. 22-cr-00015-APM |

### MOTION TO CONTINUE TRIAL AND FOR APPOINTMENT OF SPECIAL MASTER TO ADMINISTER DIGITAL DISCOVERY

**Evidentiary hearing requested.**

NOW comes Defendant, ELMER STEWART RHODES III ("Rhodes"), by and through his counsel of record, and respectfully moves this Court for an order continuing trial until proper necessary discovery can take place. At present, neither Rhodes nor his codefendants, nor any of the defense teams in this case, are able to adequately prepare for trial.

Upon information and belief, this set of cases stemming from the protests on January 6, 2021 constitute the most massive and complex set of cases in the history of the federal courts. Discovery in these cases is in the range of 50 to 100 terabytes of data; with each defendant dealing with 3 to 5 terabytes of discovery directly material to him.

Moreover the sifting of this discovery to determine which images and/or exhibits are useful, material or relevant, requires extreme time, resources, energy and preparation for each defendant and defense team.

Yet this case is being fast-tracked to a trial scheduled to begin on September 26, in just two weeks. This is the most massively complicated case in American history, with the shortest amount of time allowed for trial preparation. And Rhodes and other codefendants are facing potential life in federal prison if convicted.

The largest and most complex case in history is being allotted the shortest time to prepare. And Rhodes and codefendants are being deprived of the tools necessary to defend themselves.

The government's advantage in this case could not be greater. This trial scheduled to start on September 26 will be like a little league team facing the New York Yankees.

Counsel has alerted counsel for the United States of this motion; and the United States objects to the motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

At present the U.S. Department of Justice has conceded that January 6 represents the most complicated set of cases in the Department's history. By the

Department's admission, discovery in this case surpasses any in Justice Department history.

Multiple agencies, as well as officials and committees of the U.S. Congress, have assumed simultaneous jurisdiction over the Jan. 6 investigations. Various government officials, including the Chair of the U.S. House of Representatives Select Committee on January 6, have contended and asserted a wide-ranging conspiracy between Defendant Rhodes, Rhodes' codefendants, the Oathkeepers organization, Proud Boys, and President Trump or other elected officials. President Trump was even impeached for his supposed role in directing the events of January 6.

## I.     The Discovery presents a logistical nightmare.

All of this presents a logistical nightmare for Rhodes and other defendants trying to navigate through the many terabytes of digital discovery. Rhodes has been held in four (4) different jails in the short time of his case; and each location has presented its own obstacles for Rhodes to defend himself.

Of the seven months of Rhodes' incarceration, Rhodes has had access to meaningful discovery for just two months. Now he is being forced to face trial of the most complicated facts and issues of any case in American history, while facing potential life imprisonment, with access to discovery that is dated June

2022.  It is now September 12, 2022 and Rhodes is being raced to trial in just two weeks.

While Rhodes' codefendants in the D.C. jail have near-constant access to discovery videos, Rhodes is incarcerated in a jail in Alexandria, Virginia where he gets only two days per week to examine electronic discovery; by being transported to the District Court to use computers.  The discovery hard drive Rhodes is allowed to use <u>has not been updated in three months</u>.

Among other things, Rhodes and other Oathkeepers are charged with seditious conspiracy "by force to prevent, hinder, and delay the execution of any law of the United States" to "oppose the lawful transfer of presidential power by force . . ."  Witness Kellye SoRelle, a licensed attorney, was general counsel for the Oathkeepers during the period, and can testify regarding her advice, observations, and communications with Rhodes and the Oathkeepers organization.

SoRelle coauthored and co-signed with Rhodes at least one of the published public letters on the Oathkeepers website to President Donald Trump between election night 2020 and Jan. 6 urging the president to invoke the Insurrection Act, 10 U.S.C. §251-§255, to investigate 2020 election improprieties.  It was the Oathkeepers' purpose expressed in these published public letters—advocacy to a public official for redress of grievances, protected under the 1st amendment—that form the foundation  for the indictment in this case.

SoRelle is a necessary witness. SoRelle literally provided legal counsel to the Oathkeepers during the period when the indictment claims the Oathkeepers (led by Rhodes) were engaging in a wide-ranging conspiracy to use force to thwart the transfer of power between President Trump and President Biden. Upon information and belief, SoRelle would testify that, in her observations and professional opinion, Rhodes followed and complied with the law during this period.

