UNITED STATES DISTRICT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | Case No. 22-cr-00015-APM |
| ) | |
| STEWART RHODES, ET. AL. ) | |
| ) | |
| Defendant ) | |

**DEFENDANTS' RESPONSE/OPPOSITION TO GOVERNMENT'S MOTION FOR PROTECTIVE ORDER REGARDING TRIAL TESTIMONY OF CONFIDENTIAL HUMAN SOURCES**

Defendants Thomas Caldwell, Stewart Rhodes, Kelly Meggs, Jessica Watkins and Kenneth Harrelson respectfully submit this Response/Opposition to the Government's Motion for Protective Order Regarding Trial Testimony of Confidential Human Sources. The Government seeks to limit the inquiry into the identities, actions, and communications of the CHSes employed by the FBI during its investigation of the Oath Keepers organization, including Defendants herein, out of concern for the safety of those individuals and to avoid disclosing details of the workings of the FBI Confidential Human Source program.

The Defendants are before this Court with their liberty interests at stake. The Government has paid individuals to gather information and evidence about the Oath Keepers and the Defendants. The Government has made use of some of that information and evidence in building its case for trial. Although the Government has disclosed to the defense

– only after being ordered to do so by this Court – the activities of five CHSes, it has communicated to defense counsel that only one will be called to testify as a witness at trial.

With its Motion for Protective Order, the Government has now lifted the veil on its use of CHSes in this case, a fact that has been concealed from public knowledge by another Protective Order the Government obtained as a precondition to producing *Brady/Giglio* material to the Defendants. The Government had good cause for doing so – but not only for the reasons set forth in the application for that Order. What the Government knew – but only recently disclosed to the Defendants – was that *none of the CHSes provided evidence of guilt on the part of the Oath Keepers as an organization, or the individual Defendants in this case*. This fact is confirmed by the Government's acknowledgment that only one CHS will be called to testify during its case-in-chief.

The indictment in this case makes repeated reference to the "Rhodes Plan" – the plan by which the Oath Keeper defendants are claimed to have organized themselves into a conspiracy to use force to prevent the lawful transfer of presidential power in January 2021 or corruptly interfere with the electoral vote certification by Congress or both. The heretofore concealed CHSes, notably, were in regular communication with their FBI handlers before, during, and after January 6, 2021, *but none of them reported the existence of any such "Rhodes Plan," and they have all denied having known any information about a "Rhodes Plan" when questioned by their FBI handlers after January 6, 2021*.

The potential testimony of these CHSes, along with the corroborating testimony of their FBI handlers, will establish either 1) that the "Rhodes Plan" was so secret that even members of Oath Keeper leadership who interacted regularly with Defendant Rhodes and others alleged to have been involved were kept in the dark both before and after January 6, or

2) that there never was any such "Rhodes Plan."  The Defendants are entitled to examine the totality of the Government's investigation and prosecution for the purposes of undermining the jury's confidence in the work done and the conclusions reached by the agents and prosecutors over the course of the past 20 months.

The Government's case relies on suppositions and conclusions in many critical respects, while at the same time ignoring or discounting documented exculpatory evidence undermining many if those suppositions and conclusions.  At various points in time, however, the Government received information from those five CHSes, none of whom communicated knowledge of the "Rhodes' Plan" as described in the instant indictment.  The Defendants are entitled to have those facts made known to the jury from the CHSes themselves as exculpatory evidence.

Further, one or more FBI handlers were explicitly told by CHSes that there was never an Oath Keepers or Rhodes "plan" to attack the Capitol for any purpose – whether to interfere with the lawful transfer of presidential power or to corruptly obstruct the electoral vote certification.  The FBI chose to ignore that exculpatory information and along with DOJ has "reverse-engineered" the existence of such a "plan" through selective use of "evidence" it has cherry-picked out of context, while ignoring all evidence to the contrary.

In *Kyles v. Whitley*, 514 U.S. 419 (1995), the Supreme Court pointed out that when the government withheld statements from a confidential source that were potentially exculpable, the defendant lost the opportunity before the jury to make law enforcement's investigation of him look unreliable.  As the Court explained, "the defense could have examined the police to good effect on their knowledge of Beanie's statements and . . .

attacked the reliability of the investigation in failing even to consider Beanie's possible guilt." *Id*. at 446. The Court proceeded to re-construct the detective's testimony in the case:

> By demonstrating the detectives' knowledge of Beanie's affirmatively self-incriminating statements, the defense could have laid the foundation for a vigorous argument that the police had been guilty of negligence…. Since the police admittedly never treated Beanie as a suspect, the defense could thus have used his statements to throw the reliability of the investigation into doubt and to sully the credibility of Detective Dillman, who testified that Beanie was never a suspect.

