UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v.   § | Case No. 22-cr-15-APM |
| § | |
| ELMER STEWART RHODES, III, § | |
| KELLY MEGGS, § | |
| KENNETH HARRELSON, § | |
| JESSICA WATKINS, and § | |
| THOMAS CALDWELL § | |
| § | |
| § | |
| Defendants. § | |

## REPLY TO UNITED STATES' MOTION *IN LIMINE* CONCERNING CERTAIN STATEMENTS AND THE ATTORNEY-CLIENT PRIVILEGE

On Friday, October 7, the government moved to admit messages exchanged between Stewart Rhodes and Kellye SoRelle, and defense counsel objected on the basis that they potentially were confidential communications subject to attorney-client privilege. The government filed a motion *in limine* on Monday, October 10, arguing that the messages are not subject to the privilege. ECF No. 369. For the reasons stated herein, the government's motion should be denied, and the messages should be excluded from trial.

### PROCEDURAL BACKGROUND

For the sake of brevity and judicial economy, the defense adopts the Procedural Background put forth in the government's motion, ECF. No. 369 at 1-4, with one exception. The government stated that "some of these messages took place on December 10, 2020, and included Rhodes, SoRelle, and at least **three** other people." *Id.* at 3, n.1. These messages included just two other people apart from SoRelle and Rhodes.

---

REPLY TO GOVERNMENT'S MOTION IN LIMINE CONCERNING ATTORNEY-CLIENT PRIVILEGE - RHODES        1

## KELLYE SORELLE BACKGROUND

Stewart Rhodes first met Kellye SoRelle in Spring of 2020 at a rally in Texas, where Rhodes learned SoRelle was a licensed attorney doing pro bono work as "of counsel" for Latinos for Trump and other related organizations. Rhodes engaged SoRelle to perform the same role for the Oath Keepers in the Spring and Summer of 2020 as the election approached. Rhodes regularly sought SoRelle's advice on legal matters related to the Oath Keepers as well as his work within the organization.

Contrary to the government's contention, the evidence corroborates that this attorney-client relationship was established prior to December 2020 and certainly predated January 6, 2021. On the November 9, 2020 GoToMeeting call, Rhodes introduced SoRelle the following way: "Kellye's here, and I wanted to have her say a couple of things about what she can talk about as far as the legal fight. So, Kellye, if you don't mind, tell them what you can tell them." Gov. Exh. 1000.1.TR at 11-12. This suggests that, *in early November*, the Oath Keeper members on the call were *already* familiar with her legal work and her role as counselor.

Furthermore, in the days and weeks prior to the messages at issue, SoRelle helped draft and co-signed two public statements released on behalf of Rhodes and the Oath Keepers. Gov. Exh. 1005 (dated December 14, 2020); Gov. Exh. 1008 (dated December 23, 2020). Drafting press releases and making public statements on behalf of clients are routine tasks attorneys and counselors. The fact that SoRelle signed the letters as a "Texas attorney," Exh. 1005, and a "Texas patriot lawyer," Exh. 1008, indicates that she was acting in her capacity as an attorney in co-signing the statements.

The government makes much of the terms SoRelle uses—or does not use—to describe herself on various Internet profiles. *See* ECF 369 at 8. In its motion, the government emphasizes

that SoRelle's profile on the Texas State Bar website lists her firm name as "Law Office of Kellye SoRelle." *Id.* That is a standard model for the name of a small firm. Attorneys do not, and *cannot*, list their clients on their Texas bar webpage.[1] Furthermore, the fact that SoRelle added a more specific description of her client work to her Twitter bio at some point between November 2020 and April 10, 2021 is of little to no import; one does not have to memorialize an attorney-client relationship on Twitter for it to exist. As previously noted, SoRelle had been doing pro bono legal work for various organizations, including the Oath Keepers, since the Spring of 2020.

