```
 1                  UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA
 2
     * * * * * * * * * * * * * * *    )
 3   UNITED STATES OF AMERICA,        )     Criminal Action
                                      )      No. 22-00015
 4                 Plaintiff,         )
                                      )
 5    vs.                             )     AFTERNOON SESSION
                                      )
 6   ELMER STEWART RHODES, III,       )     Washington, D.C.
     et al.,                          )     October 26, 2022
 7                                    )
                   Defendants.        )     2:03 p.m.
 8                                    )
     * * * * * * * * * * * * * * *    )
 9


10                  TRANSCRIPT OF JURY TRIAL - DAY 19
11              BEFORE THE HONORABLE AMIT P. MEHTA,
                  UNITED STATES DISTRICT JUDGE
12


13
     APPEARANCES:
14
     FOR THE GOVERNMENT:      KATHRYN L. RAKOCZY, ESQ.
15                            TROY A. EDWARDS, JR., ESQ.
                              JEFFREY S. NESTLER, ESQ.
16                            LOUIS MANZO, ESQ.
                              UNITED STATES ATTORNEY'S OFFICE
17                              FOR THE DISTRICT OF COLUMBIA
                              601 D Street, Northwest
18                            Washington, D.C. 20579

19                            ALEXANDRA S. HUGHES, ESQ.
                              JUSTIN T. SHER, ESQ.
20                            U.S. DEPARTMENT OF JUSTICE
                              950 Pennsylvania Avenue, Northwest
21                            Washington, D.C. 20530

22
     FOR THE DEFENDANT        PHILLIP A. LINDER, ESQ.
23           RHODES:          JAMES L. BRIGHT, ESQ.
                              EDWARD L. TARPLEY, JR., ESQ.
24                            BARRETT BRIGHT LASSITER LINDER
                              3300 Oak Lawn Avenue
25                            Suite 700
                              Dallas, Texas 75219
```

```
 1      APPEARANCES, CONT'D:

 2      FOR THE DEFENDANT          STANLEY E. WOODWARD, JR., ESQ.
               MEGGS:             BRAND WOODWARD LAW
 3                                1808 Park Road, Northwest
                                  Washington, D.C. 20010
 4
                                  JULI HALLER, ESQ.
 5                                LAW OFFICES OF JULI HALLER
                                  601 Pennsylvania Avenue, Northwest
 6                                Suite 900
                                  Washington, D.C. 20036
 7

 8      FOR THE DEFENDANT          BRADFORD L. GEYER, ESQ.
               HARRELSON:         FORMERFEDSGROUP.COM, LLC
 9                                141 I Route 130 South
                                  Suite 303
10                                Cinnaminson, New Jersey 08077

11
        FOR THE DEFENDANT          JONATHAN W. CRISP, ESQ.
12             WATKINS:           CRISP AND ASSOCIATES, LLC
                                  4031 North Front Street
13                                Harrisburg, Pennsylvania 17110

14
        FOR THE DEFENDANT          DAVID W. FISCHER, SR., ESQ.
15             CALDWELL:          FISCHER & PUTZI, P.A.
                                  7310 Governor Ritchie Highway
16                                Glen Burnie, Maryland 21061

17
        REPORTED BY:              LISA EDWARDS, RDR, CRR
18                                Official Court Reporter
                                  United States District Court for the
19                                  District of Columbia
                                  333 Constitution Avenue, Northwest
20                                Room 6706
                                  Washington, D.C. 20001
21                                (202) 354-3269

22

23

24

25
```

I N D E X

Charge Conference                                    Page 5507

```
 1              THE COURT:  Please remain seated, everyone.

 2              THE COURTROOM DEPUTY:  Good afternoon, your Honor.

 3              This is Criminal Case No. 22-15, the United States

 4     of America versus Defendant No. 1, Elmer Stewart Rhodes,

 5     III; Defendant 2, Kelly Meggs; Defendant 3, Kenneth

 6     Harrelson; Defendant 4, Jessica Watkins; and Defendant 10,

 7     Thomas Edward Caldwell.

 8              Kathryn Rakoczy, Jeffrey Nestler, Alexandra

 9     Hughes, Troy Edwards and Louis Manzo for the Government.

10              Phillip Linder, James Lee Bright and Edward

11     Tarpley for Defendant Rhodes.

12              Stanley Woodward and Juli Haller for Defendant --

13     I'm sorry.  Only Juli Haller for Defendant Meggs.

14              Bradford Geyer for Defendant Harrelson.

15              Jonathan Crisp for Defendant Watkins.

16              David Fischer for Defendant Caldwell.

17              Defendants Meggs, Harrelson, Watkins and Caldwell

18     are present in the court for these proceedings.

19              Defendant Rhodes has had his appearance waived.

20              THE COURT:  Good afternoon, everyone.  Do we have

21     everyone?

22              MR. FISCHER:  The last time I saw Mr. Crisp he was

23     riding a scooter.

24              THE COURT:  We don't have Ms. Haller.

25              There she comes.
```

```
 1              MS. HALLER:  Sorry, your Honor.

 2              THE COURT:  That's okay.

 3              MR. CRISP:  May we take off the masks since the

 4   jury is out?

 5              THE COURT:  It's up to you.  That's assuming

 6   everybody is feeling okay.  I won't tell if you don't.

 7              All right.  So let's go through the proposed

 8   instructions that you all sent me.  I think most of this is

 9   fairly straightforward.  I do have some questions about some

10   of these issues.  If there's argument, then just let me

11   know.

12              So the first one that sort of was drawing an

13   objection is the Red Book instruction on informer's

14   testimony.  That's 2.205.

15              Is there any reason to think that's going to be

16   applicable?

17              MR. NESTLER:  Not from the Government's

18   perspective.  It was a defense proposal.

19              MR. CRISP:  Judge, do we need to stand?

20              THE COURT:  Only if you need the exercise.

21              MR. CRISP:  What page?

22              THE COURT:  Page 2 of your joint proposed jury

23   instructions.  No. 16 is informer's testimony.  The

24   Government is not intending to call an informant.  I don't

25   know whether the defense is.
```

1          I guess the bottom line is, you don't have to

2    commit now.  But my idea is there's no basis for it yet.

3    We'll see what happens.  If there is, then we can talk about

4    that then.

5          I think this one is -- the next one is -- that's

6    been objected to is Red Book 2.310 concerning transcripts of

7    tape recordings.  I've already given that instruction.

8    They've already seen transcripts.  So that's somewhat been

9    taken care of.

10          Again -- you know, I've raised this before, and I

11    don't know what the parties' position is, for example,

12    whether the Government would like to send transcripts back

13    and, if so, whether the defense will object.  If they

14    object, then I have to decide whether to send them back and

15    give you an opportunity to send any, you know, alternative

16    transcripts or revisions back with the transcripts.

17          MR. NESTLER:  And to be clear, we do want to send

18    transcripts back.  We have provided everything.  We've

19    introduced it in court to the defense and it's been shown to

20    the jury.  So that's our position.

21          THE COURT:  Okay.

22          MR. LINDER:  I've never been in a trial where we

23    did send transcripts back, so my initial reaction is no.

24    But I'm going to defer to the group on that.

25          MS. HALLER:  Sorry.  Your Honor, we would request

1    a no on that, under the best evidence rule.  And on the

2    jury's recollection --

3              THE COURT REPORTER:  I'm sorry.  I can't hear.

4              THE COURTROOM DEPUTY:  Could you please come to

5    the lectern.

6              MS. HALLER:  Just to follow up on Mr. Linder's

7    point that we would oppose the transcript because we would

8    prefer the jury go by their notes, their recollection, and

9    what they heard, and the recording, if it's available.

10              THE COURT:  Well, as I mentioned earlier, the law

11    in this circuit is perhaps different than it is elsewhere,

12    which is that transcripts can be sent back.  There are some

13    places that don't allow them to be sent back, period.

14              I think it's up to the discretion of the trial

15    judge.  So let me just take a look at the case law and I'll

16    let you all know.

17              Truth be told, most of the transcripts -- I was

18    following along.  It wasn't as if there was any real, A,

19    difficulty in hearing or, B, any deviation from the

20    transcripts and what was on the audio.  So I'm not sure this

21    is terribly a big deal.

22              All right.  Then Page -- let's see.  Let me just

23    skip over to Page 6 of your joint proposed instructions, and

24    that is concerning exhibits during deliberations.  The

25    defense is objecting to sending them back.  I do send them

1    back, so they'll be sent back.  I do that routinely, but

2    certainly in a case of this volume of exhibits, I will send

3    those back with the jurors, except, of course, firearms

4    and -- I guess there was some ammunition.  Those would be

5    the only exceptions, although the jury can request those if

6    they want to see them for any reason.

7          Okay.  Then turning to -- just sort of going in

8    order here, on Page 7, the proposed instruction on summary

9    witnesses:  It's not clear -- have we had a summary witness?

10   Or somebody -- is anybody considered a summary witness?

11         MR. NESTLER:  No.  I mean, we have introduced

12   summary exhibits and witnesses who explained summary

13   exhibits.  But the D.C. Circuit has advised, I think even in

14   a case a couple of months ago, for the Court to provide an

15   instruction if a summary witness testifies --

16         THE COURT:  Right.

17         MR. NESTLER:  -- about summary testimony.  We have

18   not introduced that and we don't intend to introduce that.

19         THE COURT:  Okay.  So is there any need for this

20   instruction, then?

21         MR. NESTLER:  Not from our perspective.  Not at

22   the current stage.

23         MR. CRISP:  Your Honor, what I would say is I

24   think part of what our concern is is that we may have

25   other -- and there were agents who testified to things that

1   they didn't directly deal with in their own investigation.

2   They touched on them collaterally as part of the -- you

3   know, so Agent Jones reviewed what Agent Smith did relevant

4   to her -- what Agent Jones was doing in their investigation.

5          So I see that as almost tantamount to a summary

6   witness, where they're incorporating the work of others.

7   So I'm not going to die on this hill right now.  Let me --

8   if I can think about it.

9          THE COURT:  Sure.  You can think about it.

10          MR. CRISP:  But classic summary, no.  I agree.

11          THE COURT:  Right.  I don't think there's been a

12   classic summary witness here, somebody who both incorporates

13   evidence and testimony as a pure summary.  That hasn't

14   happened.

15          I thought I understood the Government to suggest

16   in its opening that it might call such individuals, but it

17   hasn't happened so far.  And I mean, I am cognizant that

18   there is a difference -- and I'm sure everybody appreciates

19   this -- but there's a clear difference between summary

20   exhibits, which are substantive evidence, versus summary

21   testimony, which is not substantive evidence.  And that's

22   the reason for the instruction with respect to summary

23   witness testimony.

24          So if there is to be such a witness, I'll have to

25   give an instruction.  There's no limiting instruction

1    required with respect to summary exhibits, which themselves

2    are admissible as substantive evidence.  Okay?  So we'll

3    just see where things stand with that.

4              All right.  Then let's turn to Page 8.  And these

5    are the instructions concerning speech and firearms.

6              Well, before we even get there, I guess there is

7    an objection.  This is Footnote 12 to "even bad things" in

8    the other acts evidence instruction.  And I'm just going to

9    reword it to be consistent exactly with what the Red Book

10   says.  What the Red Book says is:  The law does not allow

11   you to convict a defendant simply because you believe he may

12   have done bad things not specifically charged as crimes in

13   this case.

14             So that's what the Red Book instruction is.

15   That's what I'll use.  Okay?

16             Speech and firearms:  I'm happy to hear from the

17   Government on both.  I will just -- in an ordinary case, I

18   probably would not be inclined to give anything like this.

19   But this is not the ordinary case.

20             It seems to me that I think two things:  One is,

21   there are certainly plenty of words here that, to the

22   average reasonable person, would seem offensive.  And I

23   think the jury should be reminded that sort of mere

24   offensive words aren't unlawful.  And similarly, there is

25   no -- with respect to firearms, obviously, there's no

 1    substantive unlawful possession of a firearm claim here.

 2    And there's no -- been no evidence, to my knowledge, that

 3    any of the firearms that have been introduced in evidence

 4    were unlawfully possessed.

 5            You know, whether they were lawfully possessed is

 6    a different question.  I don't know the answer to that,

 7    whether these folks were licensed, et cetera, et cetera.

 8            But it does seem to me that, given the fact that

 9    we've had a number of firearms brought into evidence, both

10    in court and then visually, that something like this

11    instruction would be appropriate just as it would be

12    appropriate for the speech instruction.

13            And so I'm open to hearing from the Government

14    about modifying it or convincing me that we don't need

15    either.

16            MR. NESTLER:  We don't believe that either are

17    appropriate.  As your Honor indicated, neither instruction

18    is typically given.

19            This is not a case where the Government has argued

20    or intends to argue that the vileness or offensiveness of a

21    particular comment is itself illegal.  The speech is

22    integral to the crime.  The speech evidence is the intent to

23    enter into a conspiracy.

24            And that is a hard concept to put into a jury

25    instruction and instruct the jury on.

1          THE COURT:  Actually, I think this is actually

2     done quite succinctly.  I mean, it says:  You may not find a

3     defendant committed a crime or that the conspiracy existed

4     simply because you find a defendant or other individuals

5     engaged in speech you find to be offensive.  You may,

6     however, consider the statements made by defendants and

7     other individuals as evidence that, for example, a

8     conspiracy existed, the defendant entered into a conspiracy

9     or a defendant had a certain motive, intent or knowledge.

10          MR. NESTLER:  We understand.  This paragraph is

11    the result of much back-and-forth between the Government and

12    defense, recognizing the place we would likely end up at.

13    We don't believe that the instruction is necessary or

14    appropriate.  But if it is given, we do believe that this is

15    a -- certainly a fair way to put it.

16          We do, on the Government's perspective, do believe

17    that the sentence in the footnote would be important from

18    the *Alvarez* case.  The defense objected to that sentence and

19    we did not include it here.  And this was the defense

20    proposal.  So --

21          THE COURT:  Right.

22          MR. NESTLER:  -- that's the Government's position.

23          THE COURT:  So let me look into that a little bit

24    more, because, you know, the *Alvarez* quote is -- I looked at

25    this.  It comes in a paragraph in which the Court is sort of

1  summarily talking about exceptions to First Amendment

2  protection:  you know, defamation, fighting words, words of

3  incitement, et cetera.

4          And, you know, the concept of speech integral to

5  criminal conduct is a little amorphous.  And to just sort of

6  just put it out like this I think is a little difficult.

7  But I'll take a closer look.

8          The reason I know this is because, you know --

9  anyway, I had to deal with this in the -- you know, *Thompson*

10  *v. Trump*, and so I had some familiarity with the concept and

11  understand it not to be so straightforward.

12          MR. NESTLER:  And -- we agree.  First Amendment

13  concepts are incredibly complicated and don't oftentimes pop

14  up in criminal cases or criminal jury instructions.

15          The reason that we think this sentence is

16  important is because the speech is integral to the criminal

17  conduct.  The criminal conduct is entering into a

18  conspiracy, and the way that a person does that is by

19  speech.  Of course, actions are going to be evidence of what

20  someone's intent was.

21          But, typically, speech, oral or written, is what

22  the person does entering into the conspiracy.  And the First

23  Amendment does not have anything to say or do about that,

24  which is going back to why we think the instruction itself

25  is not necessary or appropriate, because our position is

1    that when these Defendants spoke, they agreed to enter into

2    a conspiracy.  Nothing at all to do with the First

3    Amendment.

4         And the First Amendment does not protect two

5    individuals getting together talking and agreeing to commit

6    a crime, which is why we believe this sentence does

7    encapsulate and incorporate an appropriate concept of the

8    law, which is that the First Amendment has no application

9    here.

10        THE COURT:  Well, look, I'll take a look at this

11   concept and whether it makes sense.  I will say, on the

12   whole, I think it's actually a fair and balanced -- it's

13   both accurate and fair and balanced in terms of how speech

14   and the First Amendment protections are being conveyed to

15   the jury, and I think it is ensuring that, you know, they

16   can't convict -- that they are reminded they can't convict

17   these Defendants simply because they are offended by what

18   they have said and that, you know, to the extent that they

19   are considering what they have said as evidence, it has to

20   be something that is relevant to establishing an element of

21   the crime.

22        And so I think this instruction actually does a

23   good job of doing that and I think the firearms instruction

24   does a good job of striking that balance, too.

25        So, you know, subject to the discussion we've had

5517

1    about that addition in Footnote 13, I think I'm going to be

2    inclined -- I think I am inclined to give both instructions

3    that have been proposed.

4            All right.  So --

5            MR. FISCHER:  Your Honor, may I inquire as to the

6    one regarding the firearms?  Ms. Halim was kind enough to

7    put these together.

8            But I believe it should also read "possessed and

9    transport firearms, or transported," because that's what

10   happened in this case, and it is legal, especially under the

11   *Bruen* decision, the recent *Bruen* decision.  So where it says

12   "possessed firearms and transported" or "and transport."

13           THE COURT:  So -- you'll have to forgive me, but

14   it's not clear to me -- and I may be wrong about this --

15   that the Court has said anything about the Second Amendment

16   and transporting of weapons.  I mean, again, I haven't read

17   *Bruen* recently; but to my recollection, it was simply a --

18   the case was primarily about New York's gun law that

19   required some sort of good cause for having a concealed

20   permit.  Or, actually, maybe it was just -- I can't

21   remember -- just getting a license.

22           MR. FISCHER:  Your Honor, first of all, I would

23   say, number one, there's -- in the state of Virginia, open

24   carry is allowed.  Also, you can transport firearms.

25   There's also a federal law that, even when in the District

1     it was illegal to possess firearms -- it's called the

2     Firearms Owners' Protection Act, which protects the

3     transport of firearms even in places where they were illegal

4     as long as they're not loaded and out.

5          So in this case, transporting firearms from

6     Florida, or anywhere south of the District of Columbia, into

7     the state of Virginia, there would have been nothing illegal

8     about transporting those firearms, even loaded.  That would

9     have been legal, especially since the -- the rifles,

10    especially.  I don't know -- there may have been -- I'm not

11    sure if there was a handgun or not.  But I know the rifles,

12    especially, there would have been no prohibition against

13    transporting those firearms interstate.

14         MR. NESTLER:  We disagree.  So 231 itself

15    criminalizes the transportation of firearms for use in

16    furtherance of a civil disorder.  And so we're getting into

17    very complicated areas of possession and transport and use

18    of firearms.

19         This instruction, leaving aside the First

20    Amendment instruction, going to the Second Amendment

21    instruction, it is confusing.  The possession of a firearm

22    with an improper intent is itself illegal.  Possessing a

23    firearm intending to use that firearm to commit a murder or

24    a bank robbery is itself illegal.

25         And so instructing the jury that possessing a

1    firearm is not -- there's nothing illegal about it or

2    unlawful about it, there is in certain circumstances.  And

3    explaining those certain circumstances is particularly

4    complicated to do, especially in a case like this.

5            I believe the defense has been able to elicit on

6    cross from various FBI agents the idea that certain firearms

7    were possessed or purchased legally at certain times.  But

8    then the defense usually tries to ask the final question,

9    which your Honor usually sustains an objection to, which is:

10   Was it illegal to possess the firearms here?  Which is

11   ultimately the question for the jury.

12           And this instruction could intrude a little bit

13   further on that jury decision about whether the possession

14   of these firearms was itself inherently unlawful because of

15   the intent the Defendants had at the time they possessed the

16   firearms.

17           MR. CRISP:  But in all candor, Judge, the last

18   sentence gives the Government free rein to make that

19   argument.  So we're not trying to obfuscate that component.

20   I think -- there's nothing about this instruction that is

21   inconsistent with what Mr. Nestler just argued.

22           MR. FISCHER:  Your Honor, my main concern is that

23   the jury may think that there's something illegal about

24   bringing firearms to a hotel in Virginia.  There's nothing

25   illegal about it.  I mean, it's not my cup of tea, but

1    there's simply nothing illegal -- it's a temporary --

2              THE COURT:  Well, I mean, you are right.  There's

3    nothing illegal about it absent it being accompanied with a

4    criminal purpose.

5              MR. FISCHER:  Agreed.

6              THE COURT:  So I think that's the rub here, and

7    trying to strike the right balance in terms of how this is

8    communicated to the jury is important.

9              I mean, look, I think the idea -- the concept that

10    I'd like to get to the jury is -- maybe they already

11    understand -- is that none of these Defendants are charged

12    with individually illegally possessing a firearm.  They're

13    not accused of standing -- they're not standing -- they do

14    not stand accused -- excuse me -- of violating any federal

15    or state law with respect to mere possession of a firearm.

16              And, you know, I think there may be a simpler way

17    to get that point across than injecting constitutional and

18    other challenging principles into this.  So let me think

19    about it.  Maybe I can come up with something.

20              MR. FISCHER:  Thank you, your Honor.

21              THE COURT:  Okay.  Let's see.  I think the next --

22    okay.  Page 11.  There was opposition to the highlighted

23    portion that the indictment alleges the Defendants agreed to

24    oppose by force, et cetera.  I'll include that in the

25    instruction in the same way that I included that in the

1    opening instructions given that that is what the Defendants

2    are charged with for purposes of the seditious conspiracy

3    count.

4              MR. CRISP:  Judge, real quick.

5              THE COURT:  Yes.

6              MR. CRISP:  The bottom of Page 9, there was just

7    that "Others will have their day in court."  Did we already

8    resolve that?

