**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**ELMER STEWART RHODES III,<br>KELLY MEGGS,<br>KENNETH HARRELSON,<br>JESSICA WATKINS,<br>ROBERTO MINUTA,<br>JOSEPH HACKETT,<br>DAVID MOERSCHEL, and<br>EDWARD VALLEJO,**<br><br>Defendants. | **Case No. 22-cr-15-APM** |

**GOVERNMENT'S SUPPLEMENTAL MOTION TO DISMISS INDICTMENT**

On May 21, 2026, the D.C. Circuit vacated the judgments of conviction in this case. *See United States v. Kenneth Harrelson, et al.,* 23-3089 (Doc. # 2174518); *United States v. Roberto Minuta, et al*., 23-3092 (Doc. # 2174524). In accordance with the D.C. Circuit's mandate, on May 22, 2026, the government moved this Court, pursuant to Fed. R. Crim. P. 48(a), to dismiss the pending indictments with prejudice in the above-captioned cases against defendants Elmer Stewart Rhodes III, Kelly Meggs, Kenneth Harrelson, Jessica Watkins, Roberto Minuta, Joseph Hackett, David Moerschel, and Edward Vallejo. ECF No. 967. All eight defendants indicated, through their attorneys, that they consented to this request. *Id.*

On May 29, 2026, this Court ordered the government to supplement its motion to dismiss to provide a more fulsome showing that dismissal is in the public interest. ECF No. 976 at 2. As detailed more fully below, dismissal with prejudice is in the public interest under the totality of circumstances. The President has exercised his prerogative to pardon the vast majority of defendants charged with offenses related to the events of January 6, 2021. Although the

defendants in the above-captioned cases here were not pardoned, the President commuted their sentences. These defendants have already been tried and convicted in two vigorously litigated public trials. To require the government to try these defendants again – particularly where the President's January 20, 2025 proclamation prohibits additional punishment for any convictions related to the events of January 6, 2021 – would be to subject them to precisely the sort of harassment that Rule 48(a) is designed to prevent. Under these circumstances, the Court should grant the government's Rule 48 motion and dismiss these cases with prejudice.

**Relevant Procedural Background**

On June 22, 2022, the grand jury returned a superseding indictment charging the defendants, each of whom had been previously arrested and charged in connection with the events of January 6, 2021,[1] with (1) seditious conspiracy, in violation of 18 U.S.C. § 2384; (2) conspiracy to obstruct an official proceeding, in violation of 18 U.S.C. § 1512(k); (3) obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2); (4) conspiracy to use force, intimidation, or threats to prevent officers of the United States from discharging their duties, in violation of 18 U.S.C. § 372; (5) destruction of government property, in violation of 18 U.S.C. § 1361; (6) interference with law enforcement officers during a civil disorder, in violation of 18 U.S.C. § 231(a)(3); and (7) through (13), tampering with documents or other objects, in violation of 18 U.S.C. § 1512(c)(1).

The Court presided over two trials of the charges in this indictment, the first from September 27 through November 29, 2022 (defendants Rhodes, Meggs, Harrelson, Watkins, and

---

[1]    Six of these defendants (Kelly Meggs, Kenneth Harrelson, Jessica Watkins, Roberto Minuta, Joseph Hackett, David Moerschel) and multiple other defendants were originally charged in Criminal Case No. 21-cr-28 (APM) with conspiracy, in violation of 18 U.S.C. § 371, obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2), and several other offenses. On

Thomas Caldwell), and the second from December 6, 2022, through January 23, 2023 (defendants Minuta, Hackett, Moerschel, and Vallejo).   The juries found all nine defendants guilty of either obstructing Congress, in violation of 18 U.S.C. § 1512(c)(2), conspiring to obstruct Congress, in violation of 18 U.S.C. § 1512(k), or both. Defendants Rhodes, Meggs, Minuta, Hackett, Moerschel, and Vallejo were found guilty of seditious conspiracy, in violation of 18 U.S.C. § 2384. Additionally, defendants Meggs, Harrelson, Watkins, Minuta, Hackett, Moerschel, and Vallejo were found guilty of violating 18 U.S.C. § 372; defendants Rhodes, Meggs, Harrelson, Caldwell, and Hackett were found guilty of violating 18 U.S.C. § 1512(c)(1); and several defendants were convicted of other lesser offenses.