Further, upon information and belief, SoRelle previously testified before the Jan. 6 Committee of Congress that Rhodes and Oathkeepers under her observation complied and followed federal law. Upon information and belief, SoRelle testified to the Jan. 6 Committee that Rhodes and Oathkeepers—pursuant to her legal advice, direct observation and counsel—are innocent of sedition, conspiracy, and other claims in the indictment. SoRelle's testimony is thus exculpatory evidence; and Brady material. To withhold it or decline to give Rhodes adequate time to obtain it would be error of an extreme magnitude.

A. PROPOSAL FOR APPOINTMENT OF A SPECIAL MASTER

One of the most cost-effective methods for managing and dispensing discovery of such a massive volume is to engage a special master to help manage

discovery. Special masters can promote efficiency in discovery, the phase of litigation that is most likely to break down and cause delays to case resolution.

Discovery in this case is more massive than the discovery in many cases where courts have appointed special masters to help manage discovery. For example, the Whitmer-kidnapping-plot case in the U.S. District of Michigan in 2021, the Bundy prosecutions in the U.S. District of Nevada both used special masters and processing firms to manage, compile, dispense and compartmentalize discovery that was less massive than the discovery in this case.

Rhodes requests appointment of a special master in this case. An appropriate appointment order will determine the scope of the master's authority, what issues may or may not be considered, the timeframe for addressing those issues, and whether the master can communicate ex parte with the court. How these items are addressed in the appointment order is a critical issue for all parties in the litigation.

B. ALLOCATION OF PAYMENT

The question of who will pay for the special master is a crucial consideration. Under Federal Rule of Civil Procedure 53, courts may allocate payment responsibility based on a variety of factors including "the nature and amount of the controversy, the parties' means, and the extent to which any party is more responsible than other parties for the reference to a master." Rhodes requests

the Court to allocate sufficient funds to pay for the master and his or her facilities and infrastructure.

Rhodes and his counsel propose the following discovery proposal:

1. First, the basic categorization of this discovery must be analyzed and reviewed by a data management master who can assess the size, scope, and depth of the data and come up with a categorization plan.

2. This special master, acting as an officer of the Court, will preside over the distribution, storage, and management of the discovery and make recommendations to the Court and the parties regarding these matters.

Dated:   September 12, 2022

Respectfully Submitted,
/s/ Edward L. Tarpley, Jr.
Edward L. Tarpley, Jr.
A Professional Law Corporation
LA Bar ID: 12657
819 Johnston Street
Alexandria, Louisiana 71301
Telephone: 318-487-1460
Fax: 318-487-1462
Email: edwardtarpley@att.net

Counsel for Defendant,
Elmer Stewart Rhodes III

CERTIFICATE OF SERVICE

      I hereby certify that this document is being filed on this September 12, 2022, with the Clerk of the Court by using the U.S. District Court for the District of Columbia's CM/ECF system, which will send an electronic copy of to the following CM/ECF participants.  From my review of the PACER account for this case the following attorneys are enrolled to receive notice and a copy through the ECF system.

Troy A. Edwards, Jr
U.S. ATTORNEY'S OFFICE
555 4th Street, NW
Washington, DC 20001
202-252-7081
troy.edwards@usdoj.gov

Jeffrey S. Nestler
U.S. ATTORNEY'S OFFICE
555 Fourth Street NW
Washington, DC 20530
202-252-7277
jeffrey.nestler@usdoj.gov


Kathryn Leigh Rakoczy
U.S. ATTORNEY'S OFFICE
555 Fourth Street, NW
Washington, DC 20530
(202) 252-6928
(202) 305-8537 (fax)
kathryn.rakoczy@usdoj.gov

Justin Todd Sher
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW
Washington, DC 20530
202-353-3909
justin.sher@usdoj.gov

Alexandra Stalimene Hughes
DOJ-Nsd
950 Pennsylvania Ave NW
Washington DC, DC 20004
202-353-0023
Alexandra.Hughes@usdoj.gov


<u>/s/ Edward L. Tarpley, Jr.</u>
Edward L. Tarpley, Jr.