*Id*. at 447. The Supreme Court reversed the defendant's conviction in *Kyles* because the suppressed evidence would have opened avenues of embarrassing cross-examination as to the inadequacy of the police investigation which "would simply have underscored the unreliability of the investigation and complemented the defense's attack on the failure to treat Beanie as a suspect and his statements with a presumption of fallibility." *Id*. at 450–51. The *Kyles* Court ultimately concluded that, with the excluded material, the jury may have judged the lead police detective to be "either less than wholly candid or less than fully informed" and the investigation to be limited in scope, negligent in method, and "insufficiently probing" of the cooperators' credibility." Id. at 453–54.

Similarly, in *United States v. Bagcho*, 151 F. Supp.3d 60, 69 (D.D.C. 2015), this Court cited *Kyles* (and two Circuit Court cases the Supreme Court cited favorably in *Kyles*) as confirming the right of a defendant to attack the competency of the investigation in a criminal case:

> Impeachment evidence can be damaging when it allows defense counsel to attack the reliability of an investigation. See Bowen v. Maynard , 799 F.2d 593, 613 (10th Cir.1986) ("A common trial tactic of defense lawyers is to discredit the caliber of the investigation or the decision to charge the defendant, and we may consider such use in assessing a possible Brady violation."); Lindsey v. King , 769 F.2d 1034, 1042 (5th Cir.1985) (awarding a new trial after Brady evidence "carried within it the potential... for the... discrediting... of the police methods employed in assembling the case").

The Defendants do not intend to elicit any testimony for the sole purpose of gratuitously exposing other investigations involving a testifying CHS. But relevant information – such as the reliability and accuracy of the CHS's information elicited from the testimony of an FBI handler – might be found in cross-examination that explores other work done by the CHS with the FBI or other law enforcement agency. The FBI chooses to use Confidential Human Sources in criminal investigations knowing that those sources might be cross-examined by defense counsel in a criminal case at some point in the future. That is a risk the Government and the CHS knowingly and voluntarily assume as part of the relationship they enter into.

The Defendants, moreover, do not intend to elicit testimony from a CHS for the sole purpose of exposing the CHS to possible retribution or otherwise place his or her safety at risk. However, given the physical proximity of certain CHSes to the Defendants, cooperators, and unindicted co-conspirators in this case, it is unrealistic to seek to prevent the geographic location of a testifying CHS from becoming known as a result of testifying in this case.

Finally, the Government offers no legal support for the third restriction it seeks – preventing examination of CHSes or FBI handlers with respect to the "FBI's CHS program and the training and methods used by the FBI as part of their undercover operations." Such a restriction contravenes the Supreme Court's holding in *Kyles*. The FBI's management of its CHS program is bound up in the manner by which CHSes were "worked" in this investigation. A blanket prohibition such as the one sought here by the Government's third requested limitation is likely to impede the Defendants' opportunity before the jury to make the FBI's investigation of them look inept and unreliable.

WHEREFORE, the Defendants respectfully request that the Court deny the Government's request for a protective order regarding trial testimony of its Confidential Human Sources.

Respectfully submitted,

/s/David W. Fischer, Esq.
David W. Fischer, Esq.
Federal Bar No. 023787
Law Offices of Fischer & Putzi, P.A.
Empire Towers, Suite 300
7310 Ritchie Highway
Glen Burnie, MD 21061
(410) 787-0826
Attorney for Defendant Thomas Caldwell

## CERTFICATE OF SERVICE

     I HEREBY CERTIFY that on this 26th day of September, 2022, a copy of the foregoing Reply In Support of Motion to Dismiss Counts 1, 2, 3, & 4 was electronically filed with the Clerk of the United States District Court using CM/ECF, with a notice of said filing to the following:

Counsel for the Government:    Office of the United States Attorney/DOJ
Kathryn Rakoczy, Esq.
Jeffrey Nestler, Esq.
Troy Edwards, Esq.
Louis Manzo, Esq.
Alexandra Hughes, Esq.
Justin Sher, Esq.
555 4th Street, NW
Washington, DC 20001


          /s/
David W. Fischer, Esq.