## ARGUMENT

The attorney-client privilege is the oldest of the privileges known to the common law. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The purpose of the privilege is "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* Application of the privilege is determined on a case-by-case basis. *Id.* at 396 (citing Fed. R. Evid. 501). The party asserting the attorney-client privilege must demonstrate that: (1) the privilege holder was a client or sought to become a client; (2) the attorney was a member of the bar "acting as a lawyer"; (3) the communication relates to a fact of which the attorney was informed by his client for the purpose of securing an "opinion on the law, legal services, or assistance in some legal proceeding, and not for the purpose of committing a crime or tort." *Banneker Ventures, LLC v. Graham*, 253 F. Supp. 3d 64, 70 (D.D.C. 2017) (quoting *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984). Each of these elements are met with respect to the communications between Rhodes and SoRelle on

---

[1] *See, e.g.*, https://www.texasbar.com/AM/Template.cfm?Section=Find_A_Lawyer&template=/Customsource/ MemberDirectory/MemberDirectoryDetail.cfm&ContactID=176535 (Mr. Phillip A. Linder); https://www.texasbar.com/AM/Template.cfm?Section=Find_A_Lawyer&template=/Customsource/MemberDirector y/MemberDirectoryDetail.cfm&ContactID=176535 (Mr. James Lee 'Lee' Bright).

December 29, 2020.

### I. Rhodes had an attorney-client relationship with SoRelle.

"An attorney-client relationship is formed when a client and an attorney explicitly or by their conduct, manifest an intention to create the attorney/client relationship." *Headfirst Baseball LLC v. Elwood*, 999 F. Supp. 2d 199, 209 (D.D.C. 2013) (internal citations and quotation marks omitted). In determining whether an attorney-client relationship existed, courts consider:

> [w]hether the client perceived that an attorney-client relationship existed, whether the client sought professional advice or assistance from the attorney, whether the attorney took action on behalf of the client, and whether the attorney represented the client in proceedings or otherwise held herself out as the client's attorney.

*Teltschik v. Williams & Jensen, PLLC*, 683 F. Supp. 2d 33, 45 (D.D.C. 2010). Notably, "an attorney-client relationship can exist even if the parties do not have a written agreement, the client does not pay the attorney any fees, and the attorney does not give the client any legal advice." *Id.* (citing *In re Lieber*, 442 A.2d 153, 156 (D.C. 1982).

In 2020, Kellye SoRelle was a licensed attorney in good standing in the State of Texas. As detailed above, Rhodes and SoRelle manifested an intention to create an attorney-client relationship when he began regularly seeking her counsel, professional advice, and assistance in the Spring of 2020. During this time and in the months up to and including December 2020, SoRelle also performed pro bono work as counsel for the Oath Keepers organization at the request of Rhodes Though SoRelle did not represent Rhodes or the Oath Keepers in any proceedings or charge legal fees, she *did* take action on behalf of her clients in co-signing public statements and imparting legal advice.

Likewise, the fact that SoRelle was counsel for the Oath Keepers organization does not mean that she was *not* counsel for Rhodes in his individual capacity. Though the "default rule" in

the District of Columbia is that "General Counsel represents the entity and not individuals within the entity," *In re Grand Jury Investigation*, Case No. 19-15 (BAH), 2019 WL 2179116, at * 15 (D.D.C. Mar. 4, 2019), this default is overcome when employees of the entity make it clear that they are "seeking legal advice in their individual rather than in their representative capacities," *In re Grand Jury Proceedings*, 156 F.3d 1038, 1041 (10th Cir. 1998) (quoting *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 123 (3d. Cir. 1986)). Rhodes sought SoRelle's legal advice in his individual capacity as well as on behalf of the Oath Keepers entity.