9              THE COURT:  Oh, I'm sorry.  I skipped over that.

10             MR. CRISP:  That's okay.

11             THE COURT:  The "Others will have their day in

12   court" comes out.  I didn't use it in the initial

13   instructions; I won't use it here.

14             MR. CRISP:  I though we had talked about it, but I

15   wasn't sure.  So thank you.

16             THE COURT:  Yes.  You're right.  I did skip over

17   that, Mr. Crisp.

18             Okay.  Page 13, we start getting into more

19   substantive instructions.  At the top of Page 13, there's an

20   objection to the word "simply" being included in the

21   conspiracy there.

22             I'll take it out.  I don't know that it's doing a

23   lot of work there and may unnecessarily -- it's creating

24   unnecessary -- it's doing work it doesn't need to do.  Let

25   me just put it that way.

1          So it will just read:  A conspiracy is an

2     agreement, as opposed to "simply an agreement."

3          All right.  Let's talk about the existence of a

4     conspiracy.  This is the dueling instructions on Pages 13

5     and 14.  And I guess my question to you all is:  Is there a

6     reason to deviate from what the standard Red Book

7     instruction is as to that element?  And this is 7.12 --

8     excuse me -- 7.102.  And it reads as follows.  It's

9     describing the element:  This does not have to be a formal

10    agreement or plan in which everyone involved sat down

11    together and worked out the details.  On the other hand,

12    merely because people get together and talk about common

13    interests or do similar things does not necessarily show

14    that an agreement exists.  It is enough that the Government

15    proves beyond a reasonable doubt that there was a common

16    understanding among those who were involved to commit the

17    crime.  So the first thing that must be shown is the

18    existence of an agreement.

19          And then I think the Defendants' proposal on the

20    top of Page 15, which sort of summarizes direct and

21    circumstantial evidence, I think is an appropriate one to

22    give.  And I would support -- or submit to you that we could

23    just marry those two; in other words, take the standard Red

24    Book instruction that's Paragraph 1 about agreement and

25    marry it with the second paragraph the Defendants have

 1    proposed.

 2              MR. NESTLER:  And so, from the Government's

 3    perspective, we don't believe that the Red Book instruction,

 4    which is tailored towards Superior Court charges here,

 5    accurately or adequately captures sort of -- some of the

 6    nuances of federal law.

 7              We also know that there's a little bit of a

 8    distinction here because we're dealing with conspiracies

 9    that don't require overt acts.

10              THE COURT:  Right.

11              MR. NESTLER:  And so we were basing our

12    instruction on some of the other federal principles,

13    including some of the seditious conspiracy cases.

14              THE COURT:  Look, to be clear, I mean, this is

15    just your general conspiracy.  So we have not, for example,

16    included an overt act as one of the elements of conspiracy

17    as a general proposition.  This is simply the instruction

18    about the agreement element, the first element of a

19    conspiracy.

20              MR. NESTLER:  Right.  And --

21              THE COURT:  And you all have disagreed about it.

22              MR. NESTLER:  Right.  And the second paragraph

23    that the Government proposed, which is drawn from other

24    federal jurisdictions, including, most notably, in New York,

25    talks about "Common sense tells you that when people agree

1    to enter into a criminal conspiracy, much is left to

2    unexpressed understanding.  It is rare that a conspiracy can

3    be proven by direct evidence of an explicit agreement."

4          That concept is not, we believe, adequately

5    captured by the standard Red Book instruction.  That concept

6    both comes from, I think, Judge Mukasey's instruction in the

7    1993 seditious conspiracy case in New York and from other

8    SDNY cases, as well as your Honor's statement in *Thompson*

9    *versus Trump* about the existence of a conspiracy.

10          And we believe that's an important concept to get

11    across to the jury here.

12          THE COURT:  So let me just say, I am a little bit

13    reluctant to rely on anything I said in *Thompson v. Trump*,

14    since that was based upon *Halberstam*, which is a civil

15    conspiracy case.  I understand there are overlapping

16    principles between criminal and civil conspiracies, but

17    there's arguably some daylight between the two.

18          I guess what I'll say is this:  Let me take a

19    look -- I think what the defense is trying to convey in its

20    second paragraph is not dissimilar to what you're trying to

21    convey more, perhaps, directly.  But let me take a look at

22    what the sort of standard federal jury instructions are, the

23    proposed -- sorry -- model instructions are.

24          For reasons that are unclear to me, we don't have

25    model instructions in this circuit, but let me take a look

1    elsewhere and see how other circuits have dealt with this.

2              MR. NESTLER:  Understood, your Honor.

3              It's that second paragraph that we think is

4    important to get across about how a conspiracy is formed and

5    how evidence of a conspiracy often is introduced.  And our

6    understanding is that the reason some other federal

7    jurisdictions, SDNY in particular, uses this language is

8    because jurors often have a misapprehension about what a

9    conspiracy is --

10             THE COURT:  Right.

11             MR. NESTLER:  -- and this is supposed to disabuse

12   them of that notion and explain it in fairly colloquial,

13   direct terms.

14             And our concern with the Red Book instruction and

15   some of the proposal from the defense here is that it's much

16   more legalistic and, therefore, more complicated.  And we're

17   trying to make it more understandable to the jury.

18             THE COURT:  Okay.  I mean, to be fair, the first

19   sentence of that second paragraph you've proposed is nearly

20   identical to what the Red Book says, you know, the idea that

21   people don't have to sit around a table and come to an

22   agreement.  But --

23             MR. GEYER:  Your Honor, I'm not a big fan of the

24   last sentence:  It is rare that a conspiracy can be proven

25   by direct evidence of an explicit agreement.

1    First of all, I don't think that's true.  I don't

2    know what "rare" means.  And it suggests that there is some

3    sort of statistical analysis based on prior filed cases.  So

4    it's just kind of a dangling sentence there.

5    THE COURT:  Look, I think that's fair, Mr. Geyer.

6    So let me do this:  I'll take a look at what -- at

7    some other model instructions and see how they convey the

8    concept the Government is trying to convey here.

9    I'm not hearing the defense disagrees with it, at

10   least fundamentally.  Let me take a look at some of that

11   language and we'll figure out what makes the most sense.

12   Does that work for everybody?

13   MR. NESTLER:  Yes.

14   Would your Honor appreciate if we sent you some

15   model instructions from other cases about this?

16   THE COURT:  Sure.  If anybody wants to send me

17   whatever you want me to look at, I'm happy to do that.

18   MR. NESTLER:  Thank you, your Honor.

19   THE COURT:  So the next issue comes up on Page 15.

20   This is under the subheading "Success is irrelevant."

21   So there's a disagreement about the use of the

22   word "actually."  I'm not sure what the reason for the

23   objection is from the defense to use the word "actually."

24   MR. FISCHER:  Your Honor, quite frankly, this is

25   Ms. Halim's work.  I don't particularly have a problem with

```
 1      it.
 2                  MS. HALLER:  I don't either, your Honor.
 3                  MR. FISCHER:  I think we'll withdraw that one,
 4      your Honor.
 5                  MR. CRISP:  Well, let me pick up her banner, if I
 6      may.
 7                  As I'm looking at it now -- I would not
 8      necessarily have caught it -- but I think it has the
 9      potential to imply that there was an agreement actually
10      formed.  So to me, I think, someone could infer from this
11      that -- so just simply saying, "It does not matter whether
12      the persons who formed the agreement actually carried out
13      their plans or whether the agreement ultimately was
14      successful," it implies a degree of fact as to whether or
15      not that occurred, which I think is not necessarily
16      accurate.
17                  THE COURT:  Okay.  I mean, I'm not sure I read it
18      that way.
19                  MR. CRISP:  Okay.  Then that -- that's fine.
20                  THE COURT:  We'll leave that in.
21                  The second question, then -- the next paragraph is
22      fully objected to, and it's not a paragraph I've seen
23      before.  So I was curious where it came from, if you all
24      recall.
25                  MR. NESTLER:  It came from another case, your
```

1    Honor.  I can point to the Court to where it came from.  I

2    believe we included all of the conspiracy instruction

3    citations in the initial -- I think in Paragraph 21.  So we

4    can point the Court to where that paragraph came from.

5                THE COURT:  Okay.

6                MR. NESTLER:  We do believe that's appropriate,

7    especially in this case, to point this out, that proof of

8    the accomplishment of the object of the conspiracy is

9    persuasive evidence that the conspiracy existed in the first

10   place.

11               MR. GEYER:  Your Honor, I object to that

12   paragraph.

13               THE COURT:  I know you do, Mr. Geyer.

14               MR. GEYER:  This is clearly "The ends justifies

15   the means" baked into this paragraph.  And --

16               THE COURT:  Mr. Geyer, you don't need to say

17   anything more.

18               Look, I'd like to see where it's been used before.

19   I'm a little -- I always hesitate to include any

20   instructions that suggest to the jury that one type of

21   evidence is more substantial than the other.  And that's

22   sort of what this paragraph seems to do.

23               You know, the Red Book instruction, for example,

24   simply just says the Government is not required to prove

25   that the objective was achieved, which is similar to what

1    the first sentence says and doesn't -- the Red Book

2    instruction doesn't include anything like this second

3    paragraph.

4            So if it is, you know, in a model federal

5    instruction somewhere, I'd be happy to see it.  If a

6    district judge somewhere used it, I'm happy to look at it.

7    But that will carry less weight with me in including it.

8    Okay?

9            MR. NESTLER:  Understood, your Honor.  Thank you.

10           THE COURT:  So moving on, I have nothing, then,

11   until Page 22.

12           MR. FISCHER:  Your Honor --

13           THE COURT:  And that is the definitions section of

14   the seditious conspiracy instruction.

15           So the first objection is to the defense proposal

16   that asks for unanimity as to which law was being impeded or

17   prevented, hindered or delayed.

18           MR. FISCHER:  Your Honor, if it's possible, if we

19   could back up a page.

20           THE COURT:  Yes.

21           MR. FISCHER:  And I apologize.  I think I have a

22   prior copy of this.  But there's a paragraph where it says:

23   To determine whether a defendant conspired -- it starts with

24   that.  I think it's about a page beforehand.

25           THE COURT:  Right.

1          MR. FISCHER:  The second sentence reads:  A

2    conspiracy to oppose the authority of the United States

3    requires an agreement to commit an act that would adversely

4    affect the ability of the United States Government to govern

5    or perform one of its proper functions.

6          Your Honor, I believe that sentence should be

7    stricken because I don't believe -- I don't believe that

8    accurately characterizes the statute.

9          And I guess I would say to the Court, I plan on

10   filing a memorandum prior to Rule 29 on that issue, but I

11   don't believe that that section of the seditious conspiracy

12   statute where it says -- it talks about the ability of the

13   United States Government to govern -- it almost makes it

14   sound like it's tailored specifically to something that's

15   going on in Congress, and that's not the way I read the

16   statute.

17         I read the statute as -- in fact, if you read the

18   next sentence, it says:  The agreement must be to resist

19   some positive assertion of actual exercise of authority.

20   And I believe the most important word there is "resist,"

21   because in order to conspire, you have to conspire to resist

22   basically the Government taking action after you or the

23   conspirators -- it has to be a proactive action of the

24   Government.

25         So it's back to that *Baldwin* decision, which is

1      about as clear as mud.  But I think that it's a very

2      problematic -- and I guess I'll just say to the Court, I

3      think -- we're going to do a little briefing on it, and I

4      would just bring that to the Court's attention.

5              THE COURT:  When you say "it," what do you mean,

6      Mr. Fischer?  Briefing on "it"?  What do you mean?

7              MR. FISCHER:  On this instruction, especially on

8      the first part of the seditious conspiracy statute.  I know

9      the Court has ruled on the portion of the statute regarding

10     execution of the law.

11             But this statute -- this portion, I believe, has a

12     different element to it, and I've got something together I

13     can send to the Court perhaps over the weekend.

14             THE COURT:  Okay.

15             MR. NESTLER:  Your Honor, this -- what the parties

16     submitted is a reflection of much back-and-forth, mostly

17     between me and Ms. Halim, representing the defense group.

18     This is not any language that we had initially -- that the

19     Government had initially proposed or that we necessarily

20     want.  This is a result of a negotiated disposition of how

21     we agreed this should come in using mostly *Baldwin versus

22     Franks* and 2384 and some of the *Abdel-Rahman* case.

23             So I'm, of course, happy to look at what

24     Mr. Fischer wants to submit as well.  But if that's the

25     case, we might want to go back to our initial proposal,

1    which is not this language.

2            I only point that out because that's why we

3    submitted this joint proposal this way.  But that language,

4    I believe, comes from *Baldwin versus Franks*.

5            MR. FISCHER:  And I apologize.  At the time, your

6    Honor, I had only gotten through five terabytes of discovery

7    at that point and didn't have enough time to -- we had to

8    recruit Ms. Halim to do this for us, so -- and she did a

9    great job, but there are -- I think there are a few things

10   that we perhaps don't see eye to eye on.

11           THE COURT:  If you'd like to submit something, I'm

12   happy to take a look at it.

13           MR. FISCHER:  Thank you, your Honor.

14           THE COURT:  You know, it's been a while since I've

15   looked at those cases, and so I'm happy to go back and do

16   that.  So we'll just put a sort of question mark next to

17   that paragraph.

18           And then there was then the paragraph on Page 22,

19   top of Page 22, in which the defense is requesting a

20   unanimity instruction concerning which law Defendants

21   prevented, hindered or delayed.

22           And I think I tend to agree with the Government

23   that a unanimity instruction isn't required here.  But --

24           MR. CRISP:  What was that?

25           THE COURT:  I said I'm inclined to agree that a

 1    unanimity instruction is not required here, because this is

 2    a different means of violating the law using the same

 3    conduct.  This isn't sort of alternative -- different types

 4    of conduct that might give rise to a violation.  It's the

 5    same conduct.  Everybody agrees what the conduct is.  It's

 6    just which law is violated.

 7            And I'm not sure that the jury needs to reach

 8    unanimity as long as they reach unanimity that a law has

 9    been violated.

10            MR. FISCHER:  Your Honor, I think the defense

11    position is we --

12            THE COURT:  Not violated, but hindered, delayed

13    or -- from being executed.  I misspoke.

14            MR. FISCHER:  Your Honor, perhaps we can -- maybe

15    we can brief the Court on that, since I'm going to file

16    something anyway, or send something to the Court.  But I

17    believe that would require unanimity.  I think they're

18    separate -- they have separate elements.

19            THE COURT:  What has separate elements?

20            MR. FISCHER:  The -- the two sections of the

21    seditious conspiracy.

22            THE COURT:  I don't think there's any doubt you're

23    right that the two clauses which have been alleged in the

24    indictment as ways of violating the act -- there's

25    clearly -- and I think that's in here somewhere -- but there

1   has to be unanimity as to by which of those two means the

2   statute is being violated.

3           The question here is:  If the jury is to convict

4   on the means of violation by preventing, hindering or

5   delaying the execution of the law, whether the jury needs to

6   be unanimous as to which law.

7           And the laws here are the, you know --

8           MR. FISCHER:  Oh.

9           THE COURT:  -- you know, Article II of the

10  Constitution, Title 3, Section 15, you know, the -- the law

11  that we've seen and has been admitted already.

12          So as I said, I don't think the jury needs to

13  reach unanimity on which law, as long as they all

14  unanimously find that some law that's identified in the

15  indictment has been prevented, hindered or delayed.

16          If you all want to put something in writing and

17  think otherwise, let me know.  Okay?

18          MR. FISCHER:  I misunderstood, your Honor.

19          So I -- but we'll put something in writing if

20  we -- once we review this further.  Thank you.

21          THE COURT:  So that will presumptively come out,

22  but if you all want to put something in writing, then I'm

23  happy to see something.

24          Okay.  There is, then, the carryover sentence from

25  Page 22 to 23:  Indeed, just as participants in a legitimate

1    business venture may be unaware of -- et cetera.

2            And I guess the question is:  Do we know -- does

3    the Government know where that comes from?  Is that

4    something in a model instruction or an instruction that

5    someone has used in the past?

6            MR. NESTLER:  Yes, your Honor.  We did not create

7    any of these out of whole cloth.  We can point the Court to

8    the specific instruction where that came from.

9            THE COURT:  Okay.

10           MR. NESTLER:  And we're happy to do that as well.

11           THE COURT:  All right.  Why don't you send me

12   something, because I'll tell you, I'm generally reluctant to

13   use these kind of analogies in jury instructions -- I think

14   it has the possibility of creating confusion -- and that I

15   just prefer to sort of stick with the law as the better way

16   to go.

17           So unless, as I said -- as I observed earlier,

18   that if this is something that a district court judge has

19   thrown into an instruction, that will be less persuasive to

20   me than if it's in a model instruction from any one of the

21   circuits.

22           Okay.  Let's see.  I think that takes care of

23   seditious conspiracy.

24           That puts us on Page 26.  This is the elements --

25   I'm sorry.  This is -- oh.  All right.  The first question I

1    had is as follows:  So I'm on Pages 23 through 25.  This is

2    the proposed instruction for obstruction of an official

3    proceeding.  At the top of Page 25, we identify the element

4    of the offense.  The first element is the Defendant

5    attempted to or did obstruct or impede an official

6    proceeding.

7          And I'm wondering whether "attempt" should be

8    included here, given that there's a full attempt instruction

9    upcoming.  And I recognize the statute can be violated by

10   either a completed crime or an attempt, but the way I viewed

11   the structure of this, it would be elements of a completed

12   offense, elements of an attempt offense, elements of an

13   aiding and abetting theory, and so I thought that may be a

14   little confusing.

15         MR. NESTLER:  Understood, your Honor.

16         The first element is supposed to hit the

17   Defendant's intent, so it's the -- well, we're fine with

18   taking out "attempted to" in the first element there on the

19   top of Page 25.

20         THE COURT:  Okay.  So it would just then read:

21   The Defendants did instruct or impede an official

22   proceeding.

23         MR. CRISP:  The defense concurs, Judge.

24         THE COURT:  So we'll take -- that will be stricken

25   there.

5537

1          And then on Page 26, the Government is proposing

2     using a catch-all here in this series of examples of acts

3     that could be obstructed.

4          And I'm okay with including it in there.  I don't

5     see that there's anything inaccurate or particularly

6     problematic with it.  Okay?

7          MR. FISCHER:  Your Honor, can we go back up to the

8     prior page under definitions?

9          THE COURT:  Yes.

10         MR. FISCHER:  The second sentence says:  The

11     official proceeding need not be pending or about to be

12     instituted at the time of the offense.  If the official

13     proceeding was not pending or about to be instituted, the

14     Government must prove beyond a reasonable doubt that the

15     official proceeding was reasonably foreseeable to the

16     Defendant.

17         I think that those two sentences should be

18     stricken.  They're not applicable here because there is a --

19     everybody agrees -- well, we disagree it's an official

20     proceeding.  The Court has heard our objection.  But based

21     on the Court's ruling, everybody agrees the Electoral

22     College certification was the official proceeding and, as a

23     matter of law, it started at 1:00 p.m.  So it's not an issue

24     of a pending proceeding.

25         THE COURT:  Well, I guess -- maybe I'll take it

 1    out.  But you would then have to promise me you're not going

 2    to get up and say:  They had already adjourned and, you

 3    know, by the time these folks, you know, ended up inside the

 4    Capitol Building, you know, Congress had already adjourned

 5    and, therefore, they could not have, you know, impeded an

 6    official proceeding.

 7         You know, because -- you're right:  It doesn't

 8    need to be pending.  That is the law.  It doesn't need to be

 9    pending or about to be instituted.  But if it's not pending

10    or about to be instituted, the Government must prove beyond

11    a reasonable doubt that the official proceeding was

12    reasonably foreseeable to the Defendant.

13         And it seems to me that instruction would be -- if

14    you intend to argue what has been suggested by some

15    cross-examination and, you know, some of the arguments that

16    have been made prior, I think that instruction needs to stay

17    in.

18         MR. FISCHER:  Well, your Honor, it seems to me

19    that there has been testimony so far that this -- that the

20    Electoral College -- it was going to take -- we just had

21    testimony today about security protocols of the Secret

22    Service.  There have been two witnesses, I believe, Captain

23    Ortega and the parliamentarian also indicated it was going

24    to take several hours before the official proceeding could

25    start back up.

1          I just -- I think it's just confusing language.

2     And I think -- certainly the Government can argue, at least

3     for those individuals who went inside the Capitol -- and I

4     don't know; perhaps for Mr. Caldwell if they choose --

5     that -- you can argue that they obstructed the Electoral

6     College at that point, and perhaps even their presence in

7     the Capitol or on Capitol grounds could have done something

8     to prevent or to have obstructed or impeded that proceeding.

9          But everybody agrees that's the proceeding.  And I

10    just don't want to have the jury confused that it could find

11    that there's something else they're holding up or -- I just

12    think it's confusing language.

13         MR. NESTLER:  We disagree.  I think Mr. Fischer's

14    cross-examination of several witnesses has already indicated

15    what his theory is.  And these sentences here are a correct

16    statement of the law and go to counteract exactly the

17    argument that he has been making through cross.

18         THE COURT:  I think Mr. Nestler is right about

19    that, at least in terms of the accuracy of the -- of the

20    legal principles.  I mean, that's straight out of various

21    circuit decisions about the definition of official

22    proceeding.

23         And I think -- I'm going to leave it in there

24    because I do think some of the cross-examination has

25    suggested that there may be argument before the jury that

1    there was no pending official proceeding and, therefore --

2    at the time of entry and, therefore, they couldn't have

3    impeded any -- obstructed or impeded an official proceeding

4    which already itself was obstructed or impeded.