The Court held an omnibus sentencing hearing with respect to all defendants (including Thomas Caldwell) on May 24, 2023.   Between May 25 and June 2, 2023, the Court sentenced the above-captioned eight defendants to periods of imprisonment ranging from 18 years (defendant Rhodes) to three years (defendant Moerschel).   On July 12, 2023, all eight defendants filed a notice of appeal; thereafter, these cases were transmitted to the D.C. Circuit and were consolidated in two separate appeals. *See United States v. Kenneth Harrelson, et al.,* 23-3089; *United States v. Roberto Minuta, et al*., 23-3092.

On June 28, 2024, the Supreme Court issued its decision in *Fischer v. United States*, 144 S. Ct. 2176 (2024), holding that to establish a violation of 18 U.S.C. § 1512(c)(2), which prohibits the corrupt obstruction of an official proceeding, the government must prove that the defendant

---

January 12, 2022, Elmer Stewart Rhodes III, Edward Vallejo, and those six defendants were charged in Criminal Case No. 22-cr-15, as described further herein.   The remaining defendants in Criminal Case No. 21-cr-28 were subsequently indicted on conspiracy to obstruct an official proceeding, in violation of 18 U.S.C. § 1512(k); conspiracy to use force, intimidation, or threats to prevent officers of the United States from discharging their duties, in violation of 18 U.S.C. § 372; and other offenses.

impaired (or attempted to impair) "the availability or integrity for use in an official proceeding of records, documents, objects" or "other things used in the proceeding." *Id*. at 2190. In so holding, the Court rejected the government's argument, adopted by the D.C. Circuit, that Section 1512(c)(2) reached all forms of obstructive conduct directed at an official proceeding.[2] But the Court left open on remand whether the indictment in *Fischer* was "sufficient" under the Court's construction. *Id*.[3]

On January 20, 2025, President Trump issued a presidential proclamation titled "Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at or Near the United States Capitol on January 6, 2021." Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 29, 2025). All eight above-captioned defendants and defendant Caldwell had their sentences commuted "to time served as of January 20, 2025[.]" Proclamation No. 10887, 90 Fed. Reg. at 8331.[4]

---

[2] Post *Fischer*, the government undertook a review of all cases that were impacted by the Supreme Court's decision. Of those cases that were then-pending, fewer than ten cases were identified where the government assessed it had sufficient evidence to demonstrate that the defendant impaired (or attempted to impair) "the availability or integrity for use in an official proceeding of records, documents, objects" or "other things used in the proceeding." *Fischer*, 144 S. Ct. at 2190. Only two of those cases were tried prior to January 20, 2025; both of those cases resulted in acquittals on the Section 1512 counts. *See United States v. Nicholas Kennedy*, Criminal Case No. 21-cr-487 (CKK), and *United States v. Christopher Warnagiris*, Criminal Case No. 21-cr-382 (PLF).

[3] On September 3, 2024, defendant Caldwell moved this Court to set aside the jury's verdict against him with respect to his conviction for violating 18 U.S.C. § 1512(c)(2) in Count Three of the indictment. ECF No. 890. The government did not oppose this motion, and alternatively moved this Court to dismiss Count Three under Rule 48(a). ECF No. 895 at 2. On January 10, 2025, the Court dismissed Count Three of the indictment and sentenced defendant Caldwell to time served on his remaining count of conviction, Count 13, charging him with a violation of 18 U.S.C. § 1512(c)(1).

[4] The defendants convicted in Criminal Case No. 21-cr-28, whom the government argued at trial were coconspirators of these eight defendants, were all pardoned by this Proclamation. Thomas Caldwell was later pardoned by the President on March 20, 2025.