> II. **The message in question concerns a disclosure that was communicated to SoRelle for the purpose of securing her opinion on the law and/or legal advice.**

Once the attorney-client relationship has been established, the confidential communications between the two parties are privileged when they involve disclosures made in order to obtain legal assistance. *Fisher v. United States*, 425 U.S. 391, 403 (1976). Such disclosures include "any damaging information that could more readily be obtained from the attorney following disclosure than from himself in the absence of disclosure." *Id.* The privilege covers all communications that "relate" to such factual disclosures. *Banneker Ventures*, 253 F. Supp. 3d at 70 (quoting *In re Sealed Case*, 737 F.2d at 98–99). Furthermore, this Court has previously explained that "[t]he fact that a communication from a client to an attorney did not specifically include a request for legal advice or assistance does not preclude its being privileged, if the information reasonably could be foreseen to be relevant to future advice or assistance." *United States v. AT&T Co.*, 86 F.R.D. 603, 624.

The December 29, 2020 message from Rhodes to SoRelle, though emotional and provocative in tone, involved disclosure of a fact that "reasonably could be foreseen to be relevant to future advice or assistance." *Id.* Namely, the message discloses that Rhodes' "only reason" for

going to D.C. was to send Trump the message that he and others would support his invocation of the Insurrection Act. It was both plainly and reasonably foreseeable that such information would be relevant in obtaining SoRelle's assistance and advice regarding planning for the Oath Keeper's attendance at the January 6 rally. This communication was made in confidence, in the context of an attorney-client relationship, and for the purpose of seeking legal advice. The message therefore must be excluded from evidence under attorney-client privilege.

### III. The government cannot meet its burden for establishing the crime-fraud exception.

Once the attorney-client privilege is established, the burden of overcoming the privilege falls upon the party seeking to invoke the exception. *In re Sealed Case*, 107 F.3d 46, 50 (D.C. Cir. 1997). To establish the crime-fraud exception, the government must prove (1) that the client "made or received the otherwise privileged communications with the intent to further an unlawful or fraudulent act" and (2) that the client "carried out the crime or fraud." *Id.* at 49 (internal citations omitted). The government's burden is only met when the evidence it offers "would establish the elements of an ongoing or imminent crime or fraud" if believed by the trier of fact. *Id.* at 50 (quoting *In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985).

Despite its decision to charge Rhodes's attorney as a co-conspirator, the government cannot prove that the message sent by Rhodes to SoRelle on the night of December 29, 2020, was intended to "further an unlawful or fraudulent act." The government seemingly argues that the privileged message was sent with the intent to "obstruct the official proceeding on January 6, 2021." But the message is devoid of any mention of the certification proceeding; in fact, Rhodes states, "That's why I'm going. It's to send HIM [Trump] a message. **Not Congress. I'm done talking to them**." Gov. Exh. 1.S.737.2818-2820 (emphasis added). Furthermore, even if believed to be true, the

government's brief summary of the words SoRelle used on January 6 does not establish each element of that crime, especially as to Rhodes. Likewise, asking the Court to find that Rhodes "carried out the crime" is asking the Court to rule on the ultimate issue of the case which is presently before a jury. The government has not, and cannot, meet its burden to establish the crime-fraud exception based on the evidence presented.

## CONCLUSION

For the foregoing reasons, Rhodes' December 2020 communications with Kellye SoRelle are covered by attorney-client privilege and must be excluded from evidence.

RESPECTFULLY SUBMITTED,

/S/ PHILLIP A. LINDER
PHILLIP A. LINDER

3300 OAK LAWN AVENUE, SUITE 700
DALLAS, TEXAS 75219
(214) 252- 9900 OFFICE
(214) 252-9902 FAX
PHILLIP@THELINDERFIRM.COM
TEXAS BAR NO. 12363560


/S/ JAMES LEE BRIGHT
JAMES LEE BRIGHT

3300 OAK LAWN AVENUE, SUITE 700
DALLAS, TEXAS 75219
TEL: (214) 720-7777
FAX: (214) 720-7778
JLBRIGHTLAW@GMAIL.COM
TEXAS BAR NO : 24001786