5           And so I think this language here addresses that

6    possibility of an argument and also correctly states the

7    law.

8           It occurred to me -- I mistakenly skipped over

9    this.  It's the last sentence in the first paragraph under

10   definitions which begins:  As used in Count 3, the term

11   "official proceeding" means Congress's joint session to

12   certify the Electoral College vote.

13          Two things:  One, I think it ought to say "as used

14   in Counts 2 and 3," just to be clear.

15          But the more substantial comment is, are you

16   asking me to instruct the jury as a matter of law that the

17   congressional joint session was an official proceeding?  Or

18   are you asking the jury to make that determination based

19   upon the instruction here?

20          MR. NESTLER:  The parties have agreed -- and

21   Ms. Halim and I discussed this extensively -- that the Court

22   would give this language, which is instructing the jury as

23   to the legal conclusion your Honor already reached, that the

24   official proceeding was Congress's joint session to certify

25   the Electoral College vote.

1              THE COURT:  Okay.

2              MR. NESTLER:  So they don't need to find that

3     element.  It's already been found as a matter of law.

4              THE COURT:  Well, yes and no.  Yes, in the sense

5     that I did find that it was pleaded sufficiently to make out

6     a claim -- excuse me -- make out an offense for purposes of

7     the indictment.

8              Whether the jury should be instructed to consider

9     that element and make a determination beyond a reasonable

10    doubt seems to me to be a slightly different question.

11             And so if the defense is in agreement that the

12    jury does not need to deliberate on whether the

13    certification was an official proceeding, understanding

14    you've still maintained your legal objection, I'm happy to

15    leave it as is.

16             But it was just not clear to me which of those two

17    routes you all are asking me to go.

18             MS. HALLER:  My understanding, your Honor, is that

19    we reserved --

20             Oh, sorry.  Oh, should I go up to the lectern?

21             THE COURTROOM DEPUTY:  You can use that

22    microphone.  That's fine.

23             MS. HALLER:  No.  My understanding, your Honor, is

24    that we did -- that this is essentially more of a draft,

25    that we haven't waived that argument, and that it would be a

1    question for the jury to determine.

2        THE COURT:  Is that what defense counsel is asking

3    for, for an instruction that requires the jury to deliberate

4    on that element?  And whether -- in which case, if that's

5    what you're asking for, then I think we need to add some

6    more meat to the bone here in terms of what constitutes an

7    official proceeding, although it does say "includes a

8    proceeding before Congress."

9        MR. NESTLER:  And so just to be clear, this is not

10    as strong as the Government initially wanted.  So the

11    Government initially wanted the Court to say to the jury:

12    The official -- I have found that Congress's joint session

13    was an official proceeding under the meaning of the statute.

14        THE COURT:  Right.

15        MR. NESTLER:  That's the Court telling the jury:

16    Don't worry about this.

17        This language here is a more negotiated version,

18    which is the Court telling the jury:  As used here, the term

19    means this.

20        So the jury still has to find or, I guess,

21    incorporate that concept into a finding that the elements

22    have been hit.  Because we're now just defining what

23    "official proceeding" is.  This is the official proceeding

24    we're talking about here, to go to Mr. Fischer's point, but

25    not the Court telling the jury the Court already reached

 1    that decision and they don't need to.

 2            THE COURT:  So to be clear, then, the Government

 3    is not asking for me to instruct the jury that they should,

 4    as a matter of law --

 5            MR. NESTLER:  That's correct.  We are comfortable

 6    with the language as it exists here without going to -- this

 7    is already the result of a negotiation which is not asking

 8    the Court to tell the jury that the Court already found this

 9    as a matter of law.

10            MS. HALLER:  Your Honor, we -- going to the meat

11    on the bone, we could propose additional language.  I mean,

12    we could all think about this, your Honor, since, as your

13    Honor said, with the -- adding meat on the bone to give this

14    to the jury.  We could bring back language.

15            THE COURT:  Okay.  Very well.

16            So can I suggest a slight tweak to that last

17    sentence?  Because the way it was worded created confusion

18    in my mind as to whether the jury needs to resolve that

19    matter, and that we instead say Counts 2 and 3 allege that

20    the official proceeding is Congress's joint session to

21    certify the Electoral College vote.

22            MR. NESTLER:  That would be asking the jury to

23    reach the decision, the factual decision.

24            THE COURT:  Correct, which is what I had thought

25    the Government is saying the jury should do.

1          MR. NESTLER:  No.  We don't believe the jury needs

2     to do that.  We would rather the Court just instruct the

3     jury that --

4          THE COURT:  Okay.

5          MR. NESTLER:  -- this is none of the jury's

6     business.

7          THE COURT:  Okay.

8          MR. NESTLER:  This proposal here was, as I

9     indicated, because the defense wanted a different proposal,

10    and so we reached a compromise.

11         So no, we would not appreciate or want what the

12    Court just suggested.  We would rather the Court just

13    instruct the jury:  This is none of their business.

14         THE COURT:  Well, I mean, if that's the

15    understanding, then this is really complicated.  And it

16    really ought to just simply say, you know:  You are hereby

17    instructed that the joint session to certify the Electoral

18    College vote is an official proceeding, period.  Nothing

19    more to say about it.

20         MS. HALLER:  Your Honor, your change with the

21    "allege" is perfect.  It works.

22         MR. NESTLER:  Right.  But this is a question of

23    law, not a question of fact.  And so the question of law

24    is --

25         THE COURT:  No.  I -- I'm not disagreeing,

1    Mr. Nestler.  If everyone is in agreement that the jury

2    doesn't need to deliberate on that element, I think this

3    instruction is much more -- ought to be much more simple

4    than the way it is presently worded.  It ought to just

5    simply say, you know, you are hereby instructed that, you

6    know, Congress's joint session to certify the Electoral

7    College vote is an official proceeding, period.

8         MR. NESTLER:  That would be our preference.  When

9    I negotiated this with defense, that was not what the

10   defense wanted.  This is why we ended up with this language.

11   But if that is what the Court is inclined to do, the

12   Government is amenable.

13        MR. CRISP:  And to be clear, we're not talking

14   about the element.  We're talking about a term within the

15   element.  That's the --

16        THE COURT:  But that's the element.  Right?  It

17   has to be that -- I mean, an official proceeding is an

18   element.  Right?  It's not just any old proceeding; it's an

19   official proceeding.

20        MR. CRISP:  Agreed.

21        THE COURT:  And we can do this one of two ways.

22   Right?  I can tell them that this is an official proceeding,

23   take it off the table for purposes of deliberation.

24        Or the defense could say, you know, Judge, that's

25   an element.  That's something they need to reach beyond a

1    reasonable doubt based upon the evidence that's been

2    presented.  And it wasn't clear to me, based on this

3    paragraph, which way you all were asking me to deliver this

4    instruction.

5         MR. CRISP:  I am not comfortable, and I think I

6    speak for the defense in saying that you should instruct

7    them on the element per se.  So I am not comfortable saying

8    that just by saying, because you have found that the

9    certification is an official proceeding, that you can find

10   Element 1 has been met.

11        I don't agree with that.

12        THE COURT:  Okay.

13        MR. CRISP:  I think -- I was under the impression

14   it was -- the official proceeding in question is the

15   certification, which this Court has found to be an official

16   proceeding.

17        But --

18        THE COURT:  No.  That's --

19        MR. CRISP:  -- the way you're phrasing it --

20        THE COURT:  But that's different.  I mean, again,

21   look, you've got -- there's two different possibilities:

22   You know, we take it off the table.  They've been given a

23   legal instruction that the proceeding is an official

24   proceeding.

25        Or they are told that the indictment alleges the

1    official proceeding in this case is Congress's joint session

2    to certify the electoral vote, and they have to determine

3    beyond a reasonable doubt whether that meets the definition

4    of "official proceeding."  Right?

5            So it can't be both.  It's got to be one or the

6    other.  So that's what I need to know so we can word it

7    appropriately.

8            MR. CRISP:  The defense would say Option 2, Judge.

9            THE COURT:  Okay.

10           MR. NESTLER:  Option 1, please.

11           THE COURT:  All right.  Look, given that it is, I

12   think, always a little dangerous for a judge to instruct on

13   an element and require the jury unless there's some

14   appellate decision that is squarely on point that says --

15   you know, that defines a particular element as having been

16   satisfied.

17           So, look, I don't think, at the end of the day,

18   this is likely to be much of an issue, but nevertheless,

19   this is all about getting it right.  So I think we've got to

20   reword this in a way that both makes clear that the jury

21   needs to find that Congress's joint session was -- is an

22   official proceeding and then explain what "official

23   proceeding" is.  The statute defines it as a proceeding

24   before Congress -- before Congress.  And we can simply say

25   that and leave it at that.

```
 1              MR. NESTLER:  And that's what the first sentence

 2     of the paragraph already says.  And that's, I think, the

 3     best definition to provide.

 4              THE COURT:  Well, let me -- I'll work on this a

 5     little bit just to see if I can get it clarified.

 6              I think this can all be solved simply by taking

 7     the "as used in Counts 2 and 3" line, that last sentence,

 8     and then just move it up above definitions and after the

 9     fourth element.

10              So -- and so use the language that I've -- you

11     know, use this or something similar to this.  And I think

12     that makes clear what the alleged official proceeding is,

13     and then they'll look at the definition of an official

14     proceeding and they'll understand that they've got to

15     determine whether the congressional joint session is, in

16     fact -- in fact, meets the definition.

17              So I think that's the way to do it.  And -- let's

18     do it that way.  And I think that should resolve any

19     confusion.

20              Okay.  Page 26.  We had talked about that already,

21     that additional clause after -- in that series.  I'm okay

22     with it.

23              Then talking about aiding and abetting on Page

24     27 -- sorry.  Bear with me, everyone.  Sorry.  I'm just

25     looking at my notes here.
```

```
 1              Okay.  This is the issue.  So if you look at the
 2    bottom of Page 27, the first element, it says:  The others
 3    committed obstruction of an official proceeding by
 4    committing each of the elements of the offense charged as I
 5    have explained above.
 6              Stepping back for a moment, I understand the
 7    aiding and abetting theory of liability goes both to the
 8    completed offense and an attempt.  And if that's the case,
 9    then I think we need to clear that up such that, for
10    example, the first line under aiding and abetting should
11    say:  In this case, the Government further alleges that the
12    Defendants aided and abetted others in committing or
13    attempting to commit obstruction of an official proceeding.
14              And that -- and then it would include on Page 28
15    that carryover sentence:  Either as a completed or attempted
16    offense, as I have explained above.
17              MR. NESTLER:  I'm sorry.  For the -- for that
18    first sentence starting with "first"?
19              THE COURT:  Yes.  So it would read:  First, the
20    others -- that others committed obstruction of an official
21    proceeding by committing each of the elements of the offense
22    charged either as a completed or attempted offense, as I
23    have explained above.
24              MR. NESTLER:  That's fine.  I mean, you could also
25    say that others committed or attempted to commit.  Either
```

1    way is acceptable.

2         MS. HALLER:  Sorry, your Honor --

3         MR. CRISP:  You said attempted?  You're putting in

4    "attempt" language on the aiding and abetting?

5         THE COURT:  I --

6         MR. CRISP:  I didn't think you could attempt to

7    aid and abet.

8         I'm sorry.  I didn't think you could aid and abet

9    in an attempt.

10         THE COURT:  I don't see why you can't.

11         MR. NESTLER:  We agree that one can aid and abet

12    an attempt.  One cannot attempt to aid and abet.

13         THE COURT:  Take a look.  But I mean, particularly

14    with a statute that's worded in the fashion of this statute,

15    which makes it a violation of the statute to either complete

16    the offense or attempt to complete the offense -- you know,

17    if this were a statute that was only worded in terms of a

18    completed offense, and attempt was a lesser included

19    inchoate offense, then perhaps you might be right.

20         But I'm not sure -- I think if the statute itself

21    makes an attempt a crime, then one can aid and abet an

22    attempt.

23         MR. CRISP:  Okay.  I will second my co-counsel's

24    argument -- or fellow counsel.  I want to take a look at

25    that one, and if I disagree -- I just need to make notes on

 1    that, because I was looking at a slightly different issue on

 2    the Ninth Circuit *Alvarez* case.  So that's why I was -- it's

 3    not on point here.  I'm not directing the Court to that.

 4            So it was being -- unable to be convicted of

 5    aiding and abetting a complete offense, is what that was.

 6            So the premise here that we're looking at is

 7    aiding and abetting an attempt, so any inchoate.  Correct?

 8    All right.

 9            THE COURT:  Right.  We'll take a look at that.

10    But I think, given how the statute is defined, you know, the

11    aiding and abetting can be, as stated, the completed or

12    attempted offense.  But in any event...

13            Okay.  Then there's this co-conspirator liability

14    theory of -- that the Government would like to include.  And

15    I guess the question is:  What work is this doing when we

16    already have a separate conspiracy charge?  And isn't it

17    confusing?

18            MR. NESTLER:  Well, jury instructions are always

19    confusing.  But the work that it's doing, your Honor, is

20    that this is the substantive offense.  And so if we only

21    charged a conspiracy to obstruct an official proceeding and

22    obstruction of an official proceeding -- those were the only

23    two counts in the indictment -- the jury could find the

24    Defendants guilty of both the conspiracy and the substantive

25    offense and the substantive offense based on *Pinkerton*

1    liability or co-conspirator liability.

2            And so --

3            THE COURT:  But how could the jury ever then

4    acquit on the conspiracy but yet use this theory to convict

5    on the substantive offense based on co-conspirator

6    liability?

7            MR. NESTLER:  It shouldn't, but a jury can render

8    inconsistent verdicts, as we all know.

9            But you --

10           THE COURT:  But we shouldn't instruct in a way

11   that might invite an inconsistent verdict.

12           MR. NESTLER:  No.  And this -- in fact, this

13   instructs in a way that invites a consistent verdict, which

14   is that if the jury convicts on conspiracy, on Count 2, it

15   ought to convict on the substantive offense, which is

16   Count 3, if it finds that -- yes, which is why

17   co-conspirator liability -- well, let me step back for a

18   second.

19           For any crime, a 371 charge or a conspiracy charge

20   and the underlying offense, the Defendant can be convicted

21   of both, obviously --

22           THE COURT:  Right.

23           MR. NESTLER:  -- and of the underlying offense,

24   based on a conspiracy theory of liability.  It doesn't need

25   to be a different theory of liability.  There are others

1    available to the jury if they want to go there, but they

2    don't need to go there.

3            THE COURT:  Okay.  Any thoughts on that, defense

4    counsel?

5            MR. CRISP:  No, other than what we've articulated.

6    No, we don't.

7            THE COURT:  Okay.  So you don't have any objection

8    to keeping it in?

9            MS. HALLER:  Can we talk, your Honor?

10            MR. LINDER:  We'd like to talk about it later.  We

11    kind of feel -- I agree more with your initial comments on

12    that, but I'd like to talk to Stanley about it.

13            THE COURT:  Okay.  So a couple more --

14            MR. NESTLER:  I'm sorry, your Honor.  Just to be

15    clear, we're not saying these crimes don't merge later for

16    sentencing or for any other purposes.

17            THE COURT:  I understand.

18            MR. NESTLER:  We're just saying for jury

19    instructions, they should be instructed.

20            THE COURT:  All right.  So on Page 30, the

21    concluding remark for Count 3, that may need to be modified

22    a little bit if we conclude that one can aid and abet an

23    attempt.  But we'll hold off on that.

24            I also want to include a standard sentence at the

25    end of each of these paragraphs that have a concluding

1    remark based on multiple means that -- to the effect of "You

2    may consider each of these ways in any order you wish."

3          I don't want the jury thinking they've got to

4    start with a completed and sort of reject that and then move

5    forward.  They should -- it should be clear to them that

6    they can start with any one of the theories of liability as

7    opposed to going through them sequentially as they appear in

8    the jury instruction.

9          MR. NESTLER:  We agree with that, your Honor.  We

10   tried to include sort of a subheading for concluding remarks

11   for each one to make it clear.  That's a great suggestion.

12         THE COURT:  So we'll include something like that.

13         All right.  Then my next one is on Page 35.  And

14   that's the lesser included offense for the destruction of

15   property crime -- offense.

16         I'm not sure there's a basis for it, given the

17   evidence that's come in.  I don't know how the jury could at

18   all conclude there's a basis for a lesser included offense,

19   given the value that's been ascribed to the damage to the

20   door -- doors.

21         MR. NESTLER:  That was a defense request, the

22   lesser included.

23         THE COURT:  Are you all asking for that?  Because

24   I'm not inclined to give it because I don't think there's a

25   basis for it.

1          MR. LINDER:  Ms. Halim probably included that in

2     there.  I would defer to the Court on that.

3          THE COURT:  Okay.  All right.  So I'm going to

4     strike it, because I don't think there's any evidence that

5     would support it -- well, particularly since you all didn't

6     cross-examine on the issue.  And I assume we're not

7     presenting any evidence in your cases in chief.  But if that

8     changes, you'll let me know.

9          The last thing that I wanted to raise with you all

10    is the -- on Page 43, the obstruction of justice unanimity

11    instruction.  The last sentence says:  You will see -- well,

12    let me read the last two sentences:  However, in order to

13    return a guilty verdict on this count, you must all agree on

14    which act or acts the Defendant committed.

15          I think that's correct.

16          But then it goes on to say:  You will see that the

17    verdict form directs you to indicate which of the alleged

18    act or acts of obstruction you unanimously agree the

19    Defendant committed.

20          The verdict forms that you all have proposed do

21    not have that kind of special interrogatory for each of

22    those counts, and I don't know whether you are intending to

23    include such interrogatories, especially since I think there

24    may be multiple possible bases for obstruction for some

25    Defendants.

1          MR. CRISP:  I think we have to amend the verdict

2     slip, then, to reflect that.  So that would be the quick

3     answer.

4          MR. NESTLER:  My recollection, from the

5     negotiations I had with defense counsel on this, is that

6     they wanted to see -- Ms. Halim wanted to see how the

7     evidence came in before inserting what we have here in the

8     bracketed paragraph and inserting the parts of the verdict

9     form.

10         We are probably at the portion of the trial where

11    we're prepared to do that and talk with defense counsel

12    about which specific acts each Defendant is alleged to have

13    done in order to list them out here in the jury instructions

14    and, commensurately, in the verdict form.

15         THE COURT:  Okay.  So that's something to -- that

16    we still just need to get ironed out.  Okay.  All right.

17         MR. NESTLER:  Your Honor didn't address it, but

18    the parties agreed we should renumber Mr. Caldwell's

19    obstruction count to Count 10.  I just wanted to make sure

20    that was clear and hopefully okay with the Court --

21         THE COURT:  That's fine.

22         MR. NESTLER:  -- and the clerk's office, because

23    it's going to read differently from the indictment to what

24    the verdict form says.

25         THE COURT:  No.  I don't think there's an issue

1    with that.

2         All right.  Those were my only -- I think I've

3    addressed all the objections that the parties had actually

4    expressly identified and then what else I wanted to raise

5    with you all.  We've got some open issues left, and we'll

6    get those resolved in due course.

7         Is there anything else?

8         MR. CRISP:  No, your Honor.

9         MR. NESTLER:  We would like a timeframe for

10   briefing and then addressing these issues so that we can

11   make sure we get these all done, I guess around the time of

12   Rule 29, if any of these are going to affect the Rule 29

13   motion, and also so we don't have any downtime later in the

14   trial.

15        THE COURT:  Mr. Fischer, when did you intend to

16   put something on file?

17        MR. FISCHER:  Your Honor, I can do it by this

18   weekend.

19        THE COURT:  Okay.

20        MR. FISCHER:  Sunday evening.  Sunday.

21        THE COURT:  Okay.  So if you all want to -- do you

22   want to respond or do you want to submit simultaneously?

23        MR. NESTLER:  We can submit some of the things

24   your Honor asked us to submit; and if Mr. Fischer wants to

25   submit something, we can respond within two days.  I guess

 1    it depends on whether we're sitting next week or not.

 2              But once we see what he says, we can address that.

 3    We'll be here on Monday anyway.  So if he submits something

 4    before Monday morning, we can take a look at it and then

 5    address with the Court how long we think we need to respond.

 6              THE COURT:  Okay.  That sounds like a plan.

 7              MR. LINDER:  Your Honor, before we -- that's fine

 8    for everybody to submit these things, but before we get to a

 9    final copy of kind of what we believe we want to use --

10              THE COURT REPORTER:  I'm sorry.  Could you use a

11    microphone, please?

12              MR. LINDER:  I would like for Mr. Rhodes to be

13    present at that point when we go to the final edits.

14              THE COURT:  Okay.

15              MR. LINDER:  So --

16              THE COURT:  We'll have one last jury charge

17    conference before this is final, so if that's what your

18    concern is, then certainly we will be able to do that.

19              MR. LINDER:  Thank you.

20              THE COURT:  He may have a different recollection

21    about some of these elements than -- from his law school

22    days.

23              MR. NESTLER:  And it sounded to us like

24    Mr. Rhodes's counsel might want to submit some additional

25    instructions.  I don't know if that's correct or not.  But

 1    if so, we would like a deadline for when that would occur.

 2              THE COURT:  Okay.  What are we talking about here?

 3              MR. LINDER:  An additional --

 4              MR. NESTLER:  I don't know if they're planning to

 5    submit any other defense instructions.  We thought this was

 6    it, but I understood Mr. Linder to be suggesting there might

 7    be additional defense instructions they're thinking about.