On April 14, 2026, after multiple continuances were granted and prior to any appellant having filed their opening brief, the government moved the D.C. Circuit to vacate the defendants' convictions under 28 U.S.C. § 2016 and remand "so that the government may move to dismiss the indictment with prejudice under Federal Rule of Criminal Procedure 48(a)."   (Docs. ## 2168662 & 2168665).   The government argued that vacatur of the defendants' convictions was "just under the circumstances," citing 28 U.S.C. § 2106, because the United States had determined in its prosecutorial discretion that dismissal of this criminal case was in the interests of justice.   *Id.   See generally United States v. Fokker Servs. B.V.*, 818 F.3d 733, 742 (2016) ("[D]ecisions to dismiss pending criminal charges—no less than decisions to initiate charges and to identify which charges to bring—lie squarely within the ken of prosecutorial discretion.").   The government explained further that, "[i]n the Executive Branch's view, it is not in the interests of justice to continue to prosecute this case or the cases of other, similarly situated defendants." *Id.*

On May 21, 2026, the D.C. Circuit ordered that the "judgments of the district court be vacated and the cases be remanded to the district court for consideration of the government's forthcoming motion to dismiss the indictment," concluding that "vacatur and remand is 'just under the circumstances.'" (Docs. ## 2174518 & 2174524).

## **ARGUMENT**

The D.C. Circuit has vacated these defendants' convictions.   This Court therefore finds itself in a position that is, viewed solely through a procedural lens, identical to the one it faced on June 22, 2022, after the grand jury had returned the superseding indictment charging these defendants with seditious conspiracy.   During the nearly four intervening years, however, there have been several significant developments: (1) this Court presided over two vigorously litigated public trials, with able advocates on both sides, that resulted in these defendants' convictions; (2)

5

the Supreme Court issued its decision in *Fischer v. United States*, 144 S. Ct. 2176 (2024), overturning this Court's construction of 18 U.S.C. § 1512(c)(2), and by extension 18 U.S.C. § 1512(k); and (3) the President issued a proclamation requiring commutation of these defendants' sentences in connection with the events of January 6, 2021, and requiring the Department of Justice to dismiss with prejudice all pending cases related to the events of January 6, 2021. Viewed through the lens of the developments of the intervening four years, there are substantial reasons underpinning the government's request that this Court dismiss this indictment pursuant to Rule 48(a).

This Court should effectuate the D.C. Circuit's order of vacatur by dismissing the indictment with prejudice. To proceed otherwise would require the government to retry these cases where there have already been not one but two public trials, each spanning several months. And, in light of the scope of the President's commutation – which extends to any convictions for these eight defendants for offenses related to events that occurred at or near the United States Capitol on January 6, 2021 – were the government to retry these cases, no additional punishment could be imposed. Under these circumstances, dismissal with prejudice is appropriate.

**A. The decision to dismiss these cases is appropriately vested in the government and effectuates the D.C. Circuit's mandate.**

Pursuant to Rule 48(a), "[t]he government may, with leave of court, dismiss an indictment." Fed. R. Crim. P. 48(a); *see also United States v. Poindexter*, 719 F. Supp. 6 (D.D.C. 1989). The discretion accorded the Department of Justice under Rule 48(a) recognizes that "decisions to dismiss pending charges … lie squarely within the ken of prosecutorial discretion" and are "'at the core of the Executive's duty to see to the faithful execution of the laws.'" *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016) (citation omitted); *see also United States v. Nixon*,

418 U.S. 683, 693 (1974) ("[T]he Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.").

"'[J]udicial authority is . . . at its most limited' when reviewing the Executive's exercise of discretion over charging determinations." *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir. 2016). Notably, "[t]he Executive's charging authority embraces decisions about … whether to dismiss charges once brought." *Fokker*, 818 F.3d at 737. "[T]he Supreme Court has declined to construe Rule 48(a)'s 'leave of court' requirement to confer any substantial role for courts in the determination whether to dismiss charges." *Fokker Servs. B.V.*, 818 F.3d at 742.