 8              MR. LINDER:  No.  No.  It was just edits to this.

 9    But I can't even get into the jail to talk to him.

10              THE COURT:  That does remind me:  I do permit

11    Defendants to include something in the instructions that

12    is -- I don't call it defense theory, but sort of the

13    Defendant's position.  And so if you all want to each

14    include some short sentence, paragraph, what have you, that

15    articulates your position of the case, then I'll include

16    those in the instructions.

17              MR. LINDER:  Okay.

18              MR. CRISP:  Thank you, your Honor.

19              MR. NESTLER:  I assume that we'll have an

20    opportunity to review those in advance and potentially

21    object.

22              THE COURT:  Without a doubt.

23              MR. NESTLER:  Thank you, your Honor.

24              For -- moving on to a different topic, if we

25    could, it's just timing, and Rule 29 briefing and argument,

1    just to make sure we have our schedule set for the next week

2    or two.

3         I don't know how your Honor intended to handle

4    that once the Government does rest, which we will hopefully

5    do next week, assuming Mr. Rhodes is back for a good chunk

6    of the week.  If not, we'll probably rest early the

7    following week.

8         THE COURT:  Look, it depends.  I think if we are

9    here Monday and can proceed Monday, it sounds like the

10   Government is prepared to rest Thursday, in which case I'd

11   be prepared to hear Rule 29 arguments Friday morning.

12        If it doesn't work out that way, we'll just see

13   how it goes.

14        MR. NESTLER:  Yes, your Honor.

15        THE COURT:  That's the optimal course here.

16   Because I really would like to not have the jury out for a

17   morning to deal with Rule 29s if we can do it when they

18   otherwise would not be here, although I guess they're

19   usually here Friday morning, but it's only a half day.

20        MR. LINDER:  Do you require your Rule 29s to be in

21   writing or can that be oral?

22        THE COURT:  I'm happy to have something in

23   writing, but it's not required.

24        MR. LINDER:  Okay.

25        MR. NESTLER:  And then in terms of scheduling -- I

1    think I flagged this this morning, but next Friday, we're

2    only sitting a half day currently.  If your Honor does want

3    to try to maximize jury time, Mr. Rhodes should be back by

4    Thursday at the latest, we understand.  We could potentially

5    sit all day on Friday.  But if that's the case, if your

6    Honor would please let us know now so we can make

7    arrangements for witnesses and any travel plans that need to

8    be rearranged.  And we might need to inform the jury and

9    also ask the jury, I suppose.

10            (The Court confers with the courtroom deputy

11   privately.)

12            THE COURT:  So let me just sort of say this now:

13   If Mr. Rhodes does not come back until Thursday, then we

14   will maximize the day on Friday, and I can go probably until

15   about 4:00.  There's an event here for Judges Hogan and

16   Lamberth that starts at 4:00 that I'd like to attend.  So I

17   think we could go all day.  I just haven't -- I have to move

18   my calendar, but none of it is immovable.

19            MR. CRISP:  Are we in session on the 8th, Election

20   Day?

21            THE COURT:  The courthouse is not closed, to my

22   knowledge.

23            MR. CRISP:  Okay.  I may ask for a special

24   dispensation for an hour or two in the morning based off of

25   that, then.

1            THE COURT:  Okay.  Can you early vote in

2  Pennsylvania?

3            MR. CRISP:  No.

4            THE COURT:  Is it too late?

5            MR. CRISP:  No.  I had scheduled a hearing in

6  another case in Europe that I was going to do by Zoom, and

7  it will be done by then.  And it's already been pushed out

8  past the point at which I think I can -- for that reason.

9  Yes.

10            THE COURT:  Okay.  Well, look, regardless of

11  Mr. Rhodes's circumstances, absent a very short defense

12  presentation, which I doubt, we'll be in trial on the 8th.

13            MR. CRISP:  No.  And I was assuming -- one, I was

14  assuming we'd be done or, two, it would be an Election Day

15  pause, so I didn't think that would be an issue, but it may

16  not -- now, again, I expect we'll be in the defense case at

17  that point, so it should be less problematic for me to be

18  absent.  So I don't think that's an issue.  And I'll

19  certainly discuss with my client my absence and designate

20  someone else.

21          Thank you.

22            MR. LINDER:  If you grant all or part of our Rule

23  29s, that would shorten our case substantially.

24            THE COURT:  Hope springs eternal.

25            MR. NESTLER:  And just for scheduling, it might be

1    prudent to alert the jury that we're going to sit all day on

2    Friday the 4th so that -- in case they have any scheduling

3    issues.

4              THE COURT:  Well, we'll know on Monday.

5              MR. NESTLER:  Understood.

6              THE COURT:  So if Mr. Rhodes is here Monday, I

7    don't need to tell them that.  If Mr. Rhodes is not here,

8    then we will let them know.

9              MR. NESTLER:  Understood.

10             And Mr. Crisp raised a good point.  Your Honor

11   might want to encourage the jurors to vote early so that

12   they're not asking for any time off on the 8th so that we

13   can continue to maximize our -- our time in court.  We

14   are -- I think, like many of the defense counsel and the

15   Defendants, we're anxious to move the case forward, so --

16             THE COURT:  Here in D.C., we all get our mail-in

17   ballots pretty early.  I'm just saying.

18             MR. LINDER:  If we could check the -- if J.C.

19   could check with the head marshal, Lamont, on testing

20   Stewart; if he's not negative on Sunday, if they can test

21   him daily, or are we just automatically going to wait to

22   Thursday?  I would love to have some kind of rolling --

23   maybe he's not negative on Sunday but he is negative on

24   Monday or Tuesday.  I don't know what kind of procedure --

25   if he can check on -- for that.

```
 1              THE COURT:  I'll talk to him.  I've got to call
 2     him this afternoon.
 3              MR. LINDER:  Okay.  Thank you.
 4              THE COURT:  The sooner he becomes asymptomatic...
 5              MR. LINDER:  Thank you.
 6              MR. NESTLER:  Your Honor, when you do talk to the
 7     deputy, if we could find out what time the test is on
 8     Sunday.  We have a lot of out-of-town witnesses with lawyers
 9     and lots of travel things to schedule.  So the earlier -- at
10     least if we know going into the weekend when we should
11     expect to hear from the Court about the testing results,
12     that would certainly help us.  So we would appreciate it.
13              THE COURT:  Okay.  Well, let me work out those
14     details.  And if you don't hear about those details today,
15     you'll hear tomorrow.
16              MR. NESTLER:  Thank you, your Honor.
17              THE COURT:  Okay.  Anything else?
18              Okay.  We'll see everybody next Monday.  Thank
19     you, all.
20              MR. NESTLER:  Thank you.
21              THE COURT:  Please don't wait for me.
22              (Proceedings concluded.)
23
24
25
```

5565

## CERTIFICATE

I, LISA EDWARDS, RDR, CRR, do hereby

certify that the foregoing constitutes a true and accurate

transcript of my stenographic notes, and is a full, true,

and complete transcript of the proceedings produced to the

best of my ability.


Dated this 26th day of October, 2022.


/s/ Lisa Edwards, RDR, CRR
Official Court Reporter
United States District Court for the
  District of Columbia
333 Constitution Avenue, Northwest
Washington, D.C. 20001
(202) 354-3269

5566

## /

**/s** [1] - 5565:12

## 0

**08077** [1] - 5504:10

## 1

**1** [4] - 5506:4, 5522:24, 5546:10, 5547:10
**10** [2] - 5506:6, 5556:19
**11** [1] - 5520:22
**12** [1] - 5512:7
**13** [4] - 5517:1, 5521:18, 5521:19, 5522:4
**130** [1] - 5504:9
**14** [1] - 5522:5
**141** [1] - 5504:9
**15** [3] - 5522:20, 5526:19, 5534:10
**16** [1] - 5507:23
**17110** [1] - 5504:13
**1808** [1] - 5504:3
**19** [1] - 5503:10
**1993** [1] - 5524:7
**1:00** [1] - 5537:23

## 2

**2** [7] - 5506:5, 5507:22, 5540:14, 5543:19, 5547:8, 5548:7, 5552:14
**2.205** [1] - 5507:14
**2.310** [1] - 5508:6
**20001** [2] - 5504:20, 5565:14
**20010** [1] - 5504:3
**20036** [1] - 5504:6
**202** [2] - 5504:21, 5565:15
**2022** [2] - 5503:6, 5565:10
**20530** [1] - 5503:21
**20579** [1] - 5503:18
**21** [1] - 5528:3
**21061** [1] - 5504:16
**22** [4] - 5529:11, 5532:18, 5532:19, 5534:25
**22-00015** [1] - 5503:3
**22-15** [1] - 5506:3

**23** [2] - 5534:25, 5536:1
**231** [1] - 5518:14
**2384** [1] - 5531:22
**25** [3] - 5536:1, 5536:3, 5536:19
**26** [4] - 5503:6, 5535:24, 5537:1, 5548:20
**26th** [1] - 5565:10
**27** [2] - 5548:24, 5549:2
**28** [1] - 5549:14
**29** [5] - 5530:10, 5557:12, 5559:25, 5560:11
**29s** [3] - 5560:17, 5560:20, 5562:23
**2:03** [1] - 5503:7

## 3

**3** [8] - 5506:5, 5534:10, 5540:10, 5540:14, 5543:19, 5548:7, 5552:16, 5553:21
**30** [1] - 5553:20
**303** [1] - 5504:9
**3300** [1] - 5503:24
**333** [2] - 5504:19, 5565:14
**35** [1] - 5554:13
**354-3269** [2] - 5504:21, 5565:15
**371** [1] - 5552:19

## 4

**4** [1] - 5506:6
**4031** [1] - 5504:12
**43** [1] - 5555:10
**4:00** [2] - 5561:15, 5561:16
**4th** [1] - 5563:2

## 5

**5507** [1] - 5505:3

## 6

**6** [1] - 5509:23
**601** [2] - 5503:17, 5504:5
**6706** [1] - 5504:20

## 7

**7** [1] - 5510:8
**7.102** [1] - 5522:8
**7.12** [1] - 5522:7
**700** [1] - 5503:25
**7310** [1] - 5504:15
**75219** [1] - 5503:25

## 8

**8** [1] - 5512:4
**8th** [3] - 5561:19, 5562:12, 5563:12

## 9

**9** [1] - 5521:6
**900** [1] - 5504:6
**950** [1] - 5503:20

## A

**Abdel** [1] - 5531:22
**Abdel-Rahman** [1] - 5531:22
**abet** [6] - 5550:7, 5550:8, 5550:11, 5550:12, 5550:21, 5553:22
**abetted** [1] - 5549:12
**abetting** [8] - 5536:13, 5548:23, 5549:7, 5549:10, 5550:4, 5551:5, 5551:7, 5551:11
**ability** [3] - 5530:4, 5530:12, 5565:7
**able** [2] - 5519:5, 5558:18
**absence** [1] - 5562:19
**absent** [3] - 5520:3, 5562:11, 5562:18
**acceptable** [1] - 5550:1
**accompanied** [1] - 5520:3
**accomplishment** [1] - 5528:8
**accuracy** [1] - 5539:19
**accurate** [3] - 5516:13, 5527:16, 5565:4
**accurately** [2] - 5523:5, 5530:8

**accused** [2] - 5520:13, 5520:14
**achieved** [1] - 5528:25
**acquit** [1] - 5552:4
**act** [5] - 5523:16, 5530:3, 5533:24, 5555:14, 5555:18
**Act** [1] - 5518:2
**action** [2] - 5530:22, 5530:23
**Action** [1] - 5503:3
**actions** [1] - 5515:19
**acts** [6] - 5512:8, 5523:9, 5537:2, 5555:14, 5555:18, 5556:12
**actual** [1] - 5530:19
**add** [1] - 5542:5
**adding** [1] - 5543:13
**addition** [1] - 5517:1
**additional** [5] - 5543:11, 5548:21, 5558:24, 5559:3, 5559:7
**address** [3] - 5556:17, 5558:2, 5558:5
**addressed** [1] - 5557:3
**addresses** [1] - 5540:5
**addressing** [1] - 5557:10
**adequately** [2] - 5523:5, 5524:4
**adjourned** [2] - 5538:2, 5538:4
**admissible** [1] - 5512:2
**admitted** [1] - 5534:11
**advance** [1] - 5559:20
**adversely** [1] - 5530:3
**advised** [1] - 5510:13
**affect** [2] - 5530:4, 5557:12
**AFTERNOON** [1] - 5503:5
**afternoon** [3] - 5506:2, 5506:20, 5564:2
**Agent** [2] - 5511:3, 5511:4
**agents** [2] - 5510:25, 5519:6
**ago** [1] - 5510:14

**agree** [11] - 5511:10, 5515:12, 5523:25, 5532:22, 5532:25, 5546:11, 5550:11, 5553:11, 5554:9, 5555:13, 5555:18
**agreed** [7] - 5516:1, 5520:5, 5520:23, 5531:21, 5540:20, 5545:20, 5556:18
**agreeing** [1] - 5516:5
**agreement** [17] - 5522:2, 5522:10, 5522:14, 5522:18, 5522:24, 5523:18, 5524:3, 5525:22, 5525:25, 5527:9, 5527:12, 5527:13, 5530:3, 5530:18, 5541:11, 5545:1
**agrees** [4] - 5533:5, 5537:19, 5537:21, 5539:9
**aid** [6] - 5550:7, 5550:8, 5550:11, 5550:12, 5550:21, 5553:22
**aided** [1] - 5549:12
**aiding** [8] - 5536:13, 5548:23, 5549:7, 5549:10, 5550:4, 5551:5, 5551:7, 5551:11
**al** [1] - 5503:6
**alert** [1] - 5563:1
**Alexandra** [1] - 5506:8
**ALEXANDRA** [1] - 5503:19
**allege** [2] - 5543:19, 5544:21
**alleged** [4] - 5533:23, 5548:12, 5555:17, 5556:12
**alleges** [3] - 5520:23, 5546:25, 5549:11
**allow** [2] - 5509:13, 5512:10
**allowed** [1] - 5517:24
**almost** [3] - 5511:5, 5530:13
**alternative** [2] - 5508:15, 5533:3
**Alvarez** [3] - 5514:18, 5514:24, 5551:2
**amenable** [1] - 5545:12
**amend** [1] - 5556:1
**Amendment** [10] -

5515:1, 5515:12,
5515:23, 5516:3,
5516:4, 5516:8,
5516:14, 5517:15,
5518:20
**AMERICA** [1] -
5503:3
**America** [1] - 5506:4
**AMIT** [1] - 5503:11
**ammunition** [1] -
5510:4
**amorphous** [1] -
5515:5
**analogies** [1] -
5535:13
**analysis** [1] - 5526:3
**AND** [1] - 5504:12
**answer** [2] - 5513:6,
5556:3
**anxious** [1] -
5563:15
**anyway** [3] - 5515:9,
5533:16, 5558:3
**apologize** [2] -
5529:21, 5532:5
**appear** [1] - 5554:7
**appearance** [1] -
5506:19
**aPPEARANCES** [1] -
5503:13
**APPEARANCES** [1] -
5504:1
**appellate** [1] -
5547:14
**applicable** [2] -
5507:16, 5537:18
**application** [1] -
5516:8
**appreciate** [3] -
5526:14, 5544:11,
5564:12
**appreciates** [1] -
5511:18
**appropriate** [8] -
5513:11, 5513:12,
5513:17, 5514:14,
5515:25, 5516:7,
5522:21, 5528:6
**appropriately** [1] -
5547:7
**areas** [1] - 5518:17
**arguably** [1] -
5524:17
**argue** [4] - 5513:20,
5538:14, 5539:2,
5539:5
**argued** [2] - 5513:19,
5519:21
**argument** [8] -
5507:10, 5519:19,

5539:17, 5539:25,
5540:6, 5541:25,
5550:24, 5559:25
**arguments** [2] -
5538:15, 5560:11
**arrangements** [1] -
5561:7
**Article** [1] - 5534:9
**articulated** [1] -
5553:5
**articulates** [1] -
5559:15
**ascribed** [1] -
5554:19
**aside** [1] - 5518:19
**assertion** [1] -
5530:19
**ASSOCIATES** [1] -
5504:12
**assume** [2] - 5555:6,
5559:19
**assuming** [4] -
5507:5, 5560:5,
5562:13, 5562:14
**asymptomatic..** [1] -
5564:4
**attempt** [16] -
5536:7, 5536:8,
5536:10, 5536:12,
5549:8, 5550:4,
5550:6, 5550:9,
5550:12, 5550:16,
5550:18, 5550:21,
5550:22, 5551:7,
5553:23
**attempted** [7] -
5536:5, 5536:18,
5549:15, 5549:22,
5549:25, 5550:3,
5551:12
**attempting** [1] -
5549:13
**attend** [1] - 5561:16
**attention** [1] - 5531:4
**ATTORNEY'S** [1] -
5503:16
**audio** [1] - 5509:20
**authority** [2] -
5530:2, 5530:19
**automatically** [1] -
5563:21
**available** [2] -
5509:9, 5553:1
**Avenue** [5] -
5503:20, 5503:24,
5504:5, 5504:19,
5565:14
**average** [1] -
5512:22

# B

**back-and-forth** [2] -
5514:11, 5531:16
**bad** [2] - 5512:7,
5512:12
**baked** [1] - 5528:15
**balance** [2] -
5516:24, 5520:7
**balanced** [2] -
5516:12, 5516:13
**Baldwin** [3] -
5530:25, 5531:21,
5532:4
**ballots** [1] - 5563:17
**bank** [1] - 5518:24
**banner** [1] - 5527:5
**BARRETT** [1] -
5503:24
**based** [10] - 5524:14,
5526:3, 5537:20,
5540:18, 5546:1,
5546:2, 5551:25,
5552:5, 5552:24,
5554:1, 5561:24
**bases** [1] - 5555:24
**basing** [1] - 5523:11
**basis** [4] - 5508:2,
5554:16, 5554:18,
5554:25
**bear** [1] - 5548:24
**becomes** [1] -
5564:4
**BEFORE** [1] -
5503:11
**beforehand** [1] -
5529:24
**begins** [1] - 5540:10
**best** [3] - 5509:1,
5548:3, 5565:7
**better** [1] - 5535:15
**between** [5] -
5511:19, 5514:11,
5524:16, 5524:17,
5531:17
**beyond** [6] -
5522:15, 5537:14,
5538:10, 5541:9,
5545:25, 5547:3
**big** [2] - 5509:21,
5525:23
**bit** [6] - 5514:23,
5519:12, 5523:7,
5524:12, 5548:5,
5553:22
**bone** [3] - 5542:6,
5543:11, 5543:13
**Book** [13] - 5507:13,
5508:6, 5512:9,

5512:10, 5512:14,
5522:6, 5522:24,
5523:3, 5524:5,
5525:14, 5525:20,
5528:23, 5529:1
**bottom** [3] - 5508:1,
5521:6, 5549:2
**bracketed** [1] -
5556:8
**Bradford** [1] -
5506:14
**BRADFORD** [1] -
5504:8
**BRAND** [1] - 5504:2
**brief** [1] - 5533:15
**briefing** [4] - 5531:3,
5531:6, 5557:10,
5559:25
**Bright** [1] - 5506:10
**BRIGHT** [2] -
5503:23, 5503:24
**bring** [2] - 5531:4,
5543:14
**bringing** [1] -
5519:24
**brought** [1] - 5513:9
**Bruen** [3] - 5517:11,
5517:17
**Building** [1] - 5538:4
**Burnie** [1] - 5504:16
**business** [3] -
5535:1, 5544:6,
5544:13
**BY** [1] - 5504:17

# C

**Caldwell** [4] -
5506:7, 5506:16,
5506:17, 5539:4
**CALDWELL** [1] -
5504:15
**Caldwell's** [1] -
5556:18
**calendar** [1] -
5561:18
**candor** [1] - 5519:17
**cannot** [1] - 5550:12
**Capitol** [4] - 5538:4,
5539:3, 5539:7
**Captain** [1] - 5538:22
**captured** [1] - 5524:5
**captures** [1] - 5523:5
**care** [2] - 5508:9,
5535:22
**carried** [1] - 5527:12
**carry** [2] - 5517:24,
5529:7
**carryover** [2] -

5534:24, 5549:15
**Case** [1] - 5506:3
**case** [31] - 5509:15,
5510:2, 5510:14,
5512:13, 5512:17,
5512:19, 5513:19,
5514:18, 5517:10,
5517:18, 5518:5,
5519:4, 5524:7,
5524:15, 5527:25,
5528:7, 5531:22,
5531:25, 5542:4,
5547:1, 5549:8,
5549:11, 5551:2,
5559:15, 5560:10,
5561:5, 5562:6,
5562:16, 5562:23,
5563:2, 5563:15
**cases** [7] - 5515:14,
5523:13, 5524:8,
5526:3, 5526:15,
5532:15, 5555:7
**catch** [1] - 5537:2
**catch-all** [1] - 5537:2
**caught** [1] - 5527:8
**certain** [5] - 5514:9,
5519:2, 5519:3,
5519:6, 5519:7
**certainly** [7] -
5510:2, 5512:21,
5514:15, 5539:2,
5558:18, 5562:19,
5564:12
**CERTIFICATE** [1] -
5565:1
**certification** [4] -
5537:22, 5541:13,
5546:9, 5546:15
**certify** [7] - 5540:12,
5540:24, 5543:21,
5544:17, 5545:6,
5547:2, 5565:4
**cetera** [1] - 5513:7,
5515:3, 5520:24,
5535:1
**challenging** [1] -
5520:18
**change** [1] - 5544:20
**changes** [1] - 5555:8
**characterizes** [1] -
5530:8
**Charge** [1] - 5505:3
**charge** [4] - 5551:16,
5552:19, 5558:16
**charged** [6] -
5512:12, 5520:11,
5521:2, 5549:4,
5549:22, 5551:21
**charges** [1] - 5523:4
**check** [3] - 5563:18,