> [T]he "leave of court" authority [therefore] gives no power to a district court to deny a prosecutor's Rule 48(a) motion to dismiss charges based on a disagreement with the prosecution's exercise of charging authority. For instance, a court cannot deny leave of court because of a view that the defendant should stand trial notwithstanding the prosecution's desire to dismiss the charges . . . .

*Id.* at 742.

Here the Department of Justice determined that full briefing of the direct appeals would needlessly consume scarce prosecutorial and judicial resources and would not advance the efficient administration of justice and moved the D.C. Circuit to vacate the convictions in the interests of justice. Docs. ## 2168662 & 2168665. The D.C. Circuit vacated the convictions, concluding that doing so was "'just under the circumstances.'" Order ## 2174518 & 2174524. Dismissing the pending indictments against these defendants effectuates the D.C. Circuit's order of vacatur. *See, e.g.*, *Ball v. LeBlanc*, 881 F.3d 346, 351 (5th Cir. 2018) ("On remand, a district court must implement 'both the letter and the spirit' of the panel's mandate."); *United States v. Connell*, 6 F.3d 27, 30 (1st Cir. 1993) (emphasis added) ("a trial court, on remand, seeks to dispose of a case in accordance with an appellate court's mandate, it 'must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion *and the circumstances it*

*embraces*.'").   Accordingly, because the government has exercised its discretion to seek dismissal of these cases, and because the D.C. Circuit has determined that it is just under the circumstance to vacate these convictions, the Court must dismiss these cases with prejudice.

**B. Requiring the government to retry these cases would subject the defendants to the type of harassment Rule 48 is intended to prevent.**

"The principal object of [Rule 48(a)'s] 'leave of court' requirement" is "to protect a defendant against prosecutorial harassment." *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977) (per curiam).   If a prosecutor could dismiss cases unilaterally, he could harass a defendant by "charging, dismissing, and recharging … over the defendant's objection." *Rinaldi*, 434 U.S. at 29 n.15.   Interpreting Rule 48(a) in light of those principles, the D.C. Circuit in *Fokker* explained that Rule 48(a) allows a court to deny leave in order to protect a defendant against prosecutorial harassment, but that "the 'leave of court' authority gives no power to deny [dismissal] based on a disagreement with the prosecution's exercise of charging authority" or "to scrutinize and countermand the prosecution's exercise of its traditional authority over charging and enforcement decisions." *Id*. at 742-43 (citation omitted).   "For instance, a court cannot deny leave of court because of a view that the defendant should stand trial notwithstanding the prosecution's desire to dismiss the charges." *Id.* at 742.   Nor may a court deny leave on the ground that the prosecution has "fail[ed] to redress the gravity of the defendant's alleged conduct." *Id*.   "The authority to make such determinations remains with the Executive." *Id*.; *see United States v. Scantlebury*, 921 F.3d 241, 250 (D.C. Cir. 2019) ("The 'leave of court' authority gives no power to a district court to deny [dismissal] based on a disagreement with the prosecution's exercise of charging authority.") (brackets and citation omitted).

Retrying these defendants, where there have already been two vigorously litigated public trials, and where there is no potential additional punishment that could be imposed upon a

subsequent conviction, would subject them to precisely the type of harassment that Rule 48's

"leave of court" requirement is designed to prevent.   Moreover, all eight defendants have

consented to the government's motion to dismiss these cases.   ECF No. 967.   Under Rule 48(a),

a court may "protect a defendant from the government's harass[ment]," but may not properly deny

a motion to dismiss when "the defendant ha[s] agreed to it." *In re United States*, 345 F.3d 450, 453

(7th Cir. 2003).   Under these circumstances, there is no basis for judicial intervention because the

defendants have consented to dismissal, and dismissal would prevent the harassment caused by an

unnecessary retrial.

### C.  Dismissal effectuates the President's January 20, 2025, proclamation.

On January 20, 2025, President Trump issued a presidential proclamation, the stated

purpose of which was to "end[] a grave national injustice that has been perpetrated upon the

American people over the last four years and begin[] a process of national reconciliation."

Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 29, 2025).   The proclamation defined and

addressed two categories of persons who had committed "offenses related to events that occurred

at or near the United States Capitol on January 6, 2021."   *Id.*   First, the proclamation granted "a

full, complete and unconditional pardon to . . . individuals convicted of offenses related to events

that occurred at or near the United States Capitol on January 6, 2021."   *Id.*   The proclamation

excluded 14 named individuals – including these eight defendants – from the pardon's scope and

instead commuted their sentences to time served as of January 20, 2025. *Id.*[5]   Second, the

---

[5]      The commutation power is derived from the U.S. Const. art. II, § 2, cl. 1.   *Schick v. Reed*,
419 U.S. 256, 260 (1974).   A commutation lessens the sentence but leaves the conviction in place.
*See, e.g.*, *Rosemond v. Hudgins*, 92 F.4th 518, 525 n.5 (4th Cir. 2024).   As this Court has
previously acknowledged in this case, "[i]t is not for this court to divine why President Trump
commuted Defendants' sentences, or to assess whether it was sensible to do so."   ECF No. 943
(citing *United States v. Rosemond*, 10-cr-431 (LAK), 2024 WL 4043696, at *1 (S.D.N.Y. Sept. 4,

proclamation addressed those individuals whose criminal cases were pending, directing the Attorney General "to pursue dismissal with prejudice to the government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021." *Id.*

To the extent that these defendants' criminal cases are now pending before this Court by virtue of the D.C. Circuit's order of vacatur, the plain language of the President's proclamation requires the Department of Justice to move to dismiss these cases with prejudice. *Accord United States v. Nixon*, 418 U.S. 683, 693 (1974) ("the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case"); *Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 121 F.4th 1314, 1345 (D.C. Cir. 2024) ("Only the President can decide 'how to prioritize and how aggressively to pursue legal actions against defendants who violate the law.'"). The proclamation, on its terms, precludes the Department of Justice from further prosecuting this case.

Moreover, even assuming, arguendo, that the Department of Justice could retry these cases, the President's proclamation would operate to commute any future sentence imposed by the Court for conviction of offenses related to events that occurred at or near the United States Capitol on January 6, 2021. Accord ECF No. 943 at 7-8 ("The defendants' sentences have been commuted to time served; thus, they cannot receive any additional punishment."). Department policy discourages a prosecution where, as here, no sentence could be imposed.[6] The government routinely makes such assessments; "[b]y contrast, the Judiciary . . . generally is not 'competent to

---

2024) ("the judicial branch has no insight into the reasoning behind the clemency decision, the motivations of the president, or the politics that may be involved").

[6]     Justice Manual, § 9-27.230.9 ("In assessing the strength of the federal interest in prosecution, the attorney for the government should consider the sentence, or other consequence, that is likely to be imposed if prosecution is successful, and whether such a sentence or other consequence would justify the time and effort of prosecution.").

undertake' that sort of inquiry." *Fokker Servs. B.V.*, 818 F.3d at 741.   Dismissal is therefore appropriate because it is consistent with "the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan." *Wayte v. United States*, 470 U.S. 598, 607 (1985).

**D.  The public interest in this case has already been vindicated by two public trials.**

In its May 29, 2026, Order, this Court, citing *Ammidown,* sought additional justification from the government in order to determine whether dismissal "sufficiently protects the public." ECF No. 976 at 1.   In *United States v. Ammidown*, 497 F.2d 615 (D.C. Cir. 1973) – which involved a plea under Federal Rule of Criminal Procedure 11 rather than a motion to dismiss under Rule 48(a) – the D.C. Circuit stated that, even "when the defendant concurs in the dismissal," a district court "will not be content with a mere conclusory statement by the prosecutor that dismissal is in the public interest, but will require a statement of reasons and underlying factual basis." 497 F.2d at 620.   Other courts have similarly asserted that a district court may deny an unopposed motion to dismiss if it is "in bad faith or contrary to the public interest."   *In re United States*, 345 F.3d at 453 (collecting cases); *see Rinaldi*, 434 U.S. at 29 n.15 (finding it "unnecessary to decide" whether some lower courts have acted impermissibly in asserting the power to deny unopposed motions to dismiss when "clearly contrary to the public interest").