5568

5563:19, 5563:25
**chief** [1] - 5555:7
**choose** [1] - 5539:4
**chunk** [1] - 5560:5
**Cinnaminson** [1] - 5504:10
**circuit** [3] - 5509:11, 5524:25, 5539:21
**Circuit** [2] - 5510:13, 5551:2
**circuits** [2] - 5525:1, 5535:21
**circumstances** [3] - 5519:2, 5519:3, 5562:11
**circumstantial** [1] - 5522:21
**citations** [1] - 5528:3
**civil** [3] - 5518:16, 5524:14, 5524:16
**claim** [2] - 5513:1, 5541:6
**clarified** [1] - 5548:5
**classic** [2] - 5511:10, 5511:12
**clause** [1] - 5548:21
**clauses** [1] - 5533:23
**clear** [19] - 5508:17, 5510:9, 5511:19, 5517:14, 5523:14, 5531:1, 5540:14, 5541:16, 5542:9, 5543:2, 5545:13, 5546:2, 5547:20, 5548:12, 5549:9, 5553:15, 5554:5, 5554:11, 5556:20
**clearly** [2] - 5528:14, 5533:25
**clerk's** [1] - 5556:22
**client** [1] - 5562:19
**closed** [1] - 5561:21
**closer** [1] - 5515:7
**cloth** [1] - 5535:7
**co** [5] - 5550:23, 5551:13, 5552:1, 5552:5, 5552:17
**co-conspirator** [4] - 5551:13, 5552:1, 5552:5, 5552:17
**co-counsel's** [1] - 5550:23
**cognizant** [1] - 5511:17
**collaterally** [1] - 5511:2
**College** [8] - 5537:22, 5538:20, 5539:6, 5540:12, 5540:25, 5543:21,

5544:18, 5545:7
**colloquial** [1] - 5525:12
**COLUMBIA** [2] - 5503:1, 5503:17
**Columbia** [3] - 5504:19, 5518:6, 5565:13
**comfortable** [3] - 5543:5, 5546:5, 5546:7
**commensurately** [1] - 5556:14
**comment** [2] - 5513:21, 5540:15
**comments** [1] - 5553:11
**commit** [7] - 5508:2, 5516:5, 5518:23, 5522:16, 5530:3, 5549:13, 5549:25
**committed** [6] - 5514:3, 5549:3, 5549:20, 5549:25, 5555:14, 5555:19
**committing** [3] - 5549:4, 5549:12, 5549:21
**common** [3] - 5522:12, 5522:15, 5523:25
**communicated** [1] - 5520:8
**complete** [4] - 5550:15, 5550:16, 5551:5, 5565:6
**completed** [8] - 5536:10, 5536:11, 5549:8, 5549:15, 5549:22, 5550:18, 5551:11, 5554:4
**complicated** [5] - 5515:13, 5518:17, 5519:4, 5525:16, 5544:15
**component** [1] - 5519:19
**compromise** [1] - 5544:10
**concealed** [1] - 5517:19
**concept** [11] - 5513:24, 5515:4, 5515:10, 5516:7, 5516:11, 5520:9, 5524:4, 5524:5, 5524:10, 5526:8, 5542:21
**concepts** [1] - 5515:13

**concern** [4] - 5510:24, 5519:22, 5525:14, 5558:18
**concerning** [4] - 5508:6, 5509:24, 5525:3, 5532:20
**conclude** [2] - 5553:22, 5554:18
**concluded** [1] - 5564:22
**concluding** [3] - 5553:21, 5553:25, 5554:10
**conclusion** [1] - 5540:23
**concurs** [1] - 5536:23
**conduct** [7] - 5515:5, 5515:17, 5533:3, 5533:4, 5533:5
**conference** [1] - 5558:17
**Conference** [1] - 5505:3
**confers** [1] - 5561:10
**confused** [1] - 5539:10
**confusing** [6] - 5518:21, 5536:14, 5539:1, 5539:12, 5551:17, 5551:19
**confusion** [3] - 5535:14, 5543:17, 5548:19
**Congress** [5] - 5530:15, 5538:4, 5542:8, 5547:24
**Congress's** [7] - 5540:11, 5540:24, 5542:12, 5543:20, 5545:6, 5547:1, 5547:21
**congressional** [2] - 5540:17, 5548:15
**consider** [3] - 5514:6, 5541:8, 5554:2
**considered** [1] - 5510:10
**considering** [1] - 5516:19
**consistent** [2] - 5512:9, 5552:13
**conspiracies** [2] - 5523:8, 5524:16
**conspiracy** [40] - 5513:23, 5514:3, 5514:8, 5515:18, 5515:22, 5516:2, 5521:2, 5521:21,

5522:1, 5522:4, 5523:13, 5523:15, 5523:16, 5523:19, 5524:1, 5524:2, 5524:7, 5524:9, 5524:15, 5525:4, 5525:5, 5525:9, 5525:24, 5528:2, 5528:8, 5528:9, 5529:14, 5530:2, 5530:11, 5531:8, 5533:21, 5535:23, 5551:16, 5551:21, 5551:24, 5552:4, 5552:14, 5552:19, 5552:24
**conspirator** [4] - 5551:13, 5552:1, 5552:5, 5552:17
**conspirators** [1] - 5530:23
**conspire** [2] - 5530:21
**conspired** [1] - 5529:23
**constitutes** [2] - 5542:6, 5565:4
**Constitution** [3] - 5504:19, 5534:10, 5565:14
**constitutional** [1] - 5520:17
**CONT'D** [1] - 5504:1
**continue** [1] - 5563:13
**convey** [4] - 5524:19, 5524:21, 5526:7, 5526:8
**conveyed** [1] - 5516:14
**convict** [6] - 5512:11, 5516:16, 5534:3, 5552:4, 5552:15
**convicted** [2] - 5551:4, 5552:20
**convicts** [1] - 5552:14
**convincing** [1] - 5513:14
**copy** [2] - 5529:22, 5558:9
**correct** [6] - 5539:15, 5543:5, 5543:24, 5551:7, 5555:15, 5558:25
**correctly** [1] - 5540:6
**counsel** [7] - 5542:2, 5550:24, 5553:4, 5556:5, 5556:11,

5558:24, 5563:14
**counsel's** [1] - 5550:23
**count** [2] - 5521:3, 5555:13, 5556:19
**Count** [5] - 5540:10, 5552:14, 5552:16, 5553:21, 5556:19
**counteract** [1] - 5539:16
**counts** [2] - 5551:23, 5555:22
**Counts** [3] - 5540:14, 5543:19, 5548:7
**couple** [2] - 5510:14, 5553:13
**course** [5] - 5510:3, 5515:19, 5531:23, 5557:6, 5560:15
**Court** [37] - 5504:18, 5504:18, 5510:14, 5514:25, 5517:15, 5523:4, 5528:1, 5528:4, 5530:9, 5531:2, 5531:9, 5531:13, 5533:15, 5533:16, 5535:7, 5537:20, 5540:21, 5542:11, 5542:15, 5542:18, 5542:25, 5543:8, 5544:2, 5544:12, 5545:11, 5546:15, 5551:3, 5555:2, 5556:20, 5558:5, 5561:10, 5564:11, 5565:12, 5565:13
**COURT** [128] - 5503:1, 5506:1, 5506:20, 5506:24, 5507:2, 5507:5, 5507:20, 5507:22, 5508:21, 5509:3, 5509:10, 5510:16, 5510:19, 5511:9, 5511:11, 5514:1, 5514:21, 5514:23, 5516:10, 5517:13, 5520:2, 5520:6, 5520:21, 5521:5, 5521:9, 5521:11, 5521:16, 5523:10, 5523:14, 5523:21, 5524:12, 5525:10, 5525:18, 5526:5, 5526:16, 5526:19, 5527:17, 5527:20, 5528:5, 5528:13, 5528:16, 5529:10,

5569

5529:13, 5529:20, 5529:25, 5531:5, 5531:14, 5532:11, 5532:14, 5532:25, 5533:12, 5533:19, 5533:22, 5534:9, 5534:21, 5535:9, 5535:11, 5536:20, 5536:24, 5537:9, 5537:25, 5539:18, 5541:1, 5541:4, 5542:2, 5542:14, 5543:2, 5543:15, 5543:24, 5544:4, 5544:7, 5544:14, 5544:25, 5545:16, 5545:21, 5546:12, 5546:18, 5546:20, 5547:9, 5547:11, 5548:4, 5549:19, 5550:5, 5550:10, 5550:13, 5551:9, 5552:3, 5552:10, 5552:22, 5553:3, 5553:7, 5553:13, 5553:17, 5553:20, 5554:12, 5554:23, 5555:3, 5556:15, 5556:21, 5556:25, 5557:15, 5557:19, 5557:21, 5558:6, 5558:10, 5558:14, 5558:16, 5558:20, 5559:2, 5559:10, 5559:22, 5560:8, 5560:15, 5560:22, 5561:12, 5561:21, 5562:1, 5562:4, 5562:10, 5562:24, 5563:4, 5563:6, 5563:16, 5564:1, 5564:4, 5564:13, 5564:17, 5564:21

**court** [7] - 5506:18, 5508:19, 5513:10, 5521:7, 5521:12, 5535:18, 5563:13

**Court's** [2] - 5531:4, 5537:21

**courthouse** [1] - 5561:21

**COURTROOM** [3] - 5506:2, 5509:4, 5541:21

**courtroom** [1] - 5561:10

**create** [1] - 5535:6

**created** [1] - 5543:17

**creating** [2] - 5521:23, 5535:14

**crime** [9] - 5513:22, 5514:3, 5516:6, 5516:21, 5522:17, 5536:10, 5550:21, 5552:19, 5554:15

**crimes** [2] - 5512:12, 5553:15

**criminal** [8] - 5515:5, 5515:14, 5515:16, 5515:17, 5520:4, 5524:1, 5524:16

**Criminal** [2] - 5503:3, 5506:3

**criminalizes** [1] - 5518:15

**Crisp** [4] - 5506:15, 5506:22, 5521:17, 5563:10

**CRISP** [34] - 5504:11, 5504:12, 5507:3, 5507:19, 5507:21, 5510:23, 5511:10, 5519:17, 5521:4, 5521:6, 5521:10, 5521:14, 5527:5, 5527:19, 5532:24, 5536:23, 5545:13, 5545:20, 5546:5, 5546:13, 5546:19, 5547:8, 5550:3, 5550:6, 5550:23, 5553:5, 5556:1, 5557:8, 5559:18, 5561:19, 5561:23, 5562:3, 5562:5, 5562:13

**cross** [6] - 5519:6, 5538:15, 5539:14, 5539:17, 5539:24, 5555:6

**cross-examination** [3] - 5538:15, 5539:14, 5539:24

**cross-examine** [1] - 5555:6

**CRR** [3] - 5504:17, 5565:3, 5565:12

**cup** [1] - 5519:25

**curious** [1] - 5527:23

**current** [1] - 5510:22

# D

**D.C** [9] - 5503:6, 5503:18, 5503:21, 5504:3, 5504:6, 5504:20, 5510:13, 5563:16, 5565:14

**daily** [1] - 5563:21

**Dallas** [1] - 5503:25

**damage** [1] - 5554:19

**dangerous** [1] - 5547:12

**dangling** [1] - 5526:4

**Dated** [1] - 5565:10

**David** [1] - 5506:16

**DAVID** [1] - 5504:14

**DAY** [1] - 5503:10

**daylight** [1] - 5524:17

**days** [2] - 5557:25, 5558:22

**deadline** [1] - 5559:1

**deal** [2] - 5509:21, 5511:1, 5515:9, 5560:17

**dealing** [1] - 5523:8

**dealt** [1] - 5525:1

**decide** [1] - 5508:14

**decision** [8] - 5517:11, 5519:13, 5530:25, 5543:1, 5543:23, 5547:14

**decisions** [1] - 5539:21

**defamation** [1] - 5515:2

**defendant** [6] - 5512:11, 5514:3, 5514:4, 5514:8, 5514:9, 5529:23

**Defendant** [19] - 5506:4, 5506:5, 5506:6, 5506:11, 5506:12, 5506:13, 5506:14, 5506:15, 5506:16, 5506:19, 5536:4, 5537:16, 5538:12, 5552:20, 5555:14, 5555:19, 5556:12

**DEFENDANT** [5] - 5503:22, 5504:2, 5504:8, 5504:11, 5504:14

**Defendant's** [2] - 5536:17, 5559:13

**defendants** [1] - 5514:6

**Defendants** [16] - 5503:7, 5506:17, 5516:1, 5516:17, 5519:15, 5520:11, 5520:23, 5521:1, 5522:25, 5532:20, 5536:21, 5549:12, 5551:24, 5555:25, 5559:11, 5563:15

**Defendants'** [1] - 5522:19

**defense** [37] - 5507:18, 5507:25, 5508:13, 5508:19, 5509:25, 5514:12, 5514:18, 5514:19, 5519:5, 5519:8, 5524:19, 5525:15, 5526:9, 5526:23, 5529:15, 5531:17, 5532:19, 5533:10, 5536:23, 5541:11, 5542:2, 5544:9, 5545:9, 5545:10, 5545:24, 5546:6, 5547:8, 5553:3, 5554:21, 5556:5, 5556:11, 5559:5, 5559:7, 5559:12, 5562:11, 5562:16, 5563:14

**defer** [2] - 5508:24, 5555:2

**defined** [1] - 5551:10

**defines** [2] - 5547:15, 5547:23

**defining** [1] - 5542:22

**definition** [5] - 5539:21, 5547:3, 5548:3, 5548:13, 5548:16

**definitions** [4] - 5529:13, 5537:8, 5540:10, 5548:8

**degree** [1] - 5527:14

**delayed** [4] - 5529:17, 5532:21, 5533:12, 5534:15

**delaying** [1] - 5534:5

**deliberate** [3] - 5541:12, 5542:3, 5545:2

**deliberation** [1] - 5545:23

**deliberations** [1] - 5509:24

**deliver** [1] - 5546:3

**DEPARTMENT** [1] - 5503:20

**DEPUTY** [3] - 5506:2, 5509:4, 5541:21

**deputy** [2] - 5561:10, 5564:7

**describing** [1] - 5522:9

**designate** [1] - 5562:19

**destruction** [1] - 5554:14

**details** [3] - 5522:11, 5564:14

**determination** [2] - 5540:18, 5541:9

**determine** [4] - 5529:23, 5542:1, 5547:2, 5548:15

**deviate** [1] - 5522:6

**deviation** [1] - 5509:19

**die** [1] - 5511:7

**difference** [2] - 5511:18, 5511:19

**different** [13] - 5509:11, 5513:6, 5531:12, 5533:2, 5533:3, 5541:10, 5544:9, 5546:20, 5546:21, 5551:1, 5552:25, 5558:20, 5559:24

**differently** [1] - 5556:23

**difficult** [1] - 5515:6

**difficulty** [1] - 5509:19

**direct** [4] - 5522:20, 5524:3, 5525:13, 5525:25

**directing** [1] - 5551:3

**directly** [2] - 5511:1, 5524:21

**directs** [1] - 5555:17

**disabuse** [1] - 5525:11

**disagree** [4] - 5518:14, 5537:19, 5539:13, 5550:25

**disagreed** [1] - 5523:21

**disagreeing** [1] - 5544:25

**disagreement** [1] - 5526:21

**disagrees** [1] - 5526:9

**discovery** [1] - 5532:6

**discretion** [1] - 5509:14

**discuss** [1] - 5562:19

**discussed** [1] - 5540:21

**discussion** [1] - 5516:25

**disorder** [1] - 5518:16

**dispensation** [1] - 5561:24
**disposition** [1] - 5531:20
**dissimilar** [1] - 5524:20
**distinction** [1] - 5523:8
**district** [3] - 5529:6, 5535:18, 5565:13
**District** [5] - 5504:18, 5504:19, 5517:25, 5518:6, 5565:13
**DISTRICT** [4] - 5503:1, 5503:1, 5503:11, 5503:17
**done** [7] - 5512:12, 5514:2, 5539:7, 5556:13, 5557:11, 5562:7, 5562:14
**door** [1] - 5554:20
**doors** [1] - 5554:20
**doubt** [9] - 5522:15, 5533:22, 5537:14, 5538:11, 5541:10, 5546:1, 5547:3, 5559:22, 5562:12
**down** [1] - 5522:10
**downtime** [1] - 5557:13
**draft** [1] - 5541:24
**drawing** [1] - 5507:12
**drawn** [1] - 5523:23
**due** [1] - 5557:6
**dueling** [1] - 5522:4
**during** [1] - 5509:24

**E**

**early** [4] - 5560:6, 5562:1, 5563:11, 5563:17
**edits** [2] - 5558:13, 5559:8
**EDWARD** [1] - 5503:23
**Edward** [2] - 5506:7, 5506:10
**EDWARDS** [3] - 5503:15, 5504:17, 5565:3
**Edwards** [2] - 5506:9, 5565:12
**effect** [1] - 5554:1
**either** [8] - 5513:15, 5513:16, 5527:2, 5536:10, 5549:15,

5549:22, 5549:25, 5550:15
**Election** [2] - 5561:19, 5562:14
**Electoral** [8] - 5537:21, 5538:20, 5539:5, 5540:12, 5540:25, 5543:21, 5544:17, 5545:6
**electoral** [1] - 5547:2
**element** [24] - 5516:20, 5522:7, 5522:9, 5523:18, 5531:12, 5536:3, 5536:4, 5536:16, 5536:18, 5541:3, 5541:9, 5542:4, 5545:2, 5545:14, 5545:15, 5545:16, 5545:18, 5545:25, 5546:7, 5547:13, 5547:15, 5548:9, 5549:2
**Element** [1] - 5546:10
**elements** [11] - 5523:16, 5533:18, 5533:19, 5535:24, 5536:11, 5536:12, 5542:21, 5549:4, 5549:21, 5558:21
**elicit** [1] - 5519:5
**Elmer** [1] - 5506:4
**ELMER** [1] - 5503:6
**elsewhere** [2] - 5509:11, 5525:1
**encapsulate** [1] - 5516:7
**encourage** [1] - 5563:11
**end** [3] - 5514:12, 5547:17, 5553:25
**ended** [2] - 5538:3, 5545:10
**ends** [1] - 5528:14
**engaged** [1] - 5514:5
**ensuring** [1] - 5516:15
**enter** [3] - 5513:23, 5516:1, 5524:1
**entered** [1] - 5514:8
**entering** [2] - 5515:17, 5515:22
**entry** [1] - 5540:2
**especially** [8] - 5517:10, 5518:9, 5518:10, 5518:12, 5519:4, 5528:7, 5531:7, 5555:23
**ESQ** [14] - 5503:14,

5503:15, 5503:15, 5503:16, 5503:19, 5503:19, 5503:22, 5503:23, 5503:23, 5504:2, 5504:4, 5504:8, 5504:11, 5504:14
**essentially** [1] - 5541:24
**establishing** [1] - 5516:20
**et** [6] - 5503:6, 5513:7, 5515:3, 5520:24, 5535:1
**eternal** [1] - 5562:24
**Europe** [1] - 5562:6
**evening** [1] - 5557:20
**event** [1] - 5561:15
**event..** [1] - 5551:12
**evidence** [24] - 5509:1, 5511:13, 5511:20, 5511:21, 5512:2, 5512:8, 5513:2, 5513:3, 5513:3, 5513:22, 5514:7, 5515:19, 5516:19, 5522:21, 5524:3, 5525:5, 5525:25, 5528:9, 5528:21, 5546:1, 5554:17, 5555:4, 5555:7, 5556:7
**exactly** [2] - 5512:9, 5539:16
**examination** [3] - 5538:15, 5539:14, 5539:24
**examine** [1] - 5555:6
**example** [5] - 5508:11, 5514:7, 5523:15, 5528:23, 5549:10
**examples** [1] - 5537:2
**except** [1] - 5510:3
**exceptions** [2] - 5510:5, 5515:1
**excuse** [3] - 5520:14, 5522:8, 5541:6
**executed** [1] - 5533:13
**execution** [2] - 5531:10, 5534:5
**exercise** [2] - 5507:20, 5530:19
**exhibits** [6] - 5509:24, 5510:2, 5510:12, 5510:13, 5511:20, 5512:1

**existed** [3] - 5514:3, 5514:8, 5528:9
**existence** [3] - 5522:3, 5522:18, 5524:9
**exists** [2] - 5522:14, 5543:6
**expect** [2] - 5562:16, 5564:11
**explain** [2] - 5525:12, 5547:22
**explained** [4] - 5510:12, 5549:5, 5549:16, 5549:23
**explaining** [1] - 5519:3
**explicit** [2] - 5524:3, 5525:25
**expressly** [1] - 5557:4
**extensively** [1] - 5540:21
**extent** [1] - 5516:18
**eye** [2] - 5532:10