But those statements are all dicta; "[w]e are unaware … of any appellate decision that actually upholds a denial of a motion to dismiss a charge on such a basis."   *In re United States*, 345 F.3d at 453.   And recent decisions of the Supreme Court undermine any persuasive value of the D.C. Circuit's dicta in *Ammidown*.   Since the D.C. Circuit decided *Ammidown* in 1973, the Supreme Court has explained that "the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case," *Nixon*, 418 U.S. at 693; that "the decision of a

11

prosecutor in the Executive Branch not to indict" is "the special province of the Executive Branch," *Heckler v. Chaney*, 470 U.S. 821, 832 (1985) (finding an agency's exercise of enforcement discretion is immune from judicial review under the Administrative Procedure Act); that "the refusal to prosecute cannot be the subject of judicial review," *ICC v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987); and that the exercise of "a prosecutor's discretion" involves "the performance of a core executive constitutional function," *United States v. Armstrong*, 517 U.S. 456, 464-65 (1996).   In light of those intervening decisions, the D.C. Circuit in *Fokker* read *Ammidown* to mean that "courts generally lack authority to second-guess the prosecution's constitutionally rooted exercise of charging discretion." 818 F.3d at 750 (citing *Ammidown*, 497 F.2d at 621-22).

In any event, the public's interest in a trial of these defendants has already fully vested. This Court presided over two public trials of the charges in this indictment.   The first trial of defendants Rhodes, Meggs, Harrelson, and Watkins began on September 27, 2022, and concluded on November 29, 2022.   The transcript of that trial spans 10,305 pages and involved the admission of more than 500 exhibits.   The second trial of defendants Minuta, Hackett, Moerschel, and Vallejo began on December 6, 2022, and concluded on January 23, 2023.   The transcript of that trial spans 4,730 pages and involved the admission of more than 250 exhibits.   Sentencing of these eight defendants took more than a week; the sentencing transcripts comprise more than 1,000 pages.   The proceedings in both trials were routinely covered by the media, including minute-by-minute live blogging of the proceedings on social media.   And these cases were vigorously

litigated by experienced counsel on both sides.[7]   Dismissal of these cases with prejudice will not erase this public record.

<b><u>CONCLUSION</u></b>

This Court should grant the unopposed motion of the United States to dismiss these cases with prejudice pursuant to Fed. R. Crim. P. 48(a).   The President's January 20, 2025, proclamation directs the Attorney General to dismiss all pending criminal cases involving the events on January 6, 2021, and the government's motion in these cases comports with that directive.   Although Rule 48 does not empower this Court to interfere with these prerogatives of the Executive Branch, the record demonstrates that dismissal with prejudice is consistent with the public interest.   These defendants have already faced months-long public trials presenting complex legal issues that were vigorously litigated by experienced lawyers.   Given that any retrial could result in no further punishment, the public interest would not be served by the additional and unnecessary expenditure of limited prosecutorial and judicial resources.   Wherefore, the government respectfully asks this Court to dismiss the above-captioned case with prejudice.

Respectfully Submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

*/s/ G.A. Massucco-LaTaif*
G.A. MASSUCCO-LATAIF (PA Bar No. 70718)
Chief, Criminal Division
601 D Street, NW
Washington, D.C. 20530
Tel: (202) 252-7066
George.Massucco@usdoj.gov

---

[7]    As this Court stated at the conclusion of the first trial: "The lawyers on both sides of this case, notwithstanding the high stakes, notwithstanding novel principles, the volume of evidence for months and months and months, have demonstrated nothing but the highest degree of professionalism."   11/16/2022 Tr. at 10364.