**F**

**fact** [7] - 5513:8, 5527:14, 5530:17, 5544:23, 5548:16, 5552:12
**factual** [1] - 5543:23
**fair** [5] - 5514:15, 5516:12, 5516:13, 5525:18, 5526:5
**fairly** [2] - 5507:9, 5525:12
**familiarity** [1] - 5515:10
**fan** [1] - 5525:23
**far** [2] - 5511:17, 5538:19
**fashion** [1] - 5550:14
**FBI** [1] - 5519:6
**federal** [8] - 5517:25, 5520:14, 5523:6, 5523:12, 5523:24, 5524:22, 5525:6, 5529:4
**fellow** [1] - 5550:24
**few** [1] - 5532:9
**fighting** [1] - 5515:2
**figure** [1] - 5526:11
**file** [2] - 5533:15, 5557:16
**filed** [1] - 5526:3
**filing** [1] - 5530:10
**final** [4] - 5519:8, 5558:9, 5558:13,

5558:17
**fine** [6] - 5527:19, 5536:17, 5541:22, 5549:24, 5556:21, 5558:7
**firearm** [7] - 5513:1, 5518:21, 5518:23, 5519:1, 5520:12, 5520:15
**Firearms** [1] - 5518:2
**firearms** [23] - 5510:3, 5512:5, 5512:16, 5512:25, 5513:3, 5513:9, 5516:23, 5517:6, 5517:7, 5517:12, 5517:24, 5518:1, 5518:3, 5518:5, 5518:8, 5518:13, 5518:15, 5518:18, 5519:6, 5519:10, 5519:14, 5519:16, 5519:24
**first** [21] - 5507:12, 5517:22, 5522:17, 5523:18, 5525:18, 5526:1, 5528:9, 5529:1, 5529:15, 5531:8, 5535:25, 5536:4, 5536:16, 5536:18, 5540:9, 5548:1, 5549:2, 5549:10, 5549:18, 5549:19
**First** [8] - 5515:1, 5515:12, 5515:22, 5516:2, 5516:4, 5516:8, 5516:14, 5518:19
**FISCHER** [27] - 5504:14, 5504:15, 5506:22, 5517:5, 5517:22, 5519:22, 5520:5, 5520:20, 5526:24, 5527:3, 5529:12, 5529:18, 5529:21, 5530:1, 5531:7, 5532:5, 5532:13, 5533:10, 5533:14, 5533:20, 5534:8, 5534:18, 5537:7, 5537:10, 5538:18, 5557:17, 5557:20
**Fischer** [5] - 5506:16, 5531:6, 5531:24, 5557:15, 5557:24
**Fischer's** [2] - 5539:13, 5542:24

5571

**five** [1] - 5532:6
**flagged** [1] - 5561:1
**Florida** [1] - 5518:6
**folks** [2] - 5513:7, 5538:3
**follow** [1] - 5509:6
**following** [2] - 5509:18, 5560:7
**follows** [2] - 5522:8, 5536:1
**footnote** [1] - 5514:17
**Footnote** [2] - 5512:7, 5517:1
**FOR** [8] - 5503:1, 5503:14, 5503:17, 5503:22, 5504:2, 5504:8, 5504:11, 5504:14
**force** [1] - 5520:24
**foregoing** [1] - 5565:4
**foreseeable** [2] - 5537:15, 5538:12
**forgive** [1] - 5517:13
**form** [4] - 5555:17, 5556:9, 5556:14, 5556:24
**formal** [1] - 5522:9
**formed** [3] - 5525:4, 5527:10, 5527:12
**FORMERFEDSGR OUP.COM** [1] - 5504:8
**forms** [1] - 5555:20
**forth** [2] - 5514:11, 5531:16
**forward** [2] - 5554:5, 5563:15
**fourth** [1] - 5548:9
**frankly** [1] - 5526:24
**Franks** [2] - 5531:22, 5532:4
**free** [1] - 5519:18
**Friday** [6] - 5560:11, 5560:19, 5561:1, 5561:5, 5561:14, 5563:2
**Front** [1] - 5504:12
**full** [2] - 5536:8, 5565:5
**fully** [1] - 5527:22
**functions** [1] - 5530:5
**fundamentally** [1] - 5526:10
**furtherance** [1] - 5518:16

**G**

**general** [2] - 5523:15, 5523:17
**generally** [1] - 5535:12
**GEYER** [4] - 5504:8, 5525:23, 5528:11, 5528:14
**Geyer** [4] - 5506:14, 5526:5, 5528:13, 5528:16
**given** [11] - 5508:7, 5513:8, 5513:18, 5514:14, 5521:1, 5536:8, 5546:22, 5547:11, 5551:10, 5554:16, 5554:19
**Glen** [1] - 5504:16
**govern** [2] - 5530:4, 5530:13
**GOVERNMENT** [1] - 5503:14
**Government** [33] - 5506:9, 5507:24, 5508:12, 5511:15, 5512:17, 5513:13, 5513:19, 5514:11, 5519:18, 5522:14, 5523:23, 5526:8, 5528:24, 5530:4, 5530:13, 5530:22, 5530:24, 5531:19, 5532:22, 5535:3, 5537:1, 5537:14, 5538:10, 5539:2, 5542:10, 5542:11, 5543:2, 5543:25, 5545:12, 5549:11, 5551:14, 5560:4, 5560:10
**Government's** [4] - 5507:17, 5514:16, 5514:22, 5523:2
**Governor** [1] - 5504:15
**grant** [1] - 5562:22
**great** [2] - 5532:9, 5554:11
**grounds** [1] - 5539:7
**group** [2] - 5508:24, 5531:17
**guess** [14] - 5508:1, 5510:4, 5512:6, 5522:5, 5524:18, 5530:9, 5531:2, 5535:2, 5537:25, 5542:20, 5551:15, 5557:11, 5557:25,

5560:18
**guilty** [2] - 5551:24, 5555:13
**gun** [1] - 5517:18

**H**

**Halberstam** [1] - 5524:14
**half** [2] - 5560:19, 5561:2
**Halim** [6] - 5517:6, 5531:17, 5532:8, 5540:21, 5555:1, 5556:6
**Halim's** [1] - 5526:25
**HALLER** [1] - 5504:4, 5504:5, 5507:1, 5508:25, 5509:6, 5527:2, 5541:18, 5541:23, 5543:10, 5544:20, 5550:2, 5553:9
**Haller** [3] - 5506:12, 5506:13, 5506:24
**hand** [1] - 5522:11
**handgun** [1] - 5518:11
**handle** [1] - 5560:3
**happy** [11] - 5512:16, 5526:17, 5529:5, 5529:6, 5531:23, 5532:12, 5532:15, 5534:23, 5535:10, 5541:14, 5560:22
**hard** [1] - 5513:24
**HARRELSON** [1] - 5504:8
**Harrelson** [3] - 5506:6, 5506:14, 5506:17
**Harrisburg** [1] - 5504:13
**head** [1] - 5563:19
**hear** [6] - 5509:3, 5512:16, 5560:11, 5564:11, 5564:14, 5564:15
**heard** [2] - 5509:9, 5537:20
**hearing** [4] - 5509:19, 5513:13, 5526:9, 5562:5
**help** [1] - 5564:12
**hereby** [3] - 5544:16, 5545:5, 5565:3
**hesitate** [1] - 5528:19
**highlighted** [1] -

5520:22
**Highway** [1] - 5504:15
**hill** [1] - 5511:7
**hindered** [4] - 5529:17, 5532:21, 5533:12, 5534:15
**hindering** [1] - 5534:4
**hit** [2] - 5536:16, 5542:22
**Hogan** [1] - 5561:15
**hold** [1] - 5553:23
**holding** [1] - 5539:11
**Honor** [59] - 5506:2, 5507:1, 5508:25, 5510:23, 5513:17, 5517:5, 5517:22, 5519:9, 5519:22, 5520:20, 5525:2, 5525:23, 5526:14, 5526:18, 5526:24, 5527:2, 5527:4, 5528:1, 5528:11, 5529:9, 5529:12, 5529:18, 5530:6, 5531:15, 5532:6, 5532:13, 5533:10, 5533:14, 5534:18, 5535:6, 5536:15, 5537:7, 5538:18, 5540:23, 5541:18, 5541:23, 5543:10, 5543:13, 5544:20, 5550:2, 5551:19, 5553:9, 5553:14, 5554:9, 5556:17, 5557:8, 5557:17, 5557:24, 5558:7, 5559:18, 5559:23, 5560:3, 5560:14, 5561:2, 5561:6, 5563:10, 5564:6, 5564:16
**Honor's** [1] - 5524:8
**HONORABLE** [1] - 5503:11
**hope** [1] - 5562:24
**hopefully** [2] - 5556:20, 5560:4
**hotel** [1] - 5519:24
**hour** [1] - 5561:24
**hours** [1] - 5538:24
**Hughes** [1] - 5506:9
**HUGHES** [1] - 5503:19

**I**

**idea** [4] - 5508:2, 5519:6, 5520:9, 5525:20
**identical** [1] - 5525:20
**identified** [2] - 5534:14, 5557:4
**identify** [1] - 5536:3
**II** [1] - 5534:9
**III** [2] - 5503:6, 5506:5
**illegal** [12] - 5513:21, 5518:1, 5518:3, 5518:7, 5518:22, 5518:24, 5519:1, 5519:10, 5519:23, 5519:25, 5520:1, 5520:3
**illegally** [1] - 5520:12
**immovable** [1] - 5561:18
**impede** [2] - 5536:5, 5536:21
**impeded** [6] - 5529:16, 5538:5, 5539:8, 5540:3, 5540:4
**implies** [1] - 5527:14
**imply** [1] - 5527:9
**important** [6] - 5514:17, 5515:16, 5520:8, 5524:10, 5525:4, 5530:20
**impression** [1] - 5546:13
**improper** [1] - 5518:22
**inaccurate** [1] - 5537:5
**inchoate** [2] - 5550:19, 5551:7
**incitement** [1] - 5515:3
**inclined** [6] - 5512:18, 5517:2, 5532:25, 5545:11, 5554:24
**include** [13] - 5514:19, 5520:24, 5528:19, 5529:2, 5549:14, 5551:14, 5553:24, 5554:10, 5554:12, 5555:23, 5559:11, 5559:14, 5559:15
**included** [10] - 5520:25, 5521:20,

5523:16, 5528:2, 5536:8, 5550:18, 5554:14, 5554:18, 5554:22, 5555:1
**includes** [1] - 5542:7
**including** [4] - 5523:13, 5523:24, 5529:7, 5537:4
**inconsistent** [3] - 5519:21, 5552:8, 5552:11
**incorporate** [2] - 5516:7, 5542:21
**incorporates** [1] - 5511:12
**incorporating** [1] - 5511:6
**incredibly** [1] - 5515:13
**indeed** [1] - 5534:25
**indicate** [1] - 5555:17
**indicated** [4] - 5513:17, 5538:23, 5539:14, 5544:9
**indictment** [7] - 5520:23, 5533:24, 5534:15, 5541:7, 5546:25, 5551:23, 5556:23
**individually** [1] - 5520:12
**individuals** [5] - 5511:16, 5514:4, 5514:7, 5516:5, 5539:3
**infer** [1] - 5527:10
**inform** [1] - 5561:8
**informant** [1] - 5507:24
**informer's** [2] - 5507:13, 5507:23
**inherently** [1] - 5519:14
**initial** [5] - 5508:23, 5521:12, 5528:3, 5531:25, 5553:11
**injecting** [1] - 5520:17
**inquire** [1] - 5517:5
**inserting** [2] - 5556:7, 5556:8
**inside** [2] - 5538:3, 5539:3
**instead** [1] - 5543:19
**instituted** [4] - 5537:12, 5537:13, 5538:9, 5538:10
**instruct** [9] - 5513:25, 5536:21,

5540:16, 5543:3, 5544:2, 5544:13, 5546:6, 5547:12, 5552:10
**instructed** [4] - 5541:8, 5544:17, 5545:5, 5553:19
**instructing** [2] - 5518:25, 5540:22
**instruction** [57] - 5507:13, 5508:7, 5510:8, 5510:15, 5510:20, 5511:22, 5511:25, 5512:8, 5512:14, 5513:11, 5513:12, 5513:17, 5513:25, 5514:13, 5515:24, 5516:22, 5516:23, 5518:19, 5518:20, 5518:21, 5519:12, 5519:20, 5520:25, 5522:7, 5522:24, 5523:3, 5523:12, 5523:17, 5524:5, 5524:6, 5525:14, 5528:2, 5528:23, 5529:2, 5529:5, 5529:14, 5531:7, 5532:20, 5532:23, 5533:1, 5535:4, 5535:8, 5535:19, 5535:20, 5536:2, 5536:8, 5538:13, 5538:16, 5540:19, 5542:3, 5545:3, 5546:4, 5546:23, 5554:8, 5555:11
**instructions** [25] - 5507:8, 5507:23, 5509:23, 5512:5, 5515:14, 5517:2, 5521:1, 5521:13, 5521:19, 5522:4, 5524:22, 5524:23, 5524:25, 5526:7, 5526:15, 5528:20, 5535:13, 5551:18, 5553:19, 5556:13, 5558:25, 5559:5, 5559:7, 5559:11, 5559:16
**instructs** [1] - 5552:13
**integral** [3] - 5513:22, 5515:4, 5515:16
**intend** [3] - 5510:18, 5538:14, 5557:15
**intended** [1] - 5560:3

**intending** [3] - 5507:24, 5518:23, 5555:22
**intends** [1] - 5513:20
**intent** [6] - 5513:22, 5514:9, 5515:20, 5518:22, 5519:15, 5536:17
**interests** [1] - 5522:13
**interrogatories** [1] - 5555:23
**interrogatory** [1] - 5555:21
**interstate** [1] - 5518:13
**introduce** [1] - 5510:18
**introduced** [5] - 5508:19, 5510:11, 5510:18, 5513:3, 5525:5
**intrude** [1] - 5519:12
**investigation** [2] - 5511:1, 5511:4
**invite** [1] - 5552:11
**invites** [1] - 5552:13
**involved** [2] - 5522:10, 5522:16
**ironed** [1] - 5556:16
**irrelevant** [1] - 5526:20
**issue** [10] - 5526:19, 5530:10, 5537:23, 5547:18, 5549:1, 5551:1, 5555:6, 5556:25, 5562:15, 5562:19
**issues** [4] - 5507:10, 5557:5, 5557:10, 5563:3
**itself** [8] - 5513:21, 5515:24, 5518:14, 5518:22, 5518:24, 5519:14, 5540:4, 5550:20

### J

**J.C** [1] - 5563:18
**jail** [1] - 5559:9
**James** [1] - 5506:10
**JAMES** [1] - 5503:23
**JEFFREY** [1] - 5503:15
**Jeffrey** [1] - 5506:8
**Jersey** [1] - 5504:10
**Jessica** [1] - 5506:6
**job** [3] - 5516:23,

5516:24, 5532:9
**joint** [13] - 5507:22, 5509:23, 5532:3, 5540:11, 5540:17, 5540:24, 5542:12, 5543:20, 5544:17, 5545:6, 5547:1, 5547:21, 5548:15
**Jonathan** [1] - 5506:15
**JONATHAN** [1] - 5504:11
**Jones** [2] - 5511:3, 5511:4
**JR** [3] - 5503:15, 5503:23, 5504:2
**judge** [6] - 5507:19, 5509:15, 5521:4, 5529:6, 5535:18, 5547:12
**Judge** [5] - 5519:17, 5524:6, 5536:23, 5545:24, 5547:8
**JUDGE** [1] - 5503:11
**Judges** [1] - 5561:15
**Juli** [2] - 5506:12, 5506:13
**JULI** [2] - 5504:4, 5504:5
**jurisdictions** [2] - 5523:24, 5525:7
**jurors** [3] - 5510:3, 5525:8, 5563:11
**jury** [68] - 5507:4, 5507:22, 5508:20, 5509:8, 5510:5, 5512:23, 5513:24, 5513:25, 5515:14, 5516:15, 5518:25, 5519:11, 5519:13, 5519:23, 5520:8, 5520:10, 5524:11, 5524:22, 5525:17, 5528:20, 5533:7, 5534:3, 5534:4, 5534:12, 5535:13, 5539:10, 5539:25, 5540:16, 5540:18, 5540:22, 5541:8, 5541:12, 5542:1, 5542:3, 5542:11, 5542:15, 5542:18, 5542:20, 5542:25, 5543:3, 5543:8, 5543:14, 5543:18, 5543:22, 5543:25, 5544:1, 5544:3, 5544:13, 5545:1, 5547:13, 5547:20, 5551:18, 5551:23,

5552:3, 5552:7, 5552:14, 5553:1, 5553:18, 5554:3, 5554:8, 5554:17, 5556:13, 5558:16, 5560:16, 5561:3, 5561:8, 5561:9, 5563:1
**JURY** [1] - 5503:10
**jury's** [2] - 5509:2, 5544:5
**justice** [1] - 5555:10
**JUSTICE** [1] - 5503:20
**justifies** [1] - 5528:14
**JUSTIN** [1] - 5503:19

### K

**Kathryn** [1] - 5506:8
**KATHRYN** [1] - 5503:14
**keeping** [1] - 5553:8
**Kelly** [1] - 5506:5
**Kenneth** [1] - 5506:5
**kind** [8] - 5517:6, 5526:4, 5535:13, 5553:11, 5555:21, 5558:9, 5563:22, 5563:24
**knowledge** [3] - 5513:2, 5514:9, 5561:22

### L

**Lamberth** [1] - 5561:16
**Lamont** [1] - 5563:19
**language** [16] - 5525:7, 5526:11, 5531:18, 5532:1, 5532:3, 5539:1, 5539:12, 5540:5, 5540:22, 5542:17, 5543:6, 5543:11, 5543:14, 5545:10, 5548:10, 5550:4
**LASSITER** [1] - 5503:24
**last** [10] - 5506:22, 5519:17, 5525:24, 5540:9, 5543:16, 5548:7, 5555:9, 5555:11, 5555:12, 5558:16
**late** [1] - 5562:4
**latest** [1] - 5561:4

5573

law [31] - 5509:10,
5509:15, 5512:10,
5516:8, 5517:18,
5517:25, 5520:15,
5523:6, 5529:16,
5531:10, 5532:20,
5533:2, 5533:6,
5533:8, 5534:5,
5534:6, 5534:10,
5534:13, 5534:14,
5535:15, 5537:23,
5538:8, 5539:16,
5540:7, 5540:16,
5541:3, 5543:4,
5543:9, 5544:23,
5558:21
  LAW [2] - 5504:2,
5504:5
  lawfully [1] - 5513:5
  Lawn [1] - 5503:24
  laws [1] - 5534:7
  lawyers [1] - 5564:8
  least [4] - 5526:10,
5539:2, 5539:19,
5564:10
  leave [4] - 5527:20,
5539:23, 5541:15,
5547:25
  leaving [1] - 5518:19
  lectern [2] - 5509:5,
5541:20
  Lee [1] - 5506:10
  left [2] - 5524:1,
5557:5
  legal [6] - 5517:10,
5518:9, 5539:20,
5540:23, 5541:14,
5546:23
  legalistic [1] -
5525:16
  legally [1] - 5519:7
  legitimate [1] -
5534:25
  less [3] - 5529:7,
5535:19, 5562:17
  lesser [4] - 5550:18,
5554:14, 5554:18,
5554:22
  liability [9] - 5549:7,
5551:13, 5552:1,
5552:6, 5552:17,
5552:24, 5552:25,
5554:6
  license [1] - 5517:21
  licensed [1] - 5513:7
  likely [2] - 5514:12,
5547:18
  limiting [1] - 5511:25
  Linder [2] - 5506:10,
5559:6

LINDER [18] -
5503:22, 5503:24,
5508:22, 5553:10,
5555:1, 5558:7,
5558:12, 5558:15,
5558:19, 5559:3,
5559:8, 5559:17,
5560:20, 5560:24,
5562:22, 5563:18,
5564:3, 5564:5
  Linder's [1] - 5509:6
  line [3] - 5508:1,
5548:7, 5549:10
  Lisa [1] - 5565:12
  LISA [2] - 5504:17,
5565:3
  list [1] - 5556:13
  LLC [2] - 5504:8,
5504:12
  loaded [2] - 5518:4,
5518:8
  look [29] - 5509:15,
5514:23, 5515:7,
5516:10, 5520:9,
5523:14, 5524:19,
5524:21, 5524:25,
5526:5, 5526:6,
5526:10, 5526:17,
5528:18, 5529:6,
5531:23, 5532:12,
5546:21, 5547:11,
5547:17, 5548:13,
5549:1, 5550:13,
5550:24, 5551:9,
5558:4, 5560:8,
5562:10
  looked [2] - 5514:24,
5532:15
  looking [4] - 5527:7,
5548:25, 5551:1,
5551:6
  LOUIS [1] - 5503:16
  Louis [1] - 5506:9
  love [1] - 5563:22

**M**

  mail [1] - 5563:16
  mail-in [1] - 5563:16
  main [1] - 5519:22
  maintained [1] -
5541:14
  Manzo [1] - 5506:9
  MANZO [1] - 5503:16
  mark [1] - 5532:16
  marry [2] - 5522:23,
5522:25
  marshal [1] -
5563:19

Maryland [1] -
5504:16
  masks [1] - 5507:3
  matter [7] - 5527:11,
5537:23, 5540:16,
5541:3, 5543:4,
5543:9, 5543:19
  maximize [3] -
5561:3, 5561:14,
5563:13
  mean [19] - 5510:11,
5511:17, 5514:2,
5517:16, 5519:25,
5520:2, 5520:9,
5523:14, 5525:18,
5527:17, 5531:5,
5531:6, 5539:20,
5543:11, 5544:14,
5545:17, 5546:20,
5549:24, 5550:13
  meaning [1] -
5542:13
  means [8] - 5526:2,
5528:15, 5533:2,
5534:1, 5534:4,
5540:11, 5542:19,
5554:1
  meat [3] - 5542:6,
5543:10, 5543:13
  meets [2] - 5547:3,
5548:16
  MEGGS - 5504:2
  Meggs [3] - 5506:5,
5506:13, 5506:17
  MEHTA [1] - 5503:11
  memorandum [1] -
5530:10
  mentioned [1] -
5509:10
  mere [2] - 5512:23,
5520:15
  merely [1] - 5522:12
  merge [1] - 5553:15
  met [1] - 5546:10
  microphone [2] -
5541:22, 5558:11
  might [10] - 5511:16,
5531:25, 5533:4,
5550:19, 5552:11,
5558:24, 5559:6,
5561:8, 5562:25,
5563:11
  mind [1] - 5543:18
  misapprehension
[1] - 5525:8
  misspoke [1] -
5533:13
  mistakenly [1] -
5540:8
  misunderstood [1] -

5534:18
  model [7] - 5524:23,
5524:25, 5526:7,
5526:15, 5529:4,
5535:4, 5535:20
  modified [1] -
5553:21
  modifying [1] -
5513:14
  moment [1] - 5549:6
  Monday [8] - 5558:3,
5558:4, 5560:9,
5563:4, 5563:6,
5563:24, 5564:18
  months [1] - 5510:14
  morning [6] -
5558:4, 5560:11,
5560:17, 5560:19,
5561:1, 5561:24
  most [5] - 5507:8,
5509:17, 5523:24,
5526:11, 5530:20
  mostly [2] - 5531:16,
5531:21
  motion [1] - 5557:13
  motive [1] - 5514:9
  move [4] - 5548:8,
5554:4, 5561:17,
5563:15
  moving [2] -
5529:10, 5559:24
  MR [143] - 5506:22,
5507:3, 5507:17,
5507:19, 5507:21,
5508:17, 5508:22,
5510:11, 5510:17,
5510:21, 5510:23,
5511:10, 5513:16,
5514:10, 5514:22,
5515:12, 5517:5,
5517:22, 5518:14,
5519:17, 5519:22,
5520:5, 5520:20,
5521:4, 5521:6,
5521:10, 5521:14,
5523:2, 5523:11,
5523:20, 5523:22,
5525:2, 5525:11,
5525:23, 5526:13,
5526:18, 5526:24,
5527:3, 5527:5,
5527:19, 5527:25,
5528:6, 5528:11,
5528:14, 5529:9,
5529:12, 5529:18,
5529:21, 5530:1,
5531:7, 5531:15,
5532:5, 5532:13,
5532:24, 5533:10,
5533:14, 5533:20,

5534:8, 5534:18,
5535:6, 5535:10,
5536:15, 5536:23,
5537:7, 5537:10,
5538:18, 5539:13,
5540:20, 5541:2,
5542:9, 5542:15,
5543:5, 5543:22,
5544:1, 5544:5,
5544:8, 5544:22,
5545:8, 5545:13,
5545:20, 5546:5,
5546:13, 5546:19,
5547:8, 5547:10,
5548:1, 5549:17,
5549:24, 5550:3,
5550:6, 5550:11,
5550:23, 5551:18,
5552:7, 5552:12,
5552:23, 5553:5,
5553:10, 5553:14,
5553:18, 5554:9,
5554:21, 5555:1,
5556:1, 5556:4,
5556:17, 5556:22,
5557:8, 5557:9,
5557:17, 5557:20,
5557:23, 5558:7,
5558:12, 5558:15,
5558:19, 5558:23,
5559:3, 5559:4,
5559:8, 5559:17,
5559:18, 5559:19,
5559:23, 5560:14,
5560:20, 5560:24,
5560:25, 5561:19,
5561:23, 5562:3,
5562:5, 5562:13,
5562:22, 5562:25,
5563:5, 5563:9,
5563:18, 5564:3,
5564:5, 5564:6,
5564:16, 5564:20
  MS [10] - 5507:1,
5508:25, 5509:6,
5527:2, 5541:18,
5541:23, 5543:10,
5544:20, 5550:2,
5553:9
  mud [1] - 5531:1
  Mukasey's [1] -
5524:6
  multiple [2] - 5554:1,
5555:24
  murder [1] - 5518:23
  must [5] - 5522:17,
5530:18, 5537:14,
5538:10, 5555:13

## N

**nearly** [1] - 5525:19
**necessarily** [4] - 5522:13, 5527:8, 5527:15, 5531:19
**necessary** [2] - 5514:13, 5515:25
**need** [26] - 5507:19, 5507:20, 5510:19, 5513:14, 5521:24, 5528:16, 5537:11, 5538:8, 5541:2, 5541:12, 5542:5, 5543:1, 5545:2, 5545:25, 5547:6, 5549:9, 5550:25, 5552:24, 5553:2, 5553:21, 5556:16, 5558:5, 5561:7, 5561:8, 5563:7
**needs** [7] - 5533:7, 5534:5, 5534:12, 5538:16, 5543:18, 5544:1, 5547:21
**negative** [3] - 5563:20, 5563:23
**negotiated** [3] - 5531:20, 5542:17, 5545:9
**negotiation** [1] - 5543:7
**negotiations** [1] - 5556:5
**NESTLER** [68] - 5503:15, 5507:17, 5508:17, 5510:11, 5510:17, 5510:21, 5513:16, 5514:10, 5514:22, 5515:12, 5518:14, 5523:2, 5523:11, 5523:20, 5523:22, 5525:2, 5525:11, 5526:13, 5526:18, 5527:25, 5528:6, 5529:9, 5531:15, 5535:6, 5535:10, 5536:15, 5539:13, 5540:20, 5541:2, 5542:9, 5542:15, 5543:5, 5543:22, 5544:1, 5544:5, 5544:8, 5544:22, 5545:8, 5547:10, 5548:1, 5549:17, 5549:24, 5550:11, 5551:18, 5552:7, 5552:12, 5552:23, 5553:14, 5553:18, 5554:9,

5554:21, 5556:4, 5556:17, 5556:22, 5557:9, 5557:23, 5558:23, 5559:4, 5559:19, 5559:23, 5560:14, 5560:25, 5562:25, 5563:5, 5563:9, 5564:6, 5564:16, 5564:20
**Nestler** [4] - 5506:8, 5519:21, 5539:18, 5545:1
**never** [1] - 5508:22
**nevertheless** [1] - 5547:18
**New** [4] - 5504:10, 5517:18, 5523:24, 5524:7
**next** [12] - 5508:5, 5520:21, 5526:19, 5527:21, 5530:18, 5532:16, 5554:13, 5558:1, 5560:1, 5560:5, 5561:1, 5564:18
**Ninth** [1] - 5551:2
**none** [4] - 5520:11, 5544:5, 5544:13, 5561:18
**North** [1] - 5504:12
**Northwest** [1] - 5503:17, 5503:20, 5504:3, 5504:5, 5504:19, 5565:14
**notably** [1] - 5523:24
**notes** [4] - 5509:8, 5548:25, 5550:25, 5565:5
**nothing** [9] - 5516:2, 5518:7, 5519:1, 5519:20, 5519:24, 5520:1, 5520:3, 5529:10, 5544:18
**notion** [1] - 5525:12
**nuances** [1] - 5523:6
**number** [2] - 5513:9, 5517:23

## O

**Oak** [1] - 5503:24
**obfuscate** [1] - 5519:19
**object** [5] - 5508:13, 5508:14, 5528:8, 5528:11, 5559:21
**objected** [3] - 5508:6, 5514:18, 5527:22

**objecting** [1] - 5509:25
**objection** [9] - 5507:13, 5512:7, 5519:9, 5521:20, 5526:23, 5529:15, 5537:20, 5541:14, 5553:7
**objections** [1] - 5557:3
**objective** [1] - 5528:25
**observed** [1] - 5535:17
**obstruct** [2] - 5536:5, 5551:21
**obstructed** [5] - 5537:3, 5539:5, 5539:8, 5540:3, 5540:4
**obstruction** [9] - 5536:2, 5549:3, 5549:13, 5549:20, 5551:22, 5555:10, 5555:18, 5555:24, 5556:19
**obviously** [2] - 5512:25, 5552:21
**occur** [1] - 5559:1
**occurred** [2] - 5527:15, 5540:8
**October** [2] - 5503:6, 5565:10
**OF** [6] - 5503:1, 5503:3, 5503:10, 5503:17, 5503:20, 5504:5
**offended** [1] - 5516:17
**offense** [26] - 5536:4, 5536:12, 5537:12, 5541:6, 5549:4, 5549:8, 5549:16, 5549:21, 5549:22, 5550:16, 5550:18, 5550:19, 5551:5, 5551:12, 5551:20, 5551:25, 5552:5, 5552:15, 5552:20, 5552:23, 5554:14, 5554:15, 5554:18
**offensive** [3] - 5512:22, 5512:24, 5514:5
**offensiveness** [1] - 5513:20
**office** [1] - 5556:22
**OFFICE** [1] - 5503:16
**OFFICES** [1] - 5504:5

**official** [45] - 5536:2, 5536:5, 5536:21, 5537:11, 5537:12, 5537:15, 5537:19, 5537:22, 5538:6, 5538:11, 5538:24, 5539:21, 5540:1, 5540:3, 5540:11, 5540:17, 5540:24, 5541:13, 5542:7, 5542:12, 5542:13, 5542:23, 5543:20, 5544:18, 5545:7, 5545:17, 5545:19, 5545:22, 5546:9, 5546:14, 5546:15, 5546:23, 5547:1, 5547:4, 5547:22, 5548:12, 5548:13, 5549:3, 5549:13, 5549:20, 5551:21, 5551:22, 5565:12
**Official** [1] - 5504:18
**often** [2] - 5525:5, 5525:8
**oftentimes** [1] - 5515:13
**old** [1] - 5545:18
**once** [3] - 5534:20, 5558:2, 5560:4
**one** [25] - 5507:12, 5508:5, 5512:20, 5517:6, 5517:23, 5522:21, 5523:16, 5527:3, 5528:20, 5530:5, 5535:20, 5540:13, 5545:21, 5547:5, 5550:11, 5550:12, 5550:21, 5550:25, 5553:22, 5554:6, 5554:11, 5554:13, 5558:16, 5562:13
**open** [3] - 5513:13, 5517:23, 5557:5
**opening** [2] - 5511:16, 5521:1
**opportunity** [2] - 5508:15, 5559:20
**oppose** [1] - 5509:7, 5520:24, 5530:2
**opposed** [2] - 5522:2, 5554:7
**opposition** [1] - 5520:22
**optimal** [1] - 5560:15
**Option** [2] - 5547:8, 5547:10
**oral** [2] - 5515:21, 5560:21

**order** [5] - 5510:8, 5530:21, 5554:2, 5555:12, 5556:13
**ordinary** [2] - 5512:17, 5512:19
**Ortega** [1] - 5538:23
**otherwise** [2] - 5534:17, 5560:18
**ought** [5] - 5540:13, 5544:16, 5545:3, 5545:4, 5552:15
**out-of-town** [1] - 5564:8
**overlapping** [1] - 5524:15
**overt** [2] - 5523:9, 5523:16
**own** [1] - 5511:1
**Owners'** [1] - 5518:2

## P

**P.A** [1] - 5504:15
**p.m** [2] - 5503:7, 5537:23
**page** [5] - 5507:21, 5529:19, 5529:24, 5537:8, 5548:20
**Page** [26] - 5505:3, 5507:22, 5509:22, 5509:23, 5510:8, 5512:4, 5520:22, 5521:6, 5521:18, 5521:19, 5522:20, 5526:19, 5529:11, 5532:18, 5532:19, 5534:25, 5535:24, 5536:3, 5536:19, 5537:1, 5548:23, 5549:2, 5549:14, 5553:20, 5554:13, 5555:10
**Pages** [2] - 5522:4, 5536:1
**paragraph** [22] - 5514:10, 5514:25, 5522:25, 5523:22, 5524:20, 5525:3, 5525:19, 5527:21, 5527:22, 5528:4, 5528:12, 5528:15, 5528:22, 5529:3, 5529:22, 5532:17, 5532:18, 5540:9, 5546:3, 5548:2, 5556:8, 5559:14
**Paragraph** [2] - 5522:24, 5528:3
**paragraphs** [1] -

5575

5553:25
**Park** [1] - 5504:3
**parliamentarian** [1] - 5538:23
**part** [4] - 5510:24, 5511:2, 5531:8, 5562:22
**participants** [1] - 5534:25
**particular** [3] - 5513:21, 5525:7, 5547:15
**particularly** [5] - 5519:3, 5526:25, 5537:5, 5550:13, 5555:5
**parties** [4] - 5531:15, 5540:20, 5556:18, 5557:3
**parties'** [1] - 5508:11
**parts** [1] - 5556:8
**past** [2] - 5535:5, 5562:8
**pause** [1] - 5562:15
**pending** [7] - 5537:11, 5537:13, 5537:24, 5538:8, 5538:9, 5540:1
**Pennsylvania** [4] - 5503:20, 5504:5, 5504:13, 5562:2
**people** [3] - 5522:12, 5523:25, 5525:21
**per** [1] - 5546:7
**perfect** [1] - 5544:21
**perform** [1] - 5530:5
**perhaps** [8] - 5509:11, 5524:21, 5531:13, 5532:10, 5533:14, 5539:4, 5539:6, 5550:19
**period** [3] - 5509:13, 5544:18, 5545:7
**permit** [2] - 5517:20, 5559:10
**person** [3] - 5512:22, 5515:18, 5515:22
**persons** [1] - 5527:12
**perspective** [4] - 5507:18, 5510:21, 5514:16, 5523:3
**persuasive** [2] - 5528:9, 5535:19
**Phillip** [1] - 5506:10
**PHILLIP** [1] - 5503:22
**phrasing** [1] - 5546:19
**pick** [1] - 5527:5

**Pinkerton** [1] - 5551:25
**place** [2] - 5514:12, 5528:10
**places** [2] - 5509:13, 5518:3
**Plaintiff** [1] - 5503:4
**plan** [3] - 5522:10, 5530:9, 5558:6
**planning** [1] - 5559:4
**plans** [2] - 5527:13, 5561:7
**pleaded** [1] - 5541:5
**plenty** [1] - 5512:21
**point** [16] - 5509:7, 5520:17, 5528:1, 5528:4, 5528:7, 5532:2, 5532:7, 5535:7, 5539:6, 5542:24, 5547:14, 5551:3, 5558:13, 5562:8, 5562:17, 5563:10
**pop** [1] - 5515:13
**portion** [4] - 5520:23, 5531:9, 5531:11, 5556:10
**position** [7] - 5508:11, 5508:20, 5514:22, 5515:25, 5533:11, 5559:13, 5559:15
**positive** [1] - 5530:19
**possess** [2] - 5518:1, 5519:10
**possessed** [6] - 5513:4, 5513:5, 5517:8, 5517:12, 5519:7, 5519:15
**possessing** [3] - 5518:22, 5518:25, 5520:12
**possession** [5] - 5513:1, 5518:17, 5518:21, 5519:13, 5520:15
**possibilities** [1] - 5546:21
**possibility** [2] - 5535:14, 5540:6
**possible** [2] - 5529:18, 5555:24
**potential** [1] - 5527:9
**potentially** [2] - 5559:20, 5561:4
**prefer** [2] - 5509:8, 5535:15
**preference** [1] - 5545:8

**premise** [1] - 5551:6
**prepared** [3] - 5556:11, 5560:10, 5560:11
**presence** [1] - 5539:6
**present** [2] - 5506:18, 5558:13
**presentation** [1] - 5562:12
**presented** [1] - 5546:2
**presenting** [1] - 5555:7
**presently** [1] - 5545:4
**presumptively** [1] - 5534:21
**pretty** [1] - 5563:17
**prevent** [1] - 5539:8
**prevented** [3] - 5529:17, 5532:21, 5534:15
**preventing** [1] - 5534:4
**primarily** [1] - 5517:18
**principles** [4] - 5520:18, 5523:12, 5524:16, 5539:20
**privately** [1] - 5561:11
**proactive** [1] - 5530:23
**problem** [1] - 5526:25
**problematic** [3] - 5531:2, 5537:6, 5562:17
**procedure** [1] - 5563:24
**proceed** [1] - 5560:9
**proceeding** [50] - 5536:3, 5536:6, 5536:22, 5537:11, 5537:13, 5537:15, 5537:20, 5537:22, 5537:24, 5538:6, 5538:11, 5538:24, 5539:8, 5539:9, 5539:22, 5540:1, 5540:3, 5540:11, 5540:17, 5540:24, 5541:13, 5542:7, 5542:8, 5542:13, 5542:23, 5543:20, 5544:18, 5545:7, 5545:17, 5545:18, 5545:19, 5545:22, 5546:9, 5546:14,

5546:16, 5546:23, 5546:24, 5547:1, 5547:4, 5547:22, 5547:23, 5548:12, 5548:14, 5549:3, 5549:13, 5549:21, 5551:21, 5551:22
**proceedings** [2] - 5506:18, 5565:6
**Proceedings** [1] - 5564:22
**produced** [1] - 5565:6
**prohibition** [1] - 5518:12
**promise** [1] - 5538:1
**proof** [1] - 5528:7
**proper** [1] - 5530:5
**property** [1] - 5554:15
**proposal** [9] - 5507:18, 5514:20, 5522:19, 5525:15, 5529:15, 5531:25, 5532:3, 5544:8, 5544:9
**propose** [1] - 5543:11
**proposed** [12] - 5507:7, 5507:22, 5509:23, 5510:8, 5517:3, 5523:1, 5523:23, 5524:23, 5525:19, 5531:19, 5536:2, 5555:20
**proposing** [1] - 5537:1
**proposition** [1] - 5523:17
**protect** [1] - 5516:4
**Protection** [1] - 5518:2
**protection** [1] - 5515:2
**protections** [1] - 5516:14
**protects** [1] - 5518:2
**protocols** [1] - 5538:21
**prove** [3] - 5528:24, 5537:14, 5538:10
**proven** [2] - 5524:3, 5525:24
**proves** [1] - 5522:15
**provide** [2] - 5510:14, 5548:3
**provided** [1] - 5508:18
**prudent** [1] - 5563:1
**purchased** [1] -

5519:7
**pure** [1] - 5511:13
**purpose** [1] - 5520:4
**purposes** [4] - 5521:2, 5541:6, 5545:23, 5553:16
**pushed** [1] - 5562:7
**put** [10] - 5513:24, 5514:15, 5515:6, 5517:7, 5521:25, 5532:16, 5534:16, 5534:19, 5534:22, 5557:16
**puts** [1] - 5535:24
**putting** [1] - 5550:3
**PUTZI** [1] - 5504:15

**Q**

**questions** [1] - 5507:9
**quick** [2] - 5521:4, 5556:2
**quite** [2] - 5514:2, 5526:24
**quote** [1] - 5514:24

**R**

**Rahman** [1] - 5531:22
**raise** [2] - 5555:9, 5557:4
**raised** [2] - 5508:10, 5563:10
**RAKOCZY** [1] - 5503:14
**Rakoczy** [1] - 5506:8
**rare** [3] - 5524:2, 5525:24, 5526:2
**rather** [2] - 5544:2, 5544:12
**RDR** [3] - 5504:17, 5565:3, 5565:12
**reach** [5] - 5533:7, 5533:8, 5534:13, 5543:23, 5545:25
**reached** [3] - 5540:23, 5542:25, 5544:10
**reaction** [1] - 5508:23
**read** [11] - 5517:8, 5517:16, 5522:1, 5527:17, 5530:15, 5530:17, 5536:20, 5549:19, 5555:12, 5556:23
**reads** [2] - 5522:8,

5576

5530:1
**real** [2] - 5509:18, 5521:4
**really** [3] - 5544:15, 5544:16, 5560:16
**rearranged** [1] - 5561:8
**reason** [9] - 5507:15, 5510:6, 5511:22, 5515:8, 5515:15, 5522:6, 5525:6, 5526:22, 5562:8
**reasonable** [7] - 5512:22, 5522:15, 5537:14, 5538:11, 5541:9, 5546:1, 5547:3
**reasonably** [2] - 5537:15, 5538:12
**reasons** [1] - 5524:24
**recent** [1] - 5517:11
**recently** [1] - 5517:17
**recognize** [1] - 5536:9
**recognizing** [1] - 5514:12
**recollection** [5] - 5509:2, 5509:8, 5517:17, 5556:4, 5558:20
**recording** [1] - 5509:9
**recordings** [1] - 5508:7
**recruit** [1] - 5532:8
**Red** [13] - 5507:13, 5508:6, 5512:9, 5512:10, 5512:14, 5522:6, 5522:23, 5523:3, 5524:5, 5525:14, 5525:20, 5528:23, 5529:1
**reflect** [1] - 5556:2
**reflection** [1] - 5531:16
**regarding** [2] - 5517:6, 5531:9
**regardless** [1] - 5562:10
**rein** [1] - 5519:18
**reject** [1] - 5554:4
**relevant** [2] - 5511:3, 5516:20
**reluctant** [2] - 5524:13, 5535:12
**rely** [1] - 5524:13
**remain** [1] - 5506:1
**remark** [2] - 5553:21,

5554:1
**remarks** [1] - 5554:10
**remember** [1] - 5517:21
**remind** [1] - 5559:10
**reminded** [2] - 5512:23, 5516:16
**render** [1] - 5552:7
**renumber** [1] - 5556:18
**REPORTED** [1] - 5504:17
**REPORTER** [2] - 5509:3, 5558:10
**Reporter** [2] - 5504:18, 5565:12
**representing** [1] - 5531:17
**request** [3] - 5508:25, 5510:5, 5554:21
**requesting** [1] - 5532:19
**require** [4] - 5523:9, 5533:17, 5547:13, 5560:20
**required** [6] - 5512:1, 5517:19, 5528:24, 5532:23, 5533:1, 5560:23
**requires** [2] - 5530:3, 5542:3
**reserved** [1] - 5541:19
**resist** [3] - 5530:18, 5530:20, 5530:21
**resolve** [3] - 5521:8, 5543:18, 5548:18
**resolved** [1] - 5557:6
**respect** [4] - 5511:22, 5512:1, 5512:25, 5520:15
**respond** [3] - 5557:22, 5557:25, 5558:5
**rest** [3] - 5560:4, 5560:6, 5560:10
**result** [3] - 5514:11, 5531:20, 5543:7
**results** [1] - 5564:11
**return** [1] - 5555:13
**review** [2] - 5534:20, 5559:20
**reviewed** [1] - 5511:3
**revisions** [1] - 5562:16
**reword** [2] - 5512:9, 5547:20

**Rhodes** [9] - 5506:4, 5506:11, 5506:19, 5558:12, 5560:5, 5561:3, 5561:13, 5563:6, 5563:7
**RHODES** [2] - 5503:6, 5503:23
**Rhodes's** [2] - 5558:24, 5562:11
**riding** [1] - 5506:23
**rifles** [2] - 5518:9, 5518:11
**rise** [1] - 5533:4
**Ritchie** [1] - 5504:15
**Road** [1] - 5504:3
**robbery** [1] - 5518:24
**rolling** [1] - 5563:22
**Room** [1] - 5504:20
**Route** [1] - 5504:9
**routes** [1] - 5541:17
**routinely** [1] - 5510:1
**rub** [1] - 5520:6
**rule** [1] - 5509:1
**Rule** [8] - 5530:10, 5557:12, 5559:25, 5560:11, 5560:17, 5560:20, 5562:22
**ruled** [1] - 5531:9
**ruling** [1] - 5537:21

**S**

**sat** [1] - 5522:10
**satisfied** [1] - 5547:16
**saw** [1] - 5506:22
**schedule** [2] - 5560:1, 5564:9
**scheduled** [1] - 5562:5
**scheduling** [3] - 5560:25, 5562:25, 5563:2
**school** [1] - 5558:21
**scooter** [1] - 5506:23
**SDNY** [2] - 5524:8, 5525:7
**se** [1] - 5546:7
**seated** [1] - 5506:1
**second** [11] - 5522:25, 5523:22, 5524:20, 5525:3, 5525:19, 5527:21, 5529:2, 5530:1, 5537:10, 5550:23, 5552:18
**Second** [2] - 5517:15, 5518:20
**Secret** [1] - 5538:21

**Section** [1] - 5534:10
**section** [2] - 5529:13, 5530:11
**sections** [1] - 5533:20
**security** [1] - 5538:21
**seditious** [8] - 5521:2, 5523:13, 5524:7, 5529:14, 5530:11, 5531:8, 5533:21, 5535:23
**see** [23] - 5508:3, 5509:22, 5510:6, 5511:5, 5512:3, 5520:21, 5525:1, 5526:7, 5528:18, 5529:5, 5532:10, 5534:23, 5535:22, 5537:5, 5548:5, 5550:10, 5555:11, 5555:16, 5556:6, 5558:2, 5560:12, 5564:18
**seem** [2] - 5512:22, 5513:8
**send** [11] - 5508:12, 5508:14, 5508:15, 5508:17, 5508:23, 5509:25, 5510:2, 5526:16, 5531:13, 5533:16, 5535:11
**sending** [1] - 5509:25
**sense** [4] - 5516:11, 5523:25, 5526:11, 5541:4
**sent** [5] - 5507:8, 5509:12, 5509:13, 5510:1, 5526:14
**sentence** [23] - 5514:17, 5514:18, 5515:15, 5516:6, 5519:18, 5525:19, 5525:24, 5526:4, 5529:1, 5530:1, 5530:6, 5530:18, 5534:24, 5537:10, 5540:9, 5543:17, 5548:1, 5548:7, 5549:15, 5549:18, 5553:24, 5555:11, 5559:14
**sentences** [3] - 5537:17, 5539:15, 5555:12
**sentencing** [1] - 5553:16
**separate** [4] - 5533:18, 5533:19,

5551:16
**sequentially** [1] - 5554:7
**series** [2] - 5537:2, 5548:21
**Service** [1] - 5538:22
**session** [11] - 5540:11, 5540:17, 5540:24, 5542:12, 5543:20, 5544:17, 5545:6, 5547:1, 5547:21, 5548:15, 5561:19
**SESSION** [1] - 5503:5
**set** [1] - 5560:1
**several** [2] - 5538:24, 5539:14
**SHER** [1] - 5503:19
**short** [2] - 5559:14, 5562:11
**shorten** [1] - 5562:23
**show** [1] - 5522:13
**shown** [2] - 5508:19, 5522:17
**similar** [3] - 5522:13, 5528:25, 5548:11
**similarly** [1] - 5512:24
**simple** [1] - 5545:3
**simpler** [1] - 5520:16
**simply** [14] - 5512:11, 5514:4, 5516:17, 5517:17, 5520:1, 5521:20, 5522:2, 5523:17, 5527:11, 5528:24, 5544:16, 5545:5, 5547:24, 5548:6
**simultaneously** [1] - 5557:22
**sit** [3] - 5525:21, 5561:5, 5563:1
**sitting** [2] - 5558:1, 5561:2
**skip** [2] - 5509:23, 5521:16
**skipped** [2] - 5521:9, 5540:8
**slight** [1] - 5543:16
**slightly** [2] - 5541:10, 5551:1
**slip** [1] - 5556:2
**Smith** [1] - 5511:3
**solved** [1] - 5548:6
**someone** [3] - 5527:10, 5535:5, 5562:20
**somewhat** [1] - 5508:8

5577

**somewhere** [3] - 5529:5, 5529:6, 5533:25

**sooner** [1] - 5564:4

**sorry** [15] - 5506:13, 5507:1, 5508:25, 5509:3, 5521:9, 5524:23, 5535:25, 5541:20, 5548:24, 5549:17, 5550:2, 5550:8, 5553:14, 5558:10

**sort** [18] - 5507:12, 5510:7, 5512:23, 5514:25, 5515:5, 5517:19, 5522:20, 5523:5, 5524:22, 5526:3, 5528:22, 5532:16, 5533:3, 5535:15, 5554:4, 5554:10, 5559:12, 5561:12

**sound** [1] - 5530:14

**sounded** [1] - 5558:23

**sounds** [2] - 5558:6, 5560:9

**south** [1] - 5518:6

**South** [1] - 5504:9

**special** [2] - 5555:21, 5561:23

**specific** [2] - 5535:8, 5556:12

**specifically** [2] - 5512:12, 5530:14

**speech** [11] - 5512:5, 5512:16, 5513:12, 5513:21, 5513:22, 5514:5, 5515:4, 5515:16, 5515:19, 5515:21, 5516:13

**springs** [1] - 5562:24

**squarely** [1] - 5547:14

**SR** [1] - 5504:14

**stage** [1] - 5510:22

**stand** [3] - 5507:19, 5512:3, 5520:14

**standard** [5] - 5522:6, 5522:23, 5524:5, 5524:22, 5553:24

**standing** [2] - 5520:13

**STANLEY** [1] - 5504:2

**Stanley** [2] - 5506:12, 5553:12

**start** [4] - 5521:18, 5538:25, 5554:4,

5554:6

**started** [1] - 5537:23

**starting** [1] - 5549:18

**starts** [2] - 5529:23, 5561:16

**state** [3] - 5517:23, 5518:7, 5520:15

**statement** [2] - 5524:8, 5539:16

**statements** [1] - 5514:6

**states** [1] - 5540:6

**STATES** [4] - 5503:1, 5503:3, 5503:11, 5503:16

**States** [6] - 5504:18, 5506:3, 5530:2, 5530:4, 5530:13, 5565:13

**statistical** [1] - 5526:3

**statute** [17] - 5530:8, 5530:12, 5530:16, 5530:17, 5531:8, 5531:9, 5531:11, 5534:2, 5536:9, 5542:13, 5547:23, 5549:14, 5550:15, 5550:17, 5550:20, 5551:10

**stay** [1] - 5538:16

**stenographic** [1] - 5565:5

**step** [1] - 5552:17

**stepping** [1] - 5549:6

**Stewart** [2] - 5506:4, 5563:20

**STEWART** [1] - 5503:6

**stick** [1] - 5535:15

**still** [3] - 5541:14, 5542:20, 5556:16

**straight** [1] - 5539:20

**straightforward** [2] - 5507:9, 5515:11

**Street** [2] - 5503:17, 5504:12

**stricken** [3] - 5530:7, 5536:24, 5537:18

**strike** [2] - 5520:7, 5555:4

**striking** [1] - 5516:24

**strong** [1] - 5542:10

**structure** [1] - 5536:11

**subheading** [2] - 5526:20, 5554:10

**subject** [1] - 5516:25

**submit** [10] - 5522:22, 5531:24,

5532:11, 5557:22, 5557:23, 5557:24, 5557:25, 5558:8, 5558:24, 5559:5

**submits** [1] - 5558:3

**submitted** [2] - 5531:16, 5532:3

**substantial** [2] - 5528:21, 5540:15

**substantially** [1] - 5562:23

**substantive** [10] - 5511:20, 5511:21, 5512:2, 5513:1, 5521:19, 5551:20, 5551:24, 5551:25, 5552:5, 5552:15

**success** [1] - 5526:20

**successful** [1] - 5527:14

**succinctly** [1] - 5514:2

**sufficiently** [1] - 5541:5

**suggest** [3] - 5511:15, 5528:20, 5543:16

**suggested** [3] - 5538:14, 5539:25, 5544:12

**suggesting** [1] - 5559:6

**suggestion** [1] - 5554:11

**suggests** [1] - 5526:2

**Suite** [3] - 5503:25, 5504:6, 5504:9

**summarily** [1] - 5515:1

**summarizes** [1] - 5522:20

**summary** [15] - 5510:8, 5510:9, 5510:10, 5510:12, 5510:15, 5510:17, 5511:5, 5511:10, 5511:12, 5511:13, 5511:19, 5511:20, 5511:22, 5512:1

**Sunday** [5] - 5557:20, 5563:20, 5563:23, 5564:8

**Superior** [1] - 5523:4

**support** [2] - 5522:22, 5555:5

**suppose** [1] - 5561:9

**supposed** [2] - 5525:11, 5536:16

**sustains** [1] - 5519:9

## T

**table** [3] - 5525:21, 5545:23, 5546:22

**tailored** [2] - 5523:4, 5530:14

**talks** [2] - 5523:25, 5530:12

**tantamount** [1] - 5511:5

**tape** [1] - 5508:7

**TARPLEY** [1] - 5503:23

**Tarpley** [1] - 5506:11

**tea** [1] - 5519:25

**temporary** [1] - 5520:1

**tend** [1] - 5532:22

**terabytes** [1] - 5532:6

**term** [2] - 5540:10, 5542:18, 5545:14

**terms** [7] - 5516:13, 5520:7, 5525:13, 5539:19, 5542:6, 5550:17, 5560:25

**terribly** [1] - 5509:21

**test** [2] - 5563:20, 5564:7

**testified** [1] - 5510:25

**testifies** [1] - 5510:15

**testimony** [8] - 5507:14, 5507:23, 5510:17, 5511:13, 5511:21, 5511:23, 5538:19, 5538:21

**testing** [2] - 5563:19, 5564:11

**Texas** [1] - 5503:25

**THE** [139] - 5503:1, 5503:11, 5503:14, 5503:17, 5503:22, 5504:2, 5504:8, 5504:11, 5504:14, 5506:1, 5506:2, 5506:20, 5506:24, 5507:2, 5507:5, 5507:20, 5507:22, 5508:21, 5509:3, 5509:4, 5509:10, 5510:16, 5510:19, 5511:9, 5511:11, 5514:1, 5514:21, 5514:23, 5516:10, 5517:13, 5520:2,

5520:6, 5520:21, 5521:5, 5521:9, 5521:11, 5521:16, 5523:10, 5523:14, 5523:21, 5524:12, 5525:10, 5525:18, 5526:5, 5526:16, 5526:19, 5527:17, 5527:20, 5528:5, 5528:13, 5528:16, 5529:10, 5529:13, 5529:20, 5529:25, 5531:5, 5531:14, 5532:11, 5532:14, 5532:25, 5533:12, 5533:19, 5533:22, 5534:9, 5534:21, 5535:9, 5535:11, 5536:20, 5536:24, 5537:9, 5537:25, 5539:18, 5541:1, 5541:4, 5541:21, 5542:2, 5542:14, 5543:2, 5543:15, 5543:24, 5544:4, 5544:7, 5544:14, 5544:25, 5545:16, 5545:21, 5546:12, 5546:18, 5546:20, 5547:9, 5547:11, 5548:4, 5549:19, 5550:5, 5550:10, 5550:13, 5551:9, 5552:3, 5552:10, 5552:22, 5553:3, 5553:7, 5553:13, 5553:17, 5553:20, 5554:12, 5554:23, 5555:3, 5556:15, 5556:21, 5556:25, 5557:15, 5557:19, 5557:21, 5558:6, 5558:10, 5558:14, 5558:16, 5558:20, 5559:2, 5559:10, 5559:22, 5560:8, 5560:15, 5560:22, 5561:12, 5561:21, 5562:1, 5562:4, 5562:10, 5562:24, 5563:4, 5563:6, 5563:16, 5564:1, 5564:4, 5564:13, 5564:17, 5564:21

**themselves** [1] - 5512:1

**theories** [1] - 5554:6

**theory** [8] - 5536:13, 5539:15, 5549:7, 5551:14, 5552:4, 5552:24, 5552:25,

5559:12
**therefore** [4] - 5525:16, 5538:5, 5540:1, 5540:2
**they've** [4] - 5508:8, 5546:22, 5548:14, 5554:3
**thinking** [2] - 5554:3, 5559:7
**Thomas** [1] - 5506:7
**Thompson** [3] - 5515:9, 5524:8, 5524:13
**thoughts** [1] - 5553:3
**thrown** [1] - 5535:19
**Thursday** [4] - 5560:10, 5561:4, 5561:13, 5563:22
**timeframe** [1] - 5557:9
**timing** [1] - 5559:25
**Title** [1] - 5534:10
**today** [2] - 5538:21, 5564:14
**together** [5] - 5516:5, 5517:7, 5522:11, 5522:12, 5531:12
**tomorrow** [1] - 5564:15
**top** [5] - 5521:19, 5522:20, 5532:19, 5536:3, 5536:19
**topic** [1] - 5559:24
**touched** [1] - 5511:2
**towards** [1] - 5523:4
**town** [1] - 5564:8
**transcript** [3] - 5509:7, 5565:5, 5565:6
**TRANSCRIPT** [1] - 5503:10
**transcripts** [10] - 5508:6, 5508:8, 5508:12, 5508:16, 5508:18, 5508:23, 5509:12, 5509:17, 5509:20
**transport** [5] - 5517:9, 5517:12, 5517:24, 5518:3, 5518:17
**transportation** [1] - 5518:15
**transported** [2] - 5517:9, 5517:12
**transporting** [4] - 5517:16, 5518:5, 5518:8, 5518:13

**travel** [2] - 5561:7, 5564:9
**trial** [5] - 5508:22, 5509:14, 5556:10, 5557:14, 5562:12
**TRIAL** [1] - 5503:10
**tried** [1] - 5554:10
**tries** [1] - 5519:8
**TROY** [1] - 5503:15
**Troy** [1] - 5506:9
**true** [3] - 5526:1, 5565:4, 5565:5
**Trump** [3] - 5515:10, 5524:9, 5524:13
**truth** [1] - 5509:17
**try** [1] - 5561:3
**trying** [6] - 5519:19, 5520:7, 5524:19, 5524:20, 5525:17, 5526:8
**Tuesday** [1] - 5563:24
**turn** [1] - 5512:4
**turning** [1] - 5510:7
**tweak** [1] - 5543:16
**two** [19] - 5512:20, 5516:4, 5522:23, 5524:17, 5533:20, 5533:23, 5534:1, 5537:17, 5538:22, 5540:13, 5541:16, 5545:21, 5546:21, 5551:23, 5555:12, 5557:25, 5560:2, 5561:24, 5562:14
**type** [1] - 5528:20
**types** [1] - 5533:3
**typically** [2] - 5513:18, 5515:21

## U

**U.S** [1] - 5503:20
**ultimately** [2] - 5519:11, 5527:13
**unable** [1] - 5551:4
**unanimity** [10] - 5529:16, 5532:20, 5532:23, 5533:1, 5533:8, 5533:17, 5534:1, 5534:13, 5555:10
**unanimous** [1] - 5534:6
**unanimously** [2] - 5534:14, 5555:18
**unaware** [1] - 5535:1
**unclear** [1] - 5524:24
**under** [8] - 5509:1,

5517:10, 5526:20, 5537:8, 5540:9, 5542:13, 5546:13, 5549:10
**underlying** [2] - 5552:20, 5552:23
**understandable** [1] - 5525:17
**understood** [7] - 5511:15, 5525:2, 5529:9, 5536:15, 5559:6, 5563:5, 5563:9
**unexpressed** [1] - 5524:2
**UNITED** [4] - 5503:1, 5503:3, 5503:11, 5503:16
**united** [1] - 5504:18
**United** [5] - 5506:3, 5530:2, 5530:4, 5530:13, 5565:13
**unlawful** [4] - 5512:24, 5513:1, 5519:2, 5519:14
**unlawfully** [1] - 5513:4
**unless** [2] - 5535:17, 5547:13
**unnecessarily** [1] - 5521:23
**unnecessary** [1] - 5521:24
**up** [18] - 5507:5, 5509:6, 5509:14, 5514:12, 5515:14, 5520:19, 5526:19, 5527:5, 5529:19, 5537:7, 5538:2, 5538:3, 5538:25, 5539:11, 5541:20, 5545:10, 5548:8, 5549:9
**upcoming** [1] - 5536:9
**uses** [1] - 5525:7

## V

**value** [1] - 5554:19
**various** [2] - 5519:6, 5539:20
**venture** [1] - 5535:1
**verdict** [9] - 5552:11, 5552:13, 5555:13, 5555:17, 5555:20, 5556:1, 5556:8, 5556:14, 5556:24
**verdicts** [1] - 5552:8

**version** [1] - 5542:17
**versus** [5] - 5506:4, 5511:20, 5524:9, 5531:21, 5532:4
**viewed** [1] - 5536:10
**vileness** [1] - 5513:20
**violated** [5] - 5533:6, 5533:9, 5533:12, 5534:2, 5536:9
**violating** [3] - 5520:14, 5533:2, 5533:24
**violation** [3] - 5533:4, 5534:4, 5550:15
**Virginia** [3] - 5517:23, 5518:7, 5519:24
**visually** [1] - 5513:10
**volume** [1] - 5510:2
**vote** [8] - 5540:12, 5540:25, 5543:21, 5544:18, 5545:7, 5547:2, 5562:1, 5563:11
**vs** [1] - 5503:5

## W

**wait** [2] - 5563:21, 5564:21
**waived** [2] - 5506:19, 5541:25
**wants** [3] - 5526:16, 5531:24, 5557:24
**washington** [1] - 5504:6
**Washington** [6] - 5503:6, 5503:18, 5503:21, 5504:3, 5504:20, 5565:14
**WATKINS** [1] - 5504:12
**Watkins** [3] - 5506:6, 5506:15, 5506:17
**ways** [3] - 5533:24, 5545:21, 5554:2
**weapons** [1] - 5517:16
**week** [5] - 5558:1, 5560:1, 5560:5, 5560:6, 5560:7
**weekend** [3] - 5531:13, 5557:18, 5564:10
**weight** [1] - 5529:7
**whole** [2] - 5516:12, 5535:7

**wish** [1] - 5554:2
**withdraw** [1] - 5527:3
**witness** [7] - 5510:9, 5510:10, 5510:15, 5511:6, 5511:12, 5511:23, 5511:24
**witnesses** [6] - 5510:9, 5510:12, 5538:22, 5539:14, 5561:7, 5564:8
**wondering** [1] - 5536:7
**Woodward** [1] - 5506:12
**WOODWARD** [2] - 5504:2, 5504:2
**word** [5] - 5521:20, 5526:22, 5526:23, 5530:20, 5547:6
**worded** [4] - 5543:17, 5545:4, 5550:14, 5550:17
**words** [5] - 5512:21, 5512:24, 5515:2, 5522:23
**works** [1] - 5544:21
**worry** [1] - 5542:16
**writing** [5] - 5534:16, 5534:19, 5534:22, 5560:21, 5560:23
**written** [1] - 5515:21

## Y

**York** [2] - 5523:24, 5524:7
**York's** [1] - 5517:18

## Z

**Zoom** [1] - 